UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALICIA HARRIS,                                    No. C-08-5198 EMC

        Plaintiff,

        v.                                       **ORDER GRANTING PLAINTIFF'S
                                                  MOTION FOR CONDITIONAL
                                                  COLLECTIVE ACTION
VECTOR MARKETING CORPORATION,                     CERTIFICATION**

        Defendant.                               **(Docket No. 132)**

_____/

Currently pending before the Court is Plaintiff Alicia Harris's motion for conditional collective action certification. Ms. Harris seeks conditional collective action certification for her claim pursuant to the Fair Labor Standards Act ("FLSA"). That claim is predicated on the allegation that Sales Representatives working for Defendant Vector Marketing Corporation were employees and were not paid minimum wages for their time spent in an initial training. The class for which Ms. Harris seeks conditional certification is defined as "all individuals who worked for Defendant Vector Marketing Corporation in the State of California as 'Sales Representatives' from April 15, 2006 through the resolution of this case." Mot. at 1.

Having considered the parties' briefs and accompanying submissions, as well as all other evidence of record, the Court hereby **GRANTS** Ms. Harris's motion.

## I. <u>DISCUSSION</u>

A.   <u>Legal Standard</u>

Under the FLSA, employers must pay their employees a minimum wage. *See* 29 U.S.C. § 206(a). If an employer fails to do so, then an aggrieved employee may bring a collective action on

United States District Court

For the Northern District of California

1    behalf of himself and other employees "similarly situated." *Id.* § 216(b).  Determining whether a

2    collective action is appropriate is within the discretion of the district court.  *See Adams v. Inter-Con*

3    *Sec. Sys.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007).

4        "To maintain a collective action under the FLSA a plaintiff must demonstrate that the

5    putative collective action members are similarly situated." *Murillo v. Pac. Gas & Elec. Co.*, No.

6    CIV. 2:08-1974 WBS GGH, 2010 U.S. Dist. LEXIS 20240, at *4 (E.D. Cal. Mar. 5, 2010); *see also*

7    *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1123-24 (E.D. Cal. 2009)

8    (noting that a plaintiff has the burden of proving the similarly situated requirement).  Unfortunately,

9            [n]either the FLSA nor the Ninth Circuit have defined
     "similarly situated."  [But a] majority of courts have adopted a

10    two-step approach for determining whether a class is "similarly
     situated."  Under this approach, a district court first determines, based

11    on the submitted pleadings and affidavits, whether the proposed class
     should be notified of the action.  At the first stage, the determination

12    of whether the putative class members will be similarly situated "is
     made using a fairly lenient standard, and typically results in

13    'conditional certification' of a representative class."  District courts
     have held that conditional certification requires only that "'plaintiffs

14    make substantial allegations that the putative class members were
     subject to a single illegal policy, plan or decision.'"

15

16            The second-step usually occurs after discovery is complete, at
     which time the defendants may move to decertify the class.  In this

17    step, the court makes a factual determination about whether the
     plaintiffs are similarly situated by weighing such factors as "(1) the

18    disparate factual and employment settings of the individual plaintiffs,
     (2) the various defenses available to the defendant which appeared to

19    be individual to each plaintiff, and (3) fairness and procedural
     considerations."  If the district court determines that the plaintiffs are

20    not similarly situated, the court may decertify the class and dismiss the
     opt-in plaintiffs' action without prejudice.  Even when the parties

21    settle, the court "must make some final class certification finding
     before approving a collective action settlement."

22    *Murillo*, 2010 U.S. Dist. LEXIS 20240, at *4-6.

23        At this juncture, the issue before the Court is whether Ms. Harris's case should be

24    conditionally certified at the first stage.  In describing the lenient standard used at the first stage,

25    many courts have indicated that a plaintiff must simply show that "there is some factual basis

26    beyond the mere averments in their complaint for the class allegations." *Id.* at *10-11 (internal

27    quotation marks omitted); *see also Felix v. Davis Moreno Constr., Inc.*, No. CV F 07-0533 LJO

28    GSA, 2008 U.S. Dist. LEXIS 98458 (E.D. Cal. Sept. 3, 2008) (stating that "[t]he evidence must

**United States District Court**
For the Northern District of California

1    show there is 'some factual nexus which binds the named plaintiffs and the potential class members

2    together as victims of a particular alleged [policy or practice]'"); *Realite v. Ark Rest. Corp.*, 7 F.

3    Supp. 2d 303, 306 (S.D.N.Y. 1998) (stating that plaintiffs can show that potential class members are

4    similarly situated "by making a modest factual showing sufficient to demonstrate that they and

5    potential plaintiffs are victims of a common policy or plan that violated the law").  Courts have

6    emphasized that a fairly lenient standard is used at the first step because a court does not have much

7    evidence at that point in the proceedings – just the pleadings and any declarations submitted.  In

8    contrast, at the second step, a stricter standard is applied because there is much more information

9    available, "which makes a factual determination possible."  *Vasquez*, 670 F. Supp. 2d at 1123; *see*

10   *also Labrie v. UPS Supply Chain Solutions, Inc.*, No. C 08-3182 PJH, 2009 U.S. Dist. LEXIS 25210,

11   at *10-12 (N.D. Cal. Mar. 18, 2009) (noting that the first step "is characterized by a fairly lenient

12   standard, necessitated by the fact that not all discovery will have been completed at the time of the

13   motion," while, at the second step, "the court engages in a more stringent inquiry into the propriety

14   and scope of the collective action" because "discovery is complete and the case is ready to be

15   tried").

16          In considering whether this lenient standard has been met in the instant case, the Court bears

17   in mind the following.

18   (1)    A plaintiff need not submit a large number of declarations or affidavits to make the requisite

19          factual showing.  A handful of declarations may suffice.  *See, e.g.*, *Gilbert v. Citigroup, Inc.*,

20          No. 08-0385 SC, 2009 U.S. Dist. LEXIS 18981, at *5 (N.D. Cal. Feb. 18, 2009) (finding

21          lenient standard met based on declarations from plaintiff and four other individuals);

22          *Escobar v. Whiteside Constr. Corp.*, No. C 08-01120 WHA, 2008 U.S. Dist. LEXIS 68439,

23          at *10-11 (N.D. Cal. Aug. 21, 2008) (finding lenient standard met based on declarations from

24          three plaintiffs); *Sniffen v. Spectrum Indus. Servs.*, No.: 2:06-cv-622, 2007 U.S. Dist. LEXIS

25          35206, at *5 (S.D. Ohio Feb. 13, 2007) (finding lenient standard met based on affidavits

26          from two plaintiffs); *Leuthold v. Destination Am.*, 224 F.R.D. 462, 468-69 (N.D. Cal. 2004)

27          (Walker, J.) (finding lenient standard met based on affidavits from three proposed lead

28          plaintiffs).

(2)     The fact that a defendant submits competing declarations will not as a general rule preclude conditional certification. *See Hipp v. National Liberty Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (explaining that plaintiffs may meet lenient standard "'by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which *successfully engage* defendants' affidavits to the contrary'") (emphasis added).  As Judge Alsup of this District has noted, competing declarations simply create a "he-said-she-said situation"; while "[i]t may be true that the [defendant's] evidence will *later* negate [the plaintiff's] claims, that should not bar conditional certification at the first stage." *Escobar*, 2008 U.S. Dist. LEXIS 68439, at *12 (emphasis added).

(3)     The fact that other potential class members have not affirmatively stated a desire to opt in does not preclude conditional certification.  As pointed out by one district court, while "a number of courts have held that named plaintiffs must proffer some evidence that other similarly situated individuals desire to opt in to the litigation before putting the parties to the expense and effort of notice," others "have recognized that requiring named plaintiffs to proffer evidence that others desire to opt in . . . puts the named plaintiff[s] [in] the 'ultimate chicken and egg dilemma.'"  *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-cv-00722-RCJ-PAL, 2009 U.S. Dist. LEXIS 5941, at *37-38 (D. Nev. Jan. 12, 2009).  The district court therefore concluded that "plaintiffs' failure to demonstrate that there are other similarly situated employees who wish to opt in to this FLSA action for overtime wages does not, of itself, constitute sufficient grounds to defeat the motion [for conditional certification]."  *Id.* at *39.

B.     Parties' Arguments

        In the instant case, Ms. Harris argues that she is entitled to conditional certification based on evidence previously submitted by Vector that shows it has a uniform practice of having its Sales Representatives participate in an initial training and then not paying the Sales Representatives for their time spent in the training.

        In response, Vector argues that the motion for conditional certification should be denied because Ms. Harris has failed to make a sufficient factual showing that she is similarly situated to

4

1  other class members with respect to: (1) whether they were employees instead of independent

2  contractors; (2) whether they were employees instead of nonemployee trainees; and (3) whether the

3  time they spent in training, assuming they were employees, constituted working time.  Each of these

4  arguments is addressed below.

5  C.       Independent Contractor v. Employee

6         The Ninth Circuit has stated, that to determine whether a person is an employee (as opposed

7  to an independent contractor) for purposes of the FLSA, the following nonexhaustive factors should

8  be considered:

9              1) The degree of the alleged employer's right to control the manner in
               which the work is to be performed; 2) the alleged employee's
10             opportunity for profit or loss depending upon his managerial skill; 3)
               the alleged employee's investment in equipment or materials required
11             for his task, or his employment of helpers; 4) whether the service
               rendered requires a special skill; 5) the degree of permanence of the
12             working relationship; 6) whether the service rendered is an integral
               part of the alleged employer's business.

13
                     Neither the presence nor the absence of any individual factor is
14             determinative.  Whether an employer-employee relationship exists
               depends "upon the circumstances of the whole activity," and
15             ultimately, whether, as a matter of economic reality, the individuals
               "are dependent upon the business to which they render service."
16

17  *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981).  In the instant case, Vector

18  argues that Ms. Harris's motion for conditional certification should be denied because she has failed

19  to make any showing that she is similarly situated to other Sales Representatives with respect to any

20  of the above factors.  *See Bamgbose v. Delta-T Group, Inc.*, No. 09-667, 2010 U.S. Dist. LEXIS

21  10681, at *18 (E.D. Penn. Feb. 8, 2010) (stating that a court "must determine whether the proof to

22  demonstrate that the workers are 'employees' or 'independent contractors' can be applied to the

23  class as a whole").

24         The Court does not agree.  As a preliminary matter, the Court has doubts as to whether the

25  specific factors itemized above are applicable in a case such as this in which the only wages being

26  sought are those related to time spent in training.  Notably, some of the factors make little sense in a

27  training situation – *e.g.*, the worker's opportunity for profit or loss.  Furthermore, the Ninth Circuit

28  has implicitly taken into account that the factors may not be applicable in all cases because it has

United States District Court

For the Northern District of California

1  expressly stated that (1) the factors are nonexhaustive and (2) at the end of the day, the question is

2  what is the economic reality of the relationship between the worker and the employer.  *See*

3  *Donovan*, 656 F.2d at 1370.  Finally, it is notable that most courts that have evaluated whether a

4  trainee should be paid for time spent in training do not look to the factors identified above but rather

5  consider the Supreme Court case *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), and its

6  progeny.  Significantly, the *Portland Terminal* case has been construed by some courts as essentially

7  setting up an economic realities test in the specific context of training, including one of the cases

8  cited by Vector in its supplemental brief.  *See Marshall v. Baptist Hosp., Inc.*, 473 F. Supp. 465,

9  467-68 (M.D. Tenn. 1979), *rev'd*, 668 F.2d 234 (6th Cir. 1981); *see also* 50 A.L.R. Fed. 632, at *2,

10  5 (2008) (discussing cases in which the court has evaluated whether "the economic realities of the

11  situation are such that the trainees are primarily working for the benefit of the employer sponsoring

12  the training rather than for their own benefit").

13       The Court acknowledges Vector's point that *Portland Terminal* "did not present the

14  independent contractor versus employee issue as one of the key issues to be determined."  Docket

15  No. 173 (Def.'s Letter at 2).  Nevertheless, the Supreme Court did analyze in *Portland Terminal* the

16  ultimate issue of when a trainee is "employed" within the meaning of and entitled to protection

17  under the FLSA.  330 U.S. at 152-53.  This Court thus agrees with *Marshall* that *Portland Terminal*

18  effectively prescribes an economic realities test in the specific context of job training.

19       As a logical matter, the determination of the economic realities inevitably depends on the

20  context.  That context matters is underscored by the example provided by the Court at the hearing –

21  *i.e.*, how could the above-identified *Donovan* factors have any applicability in a situation where a

22  trainee completed the training but thereafter "quits" and never goes on to conduct any activity in the

23  attempt to sell the product?  The test of employment must be tailored to the context at hand.

24       Tellingly, Vector cites no authority to support its contention that the court must first evaluate

25  the *Donovan* factors identified above *i.e.,* to first determine whether the worker is an employee

26  under the conventional economic realities test *before* applying the *Portland Terminal* or some

27  version of the DOL test (derived from *Portland Terminal* as discussed, *infra*) for FLSA coverage.

28  Vector has cited only one case in which the above-listed factors were considered at all in

1   determining whether trainees should be considered employees under the FLSA, *see Reich v. Shiloh*

2   *True Light Church of Christ*, 895 F. Supp. 799, 815 (W.D.N.C. 1995), but that case is materially

3   distinguishable.  There, the trainees worked in the training program for years, and therefore the

4   above factors, such as the workers' opportunity for profit or loss, had application, unlike the

5   situation where pre-job training is involved.

6        For the reasons discussed above, the Court finds that the *Portland Terminal*/DOL analysis of

7   trainees rather than the *Donovan* test applies.  This counsels against a denial of Ms. Harris's motion

8   for conditional certification as discussed *infra*.  But, even assuming that Vector is correct – *i.e.*, that

9   Ms. Harris must make a showing of "similarly situated" with respect to the *Donovan* factors

10  identified above – the Court still would grant conditional certification.  For purposes of the first

11  stage, Ms. Harris has made a sufficient factual showing that she and other Sales Representatives are

12  similarly situated because (1) there is no real dispute that Vector's Sales Representatives have the

13  same duties[1]; and (2) Vector categorically classifies the Sales Representatives as independent

14  contractors.[2]

15       Furthermore, submitted in conjunction with Vector's prior motion for summary judgment is

16  sufficient to establish "similarly situated" at the first stage.  In its summary judgment order, the

17  Court pointed to facts from which a reasonable jury could find that Vector exercised sufficient

18

19      [1] *See Bunyan v. Spectrum Brands, Inc.*, No. 07-CV-0089-MJR, 2008 U.S. Dist. LEXIS 59278,

20  at *27 (S.D. Ill. July 31, 2008) (stating that "[a] number of district courts have recognized that where a fact-specific analysis of each individual plaintiff's employment responsibilities would be required to determine their status, class certification is not appropriate"); *Reich v. Homier Distr. Co., Inc.*, 362 F.

21  Supp. 2d 1009, 1013-14 (N.D. Ind. 2005) (noting that "[m]any other courts . . . have declined to find potential class members similarly situated where liability depended on an individual determination of each employee's duties").

22

23      [2] *See Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 996 (C.D. Cal. 2008) (noting that "'[i]t is somewhat disingenuous . . . for Defendants to argue that they should be permitted to treat

24  all sales representatives as one group for purposes of classifying them as exempt, but that this Court can only determine the validity of that classification by looking to the specific job duties of each individual sales representative'"; adding that "Defendants' arguments are 'better suited for the more stringent

25  second step of the § 216(b) collective action certification analysis'"); *Houston v. URS Corp.*, 591 F.

26  Supp. 2d 827, 834 (E.D. Va. 2008) (stating that plaintiffs had sufficiently alleged a common policy or plan in that, *e.g.*, "all inspectors were classified as independent contractors rather than employees").

27  *But see Bamgbose*, 2010 U.S. Dist. LEXIS 10681, at *27 (stating that, although employer "may have represented to the DOL and IRS that its workers were similar, in order to argue that they were properly classified as independent contractors, the Court cannot rely on these representations to find the workers

28  similarly situated for FLSA collective action purposes").

1    control over Ms. Harris – *e.g.*, that Sales Reps are not allowed to advertise or use the Vector or

2    Cutco name without approval; that Sales Reps are not able to set their own prices for the Cutco

3    knives; that Vector distributes during its initial training program a Manual that encourages persons

4    to follow the suggested presentation; that Sales Representatives are required to obtain and use a

5    sample kit for in-home demonstrations; and that Vector's materials (including its training manual)

6    promote "PDI," *i.e.*, Personal Daily Interest, which suggests that Sales Representatives may

7    effectively have been required to keep in touch with their managers.  Clearly, these facts would

8    suggest a degree of control applicable to all Sales Representatives, not just Ms. Harris.

9              To the extent there may be some individualized inquiries about the level of control actually

10   exercised (*e.g.*, some managers may have been more stringent about PDI), several courts have

11   indicated that individualized inquiries such as this are better to address at the second stage of

12   certification rather than the first.  *See Labrie*, 2009 U.S. Dist. LEXIS 25210, at *17 (finding that

13   employer's "arguments [regarding individualized inquiries on control] raise issues primarily going

14   to the merits and are more appropriately addressed on a motion to decertify or motion for summary

15   judgment once notice has been given, the deadline to opt-in has passed, and discovery is closed");

16   *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-cv-00722-RCJ-PAL, 2009 U.S. Dist.

17   LEXIS 5941, at *33-34 (D. Nev. Jan. 12, 2009) (noting that "[a] number of reasoned decisions have

18   held that the need for individualized adjudication is more appropriately addressed at the second step

19   of this § 216(b) collective action certification analysis in a motion to decertify the collective action

20   after notice has been given and the opportunity to opt in has passed"); *Lemus v. Burnham Painting*

21   *& Drywall Corp.*, No. 2:06-cv-01158-RCJ-PAL, 2007 U.S. Dist. LEXIS 46785, at *15-16 (D. Nev.

22   June 25, 2007) (stating that "[t]he fact intensive inquiries concerning whether the plaintiffs are

23   independent contractors or employees for purposes of the FLSA, and detailed analysis of whether

24   the plaintiffs are sufficiently similarly situated to maintain the class are more appropriately decided

25   after notice has been given, the deadline to opt in has passed, and discovery has closed"); *Westfall v.*

26   *Kendle Int'l, CPU, LLC*, No. 1:05-cv-00118, 2007 U.S. Dist. LEXIS 11304, at *27 (N.D. W. Va.

27   Feb. 15, 2007) (stating that "[t]he defendants' arguments are more appropriate in the second stage of

28   the similarly situated inquiry").

**United States District Court**
For the Northern District of California

D.     Nonemployee Trainee v. Employee

As noted above, in *Portland Terminal*, the Supreme Court addressed the issue of whether persons participating in a training course offered by a railroad should be considered employees of the railroad and therefore compensated for their training time under the FLSA.  The Supreme Court concluded that they should be not be deemed employees, taking into account, *inter alia*, the fact that the trainees' activities did not displace any of the railroad's regular employees, that the trainees work did not expedite the railroad's business and in fact sometimes impeded and retarded it, and that the trainees benefitted more from the training than did the railroad.  *See Portland Terminal*, 330 U.S. at 149-53.

Based on *Portland Terminal*,

> the Department of Labor's Wage and Hour Division has developed a test listing six criteria for determining whether trainees are employees within the meaning of FLSA. . . . It provides:
>
> > Whether trainees are employees under the Act, according to the WH Administrator, will depend upon all the circumstances surrounding their activities on the premises of the employer. If all six of the following criteria apply, the trainees are not employees within the meaning of the Act:
>
> * The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school[.]
>
> * The training is for the benefit of the trainee[.]
>
> * The trainees do not displace regular employees, but work under close observation[.]
>
> * The employer that provides the training derives no immediate advantage from the activities of the trainees and on occasion his operations may actually be impeded[.]
>
> * The trainees are not necessarily entitled to a job at the completion of the training period[.]
>
> * The employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

*Reich v. Parker Fire Prot. Dist.*, 992 F.2d 1023, 1025-26 (10th Cir. 1993).

In the instant case, Ms. Harris asserts that the DOL test's interpretation of *Portland Terminal* is controlling as to whether a trainee should be considered an employee for purposes of the FLSA.

United States District Court
For the Northern District of California

1  A number of courts have adopted the Department of Labor ("DOL") test.  *See, e.g.*, *Atkins v.*

2  *General Motors Corp.*, 701 F.2d 1124, 1127-28 (5th Cir. 1983) (giving substantial deference to

3  Wage and Hour Administrator's approach).  Others have not.  *See, e.g.*, *McLaughlin v. Ensley*, 877

4  F.2d 1207, 1209-10 & n.2 (4th Cir. 1989) (declining to rely on DOL test and instead applying "the

5  general test [of] whether the employee or the employer is the primary beneficiary of the trainees'

6  labor").  Still others have taken somewhat of a middle position, stating that the DOL test need not be

7  strictly or rigidly applied and that the totality of the circumstances instead controls whether a trainee

8  should be deemed an employee for purposes of the FLSA.  *See Reich*, 992 F.2d at 1026-27 (noting

9  that "there is nothing in *Portland Terminal* to support an 'all or nothing approach'" and concluding

10  that the six criteria of the DOL test "are relevant but not conclusive").

11       For purposes of this opinion, the Court assumes that the DOL test in some form applies,

12  particularly since neither party has made any real argument to the contrary.  In her papers, Ms.

13  Harris asserts that this test "is conducive to class-wide analysis," Mot. at 11, and Vector has not

14  really disputed such.  Instead, Vector's sole contention is that Ms. Harris has failed to provide

15  evidence to support the above criteria or provided insufficient evidence.

16       While Ms. Harris arguably could have done a better job of accumulating evidence to support

17  her factual showing, the Court does not agree with Vector that Ms. Harris has failed to provide

18  adequate evidence, particularly at the first stage of FLSA collective action certification.

19       First, contrary to what Vector suggests, Ms. Harris's failure to provide evidence on all

20  criteria is not dispositive.  As noted above, at least one court has concluded that the DOL test need

21  not be strictly applied.  And even under a strict application of the DOL test, *all* of the six factors

22  must be present before a trainee is deemed not an employee covered by the FLSA.  If the plaintiff

23  demonstrates the inapplicability of any one factor, the FLSA applies.  Ms. Harris has demonstrated

24  that she is similarly situated as to more than one of the factors.

25       For example, Ms. Harris has provided evidence related to the first criteria – *i.e.*, the training

26  is more specific to the Vector position than that which would be given in a vocational school.  The

27  Manual which is distributed during the training is relevant evidence.  *See* Harris Decl., Ex. A.  That

28  is, the Manual indicates that there is a sufficient showing of consistency and uniformity as to the

United States District Court

For the Northern District of California

1    nature and content of the training to establish Ms. Harris is similarly situated to the other trainees.[3]

2    As for the second criteria – *i.e.*, whether the training is for the benefit of the trainee – it is basically

3    the inverse of the fourth – *i.e.*, whether the employer derives an immediate advantage from the

4    activities of the trainees – and Vector has admitted that Ms. Harris has provided some evidence as to

5    the fourth criteria.  Again as to the analysis of these criteria, there is nothing that materially

6    distinguishes Ms. Harris from the other trainees.

7         Second, some of the criteria are not in need of any specific evidence from Ms. Harris in order

8    to establish she is similarly situated.  For example, there does not seem to be any dispute regarding

9    the third criteria – *i.e.*, that the trainees did not displace any regular employees.  Also, for the fifth

10   and sixth criteria – *i.e.*, that trainees are not necessarily entitled to a job and that the employer and

11   trainee understand that trainees are not entitled to wages for time spent in training – Vector has

12   actually provided evidence in opposition to the motion for conditional certification, and nothing

13   about this evidence indicates that these factors do not apply to all trainees, including Ms. Harris.

14   Indeed, Vector's evidence suggests that trainees are *uniformly* told prior to training (*i.e.*, during the

15   interview process) that they will not be paid for the time spent in training.  *See, e.g.*, Conedera Decl.

16   ¶ 5; Hanks Decl. ¶ ; Lombardi Decl. ¶ 5; Montesdeoca Decl. ¶ 5; Rodrigo Decl. ¶ 5.

17        Third, Vector's criticism of Ms. Harris's evidence on the fourth criteria – *i.e.*, that the

18   employer derives no immediate advantage from the activities of the trainees – is somewhat

19   unwarranted.  For example, Ms. Harris claims that one of the benefits obtained by Vector from the

20   training was the trainees' purchase of a sample knife kit during the training.  Vector argues that,

21   although Ms. Harris clearly states in her declaration that she bought the sample kit during her

22   training, *see* Harris Decl. ¶ 9, the declarations Ms. Harris has submitted from other former Sales

23   Representatives are not so clear.  Vector is correct that no other declarant explicitly testifies that the

24   sample kit was purchased during the training.  But at least for two of the declarants it can be inferred

25   from the context that that was in fact the case.  *See* Bryan Decl. ¶ 8; Seville Decl. ¶ 8.

26   ─────────────────────

27        [3] Nothing bars the Court from considering the evidence submitted by the parties previously in conjunction with Vector's motion for summary judgment – *e.g.*, the training outlines.  *See* Docket No.

28   71 (Order at 20-21) (noting that Vector training materials reflected that a significant part of the training was specific to Vector and Cutco knives).

**United States District Court**
For the Northern District of California

1   As another example, Ms. Harris maintains that one of the benefits obtained by Vector from

2   the training was the generation of potential customer lists by the trainees.  Vector contends that there

3   is no evidence that the lists were ever given to Vector or used by Vector (even if given) and

4   therefore there could have been no benefit.  But this ignores the declaration testimony of Ms. Harris

5   and at least one other former Sales Representative that the generated potential customer list was

6   eventually used.  *See* Harris Decl. ¶ 10 ("I did call some of the people on the list that I created to try

7   to set up appointments, some of which I did make presentations to."); Seville Decl. ¶ 11 ("After

8   signing the Sales Rep Agreement, I called the people on the list that I had created in order to set up

9   sales demonstration appointments.").

10   The Court therefore rejects Vector's argument that, at the first stage, Ms. Harris has failed to

11   make a sufficient factual showing that she and other Sales Representatives are similarly situated

12   with respect to the factors enumerated in the DOL test.

13   E.   Training as Working Time or Nonworking Time

14   As the Court discussed in its prior summary judgment order, even assuming that Sales

15   Representatives are employees of Vector within the meaning of the FLSA, that does not

16   automatically make the time they spent in training compensable under the FLSA.  Federal

17   regulations provide:

18   Attendance at lectures, meetings, training programs and similar
     activities need not be counted as working time if the following four
19   criteria are met:

20   (a)   Attendance is outside of the employee's regular working hours;

21   (b)   Attendance is in fact voluntary;

22   (c)   The course, lecture, or meeting is not directly related to the
     employee's job; and
23

24   (d)   The employee does not perform any productive work during
     such attendance.

25   29 C.F.R.. § 785.27.  While it is unclear whether this test applies once a trainee is found to be

26   employed within the meaning of the FLSA under the *Portland Terminal* or the DOL test, this Court

27   has previously noted in its summary judgment order that it is "doubtful whether criteria (c) applies

28

1  [in the instant case because] [t]he training appears to be related to the job.  Indeed, the training is

2  keyed to the specifics of the Vector sales program and Cutco knives."  Docket No. 71 (Order at 19).

3      In any event, Vector does not argue in opposition to the pending motion that the above test is

4  not conducive to class-wide analysis or that Ms. Harris is not similarly situated to the other trainees.

5  If it had, such an argument would lack merit.  For example, it appears that the training manual was

6  used throughout California as were certain training outlines.  Rather, Vector simply argues that Ms.

7  Harris's evidence cannot stand against its evidence – *i.e.*, Ms. Harris has submitted only four

8  declarations while Vector has submitted twelve.  *See* Opp'n at 10.  But, as noted above, the fact that

9  there are competing declarations does not bar a court from conditionally certifying a class.  Such

10  evidence will have more weight at the second stage, but this is only the first stage.

11      Moreover, Vector's characterization of its evidence with respect to this issue is problematic.

12  Vector argues that, even if Sales Representatives are in fact employees, its evidence shows that

13  individuals were not hired as Sales Representatives until the end of training (as opposed to being

14  hired after the interview and before the training, which is Ms. Harris's position).  This is not an

15  argument under 29 C.F.R. § 785.27.  It would also appear to be irrelevant under *Portland Terminal*

16  where the analysis did not turn on the fact that the railroad trainees were contingent hires.  In any

17  event, even if the timing of the offer were relevant, many of the Vector managers admit that, after

18  the interview and before the training, they told the individuals that they were accepted for the

19  position or they were welcomed to the team.  *See, e.g.*, Gedris Decl. ¶ 9; Keller Decl. ¶ 12; Casey

20  Decl. ¶¶ 11-12; Comstock Decl. ¶ 10.  Vector seems to be taking the position that the individuals

21  were only being accepted into the training program or being welcomed into the training program

22  because it would not allow any individual to actually sell the Cutco knives until after completing the

23  training and signing the Sales Representative Agreement.  *See, e.g.*, Keller Decl. ¶ 12; Casey Decl. ¶

24  12; Comstock Decl. ¶ 10.  But just because Vector would not permit a sale until after the Agreement

25  was formally signed does not necessarily mean that an employment agreement did not exist earlier –

26  *i.e.*, after the interview and before the training.  In short, even if this issue of timing were relevant, it

27  is a second stage issue.

28

United States District Court

For the Northern District of California

1    Thus, as above, the Court rejects Vector's contention that Ms. Harris has failed to make a

2    sufficient factual showing at the first stage that she and other Sales Representatives are similarly

3    situated with respect to the factors identified in § 785.27.

4    F.    First Stage to Second Stage

5    Finally, the Court addresses the last argument presented by Vector in its opposition – *i.e.*,

6    that Ms. Harris has failed to show adequate interest in the lawsuit even after "substantial discovery

7    and communications with class members" through a precertification notice (which was sent to

8    approximately 54,000 people).  Opp'n at 14.

9    In her reply brief, Ms. Harris claims that there has been overwhelming interest in the lawsuit

10   and has submitted a declaration from her counsel in support.  *See, e.g.*, Saltzman Decl. ¶ 3 (noting

11   that, in just four days, the firm received almost 1,400 calls).  Not surprisingly, Vector has made

12   various objections to the declaration from counsel.  *See* Docket No. 170 (objections).  The Court,

13   however, need not rule on the objections because, even without the Saltzman declaration, Vector's

14   position is not persuasive.  In one case, a court did express concern about a plaintiff's inability to

15   provide supporting evidence, even at the first stage, because the action had been pending for sixteen

16   months.  *See Felix v. Davis Moreno Constr., Inc.*, 2008 U.S. Dist. LEXIS 98458, at *19-20 (E.D.

17   Cal. Sept. 3, 2008).  But *Felix* seems to be an extreme case – *e.g.*, the plaintiff offered no

18   declarations from allegedly similarly situated employees and further mischaracterized the deposition

19   testimony of the employer.  *See id.*  Here, Ms. Harris has provided declarations from other persons

20   allegedly similarly situated, even if the number of declarations is small.  As noted above, courts have

21   generally stated that a small number of declarations is acceptable at the first stage.

22   Moreover, contrary to what Vector argues, substantial discovery has not really taken place in

23   this case.  Previously, discovery took place in conjunction with Vector's motion for summary

24   judgment – but that dealt only with the issue of whether Ms. Harris as an *individual* had evidence to

25   support her being an employee instead of an independent contractor.  While it does appear that Ms.

26   Harris sent out a precertification notice, and thus arguably Ms. Harris could or should have gathered

27   information from the persons who received the notice, that does not necessarily mean that the Court

28   should, as a result, effectively convert this first stage of certification into the second.  In *Leuthold*,

**United States District Court**
For the Northern District of California

1    Judge Walker declined to convert the first stage into the second, noting that, although "courts

2    sometimes bypass the first stage when discovery has been completed," that approach was not

3    appropriate in the case under consideration because "it is unclear whether the factual record of this

4    case is complete," "[t]he relevant facts have not been presented with clarity, and the court cannot be

5    certain whether any of the ongoing discovery disputes would inform the court's second tier

6    analysis." *Leuthold v. Destination Am.*, 224 F.R.D. at 468-69.  The Court finds that Judge Walker's

7    analysis is largely applicable to the instant case as well.

8    G.    <u>Class Notice</u>

9         For the foregoing reasons, the Court finds that Ms. Harris has made a sufficient factual

10   showing at the first stage that she and other Sales Representatives are similarly situated.  As Ms.

11   Harris contends, there is sufficient evidence indicating that Vector has a uniform practice of having

12   its Sales Representatives participate in an initial training and then not paying the Sales

13   Representatives for their time spent in the training.  Because Ms. Harris has made a sufficient factual

14   showing, conditional certification is appropriate and a notice to the proposed class shall be issued.

15        Per the Court's case management order of March 26, 2010, the class notice must be mailed

16   by May 24, 2010.  Accordingly, the parties must file a joint proposed class notice no later than May

17   20, 2010, at 12:00 p.m., for the Court's approval.  The proposed notice shall be e-filed and a

18   courtesy copy shall be faxed to the Court at (415) 522-4200.

19        As to the consent-to-join form and postcard that Ms. Harris proposes accompany the class

20   notice, Vector has made objections.  *See* Docket No. 173 (letter).  The Court hereby rules as follows.

21        (1)    Vector argues that the notice sent to the class should include a statement that the

22   Court has made no findings on the merits of the FLSA claim.  The Court agrees that such

23   information should be provided in the notice.  However, the information need not be repeated on

24   either the consent-to-join form or the postcard.

25        (2)    Vector argues that contact information for its counsel should be provided (*i.e.*, not

26   just the contact information for Ms. Harris's counsel) on the class notice, consent-to-join form,

27   and/or postcard.  The Court does not agree.  Although not all courts are in agreement, most courts

28   have held that, "[o]nce a class has been certified, the rules governing communications [with class

United States District Court

For the Northern District of California

members] apply as though each class member is a client of the class counsel." Manual of Complex Litig. § 21.33, at 300 (4th ed. 2004). *See, e.g.*, *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1207 n.28 (11th Cir. 1985) (stating that, "[a]t a minimum, class counsel represents all class members as soon as a class is certified"); *Erhardt v. Prudential Group*, 629 F.2d 843, 845 (2d Cir. 1980) (stating that, "[o]nce a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel"); *Parks v. Eastood Ins. Servs.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002) (stating that, "[i]n a class action certified under Rule 23, . . . absent class members are considered represented by class counsel unless they choose to 'opt out'"). Including contact information for defense counsel in the class notice risks violation of ethical rules and inadvertent inquiries, thus engendering needless confusion. *See generally Stuart v. RadioShack Corp.*, No. C-07-4499 EMC (Docket No. 108).

(3)     Per the Court's case management order, the consent-to-join forms must be filed with the Court by August 2, 2010. *See* Docket No. 126 (order). Therefore, the Court agrees with Vector that Ms. Harris should build in time for the class administrator to receive the forms and then have those forms filed *with the Court* by the August 2 deadline.

(4)     Vector objects that an original signature should be provided for the consent-to-join form and therefore consent via e-mail or Internet should not be permitted. The Court agrees. To ensure that there are no disputes regarding authenticity, an original signature should be provided. It does not pose any undue burden to require that a consent form be returned by mail or facsimile.

(5)     Vector objects to the last portion of the consent-to-join form. However, the last portion is not particularly objectionable. Notably, even Vector's proposed class notice states that no retaliation is permitted. Therefore, the last portion of the consent-to-join form may be included. The information may be duplicative, but it is neither prejudicial nor confusing.

(6)     Vector contends that sending the postcard reminder notice after the class notice is harassing. The Court does not agree. Particularly since the FLSA requires an opt-in procedure, the sending of a postcard is appropriate. The Court also notes that a postcard is not especially invasive (*e.g.*, compared to a telephone call).

United States District Court

For the Northern District of California

1    (7)    Vector asks that the class members provide additional information on the consent-to-
2    join form – *i.e.*, the dates of training, estimated training time, and location of training.  The Court
3    agrees that this information would facilitate discovery.  However, to ensure that class members will
4    not be deterred from opting in, the Court shall include language that the class members need only
5    include the information requested to the best of their knowledge and that failure to do so will not
6    prevent them from opting in.

7    (8)    The parties include different language in their proposed consent-to-join forms as to
8    whether the class member was a Sales Representative during the relevant time period.  Vector's
9    proposed language is problematic because what matters is whether the person was in training as of
10   April 15, 2006, not whether the person signed a Sales Representative Agreement by that date.
11   However, it is not unreasonable to include language stating that the person was in training at some
12   point during the relevant time period.

13   Attached to this order is the Court's approved language to be used in the consent-to-join
14   form and postcard.

## II.   CONCLUSION

16   For the foregoing reasons, Ms. Harris's motion is granted.  As noted above, the proposed
17   class notice shall be e-filed and provided to the Court by May 20, 2010, at 12:00 p.m.

18   This order disposes of Docket No. 132.

20   IT IS SO ORDERED.

22   Dated: May 18, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge