United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALICIA HARRIS,

Plaintiff,

v.

VECTOR MARKETING CORPORATION,

Defendant.

___________________________________/

No. C-08-5198 EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON PLEADINGS**

**(Docket No. 114)**

In her complaint, Plaintiff Alicia Harris has asserted a claim for violation of California Labor Code § 450 as well as a claim under the California Labor Code Private Attorneys General Act ("PAGA") based on the alleged § 450 violation. Currently pending before the Court is Defendant Vector Marketing Corporation's motion for judgment on the pleadings as to both the § 450 claim and the PAGA claim based on the alleged § 450 violation. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and conditionally **DENIES** in part Vector's motion.

## I. DISCUSSION

Section 450 provides in relevant part as follows: "No employer, or agent or officer thereof, or other person, may compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of any thing of value." Cal. Lab. Code § 450(a). Ms. Harris contends that Vector violated this provision by compelling her to purchase a knife set for use in selling the Cutco knives. *See* SAC ¶ 70. In the currently pending motion, Vector

argues that the § 450 claim must be dismissed because there is no private right of action for a violation of the statute. Vector further argues that the PAGA claim based on the alleged violation of § 450 must be dismissed because Ms. Harris has failed to allege in her complaint that she sought permission from the appropriate state agency to prosecute the PAGA § 450 claim.

A. Section 450 Claim

Both parties agree that the issue of whether there is a private right of action under § 450 is a novel issue of law. Previously, one state appellate court held that there is no private right of action under § 450 – as well as California Labor Code § 351 which deals with tipping[1] – *see Lu v. Hawaiian Gardens Casino, Inc.*, 170 Cal. App. 4th 466 (2009), but that decision was vacated when the California Supreme Court decided to take the case on appeal. The California Supreme Court, however, limited the issue to be briefed and argued to whether § 351 creates a private right of action. *See Lu v. Hawaiian Gardens Casino, Inc.*, 94 Cal. Rptr. 3d 1 (2009). It did not include the § 450 claim as part of the appeal.

As to when a private right of action is implied under California law, the parties differ on what is the appropriate standard. Vector contends that, in the wake of the California Supreme Court decision *Moradi-Shalal v. Fireman's Fund Insurance Co.*, 46 Cal. 3d 287 (1988), whether a private right of action exists is primarily a question of legislative intent. *See Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 142 (2008) (noting that the question of whether a statute creates a

---

[1] Section 351 provides as follows:

> No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for. An employer that permits patrons to pay gratuities by credit card shall pay the employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for any credit card payment processing fees or costs that may be charged to the employer by the credit card company. Payment of gratuities made by patrons using credit cards shall be made to the employees not later than the next regular payday following the date the patron authorized the credit card payment.

Cal. Lab. Code § 351.

private right of action is "primarily [an issue] of legislative intent"); *Thornburg v. El Centro Regional Med. Ctr.*, 143 Cal. App. 4th 198, 204 (2006) (stating that "'[t]he question of whether a regulatory statute creates a private right of action depends on legislative intent'"); *Farmers Ins. Exchange v. Superior Court*, 137 Cal. App. 4th 842, 850 (2006) (noting that, since *Moradi-Shalal*, state "Courts of Appeal have held that a statute creates a private right of action only if the statutory language or legislative history affirmatively indicates such an intent"). Ms. Harris contends that, even after *Moradi-Shalal* was decided, it is still appropriate to use the standard laid out in *Middlesex Insurance Co. v. Mann*, 124 Cal. App. 3d 558 (1981), as the Ninth Circuit did in *Jacobellis v. State Farm Fire & Casualty Co.*, 120 F.3d 171 (9th Cir. 1997). Under the *Middlesex* standard, in order to imply a private right of action, "a court must determine: (1) the plaintiff belongs to the class of persons the statute is intended to protect; (2) a private remedy will appropriately further the purpose of the legislation; and (3) such a remedy appears to be needed to assure the effectiveness of the statute." *Id.* at 174.

Ms. Harris's position is problematic. In *Jacobellis*, the Ninth Circuit made specific note that "[t]he California courts have not clearly determined whether [the *Middlesex*] analysis is still appropriate after *Moradi-Shalal*." *Id.* Although the Ninth Circuit subsequently stated that "the *Middlesex* test is still useful for evaluating the appropriateness of a private cause of action," that was only for cases (such as the one under the court's consideration) "where the statute evidences a legislative intent to provide a right to a class of persons." *Id.* at 175. In other words, the Ninth Circuit focused first – as the California state courts have done post-*Moradi-Shalal* – on the question of legislative intent.[2] Notably, Ms. Harris has cited no clear authority post-*Moradi-Shalal* in which

---

[2] The Court notes that, in *Katzberg v. Regents of University of California*, 29 Cal. 4th 300 (2002), the California Supreme Court endorsed use of the following framework to determine whether there is a private right of action for damages to remedy an asserted constitutional violation: (1) "[W]e shall inquire whether there is evidence from which we may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation" (based on, *e.g.*, the language and history of the constitutional provision); and (2) "if no affirmative intent either to authorize or to withhold a damages remedy is found, we shall undertake the 'constitutional tort' analysis adopted by *Bivens* [a United States Supreme Court decision] and its progeny," which is akin to the *Middlesex* analysis. *Id.* at 317.

The Court, however, does not read *Katzberg* as generally resuscitating the *Middlesex* test. Rather, the Court views *Katzberg* as having limited application where the plaintiff is asserting a claim

United States District Court
For the Northern District of California

an analysis of legislative intent was not considered in deciding whether an implied private right of action exists. Instead, the threshold issue on which there appears to be some difference is how that legislative intent may be discerned and what analysis applies if there is no discernible intent.

Under the current weight of authority, it appears that the application of the legislative intent test has been strict. For instance, several state appellate courts have noted:

> If the Legislature intended a private right of action, that usually ends the inquiry. If the Legislature intended there be no private right of action, that usually ends the inquiry. If we determine the Legislature expressed no intent on the matter either way, directly or impliedly, there is no private right of action, with the possible exception that compelling reasons of public policy might require judicial recognition of such a right.

*Animal Legal Defense Fund*, 160 Cal. App. 4th at 142; *see also County of San Diego v. State of California*, 164 Cal. App. 4th 580, 609 (2008). Similarly, another state appellate court has stated that, "[i]f the Legislature simply did not consider the possibility of creating a new private right to sue, then the Legislature cannot have had an intent to create a new private right to sue." *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 127 (1997).

Furthermore, most of the cases decided after *Moradi-Shalal* have declined to find an implied right of action. *See, e.g.*, *Animal Legal Defense Fund*, 160 Cal. App. 4th at 142-44 (declining to find an implied right of action under California Penal Code § 597t); *Farmers Ins. Exchange*, 137 Cal. App. 4th at 853-59 (finding no implied private right of action under California Insurance Code § 1861.10(a)); *Rosales v. City of L.A.*, 82 Cal. App. 4th 419, 427 (2000) (holding that violation of the statutory disclosure procedures relating to police personnel files did not give rise to a private cause of action); *Agricultural Ins. Co. v. Superior Court*, 70 Cal. App. 4th 385, 399-400 (1999) (concluding no private right of action under California Penal Code § 550); *Vikco Ins. Servs., Inc. v. Ohio Indemnity Co.*, 70 Cal. App. 4th 55, 60-66 (1999) (finding no private right of action under California Insurance Code § 769); *Crusader Ins. Co.*, 54 Cal. App. 4th at 135-37 (holding that there is no implied private right of action under California Insurance Code § 1763).

---

for damages based on an alleged constitutional violation.

United States District Court
For the Northern District of California

Those cases in which a private right of action has been implied are not only few in number, but, more importantly, they involve circumstances in which a legislative intent to create a private right of action, though not explicitly stated, was found to be strongly implied. *See Farmers Ins. Exchange*, 137 Cal. App. 4th at 850 (stating that legislative "intent need not necessarily be expressed explicitly, but if not it must be strongly implied"); *see also Vikco Ins. Servs.*, 70 Cal. App. 4th at 62-63 (noting that, "[i]f the Legislature intends to create a private cause of action, we generally assume it will do so directly[,] . . . in clear, understandable, unmistakable terms") (internal quotation marks omitted). For example, in *Thornburg*, the language of the statute as well as its legislative history indicated that there was a private right of action. In particular, the court noted that, under California Evidence Code § 1158, a medical provider's "'[f]ailure to make [medical] records available, during business hours, within five days after the presentation of the written authorization, may subject the person or entity having custody or control of the records to liability for all reasonable expenses, including attorney's fees, incurred in any proceeding to enforce this section.'" *Thornburg*, 143 Cal. App. 4th at 202, 204. Likewise, in *Goehring v. Chapman University*, 121 Cal. App. 4th 353 (2004), the legislative intent to create a private right of action was inferred largely based on the language of the statute: Under California Business & Professions Code § 6061, if an unaccredited law school fails to provide certain disclosures, it shall make a full refund of all fees paid by students. *See id.* at 377. The same was true in *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399 (2009), where the court found a private right of action under California Labor Code § 351. *See id.* at 1421-25. The court pointed out that § 351 expressly provides that tips are the property of the employee, (a fact also underscored by the legislative history), and that the vesting of this property evidenced the legislature's intent to provide a remedy.[3] And in *Jacobellis*, one of the primary cases relied upon by Ms. Harris, while the express language of the statute did not provide a private right of action, the

---

[3] While *Grodensky* was vacated by the California Supreme Court (along with the *Lu* case referenced above) when it took up on appeal the issue whether or not § 351 provides for an implied private right of action, the appellate court's reasoning in *Grodensky* was predicated on a finding of legislative intent to provide a private right of action.

court found evidence of such an intent in the legislative history which explained the purpose underlying the statute at issue.[4] *See Jacobellis*, 120 F.3d at 173-74.

In the instant case, Ms. Harris has not pointed to any specific evidence that the legislature intended to confer a private right of action under § 450. Certainly, there is nothing in the explicit language of the statute to suggest such. Nor has Ms. Harris provided any legislative history so indicating. Unlike cases where a private right of action was found, § 450 does not refer to a right to a full refund (*Goehring*), taking of a vested property right (*Grodensky*), or subjecting the defendant to liability in any enforcement proceeding (*Thornburg*). Ms. Harris does point out that, in one case, a state appellate court stated that "[s]ection 450 manifests a legislative intent to protect wage earners against employer coercion to purchase products or services from the employer," *California State Restaurant Ass'n v. Whitlow*, 58 Cal. App. 3d 340, 347 (1976), but this statement is not specific enough to imply that such protection depends upon a private right of action. *Compare Jacobellis*, 120 F.3d at 173-74 (quoting historical and statutory notes for statute at issue in discussing purpose underlying statute).

In short, the Court has been presented with nothing specific from which it can infer a legislative intent that there be a private right of action under § 450. It is true that the lack of an alternative enforcement mechanism for § 450 such as the imposition of an administrative sanction is a factor in discerning legislative intent.[5] *See Moradi-Shalal*, 46 Cal. 3d at 304 (concluding no

---

[4] Ms. Harris points to *Faria v. San Jacinto Unified Sch. Dist.*, 50 Cal. App. 4th 1939 (1996), as one case in which an implied right of action was found based largely on the fact that the plaintiff was a member of the class that the statute was intended to protect. *See id.* at 1947-48 (citing, *inter alia*, *Middlesex*). *Faria* appears to be an outlier. As discussed above, the viability of the *Middlesex* test is questionable – at the very least, before the *Middlesex* test may be considered, there must be some evidence of legislative intent to create a private right of action.

[5] In its reply brief, Vector argues that there § 450 may be administratively enforced pursuant to California Labor Code § 98. Section 98, however, appears to apply to wage claims, and not a claim such as one predicated on § 450. *See Kamar v. Radioshack Corp.*, CV 07-2252 AHM (AJWx), 2008 U.S. Dist. LEXIS 40581, at *18-19 (C.D. Cal. May 15, 2008) (noting that "[s]ection 98 was proposed to expedite the handling of disputed wage claims by the Labor Commissioner's office and [] discourage obstruction and stalling tactics engaged in by some employers knowing that the only recourse available to the Labor Commissioner to enforce a valid claim is to sue in the Superior Court") (internal quotation marks omitted); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1115 (2007) (stating that "Labor Code section 98, subdivision (a), expressly declares the legislative intent that hearings be conducted in an informal setting preserving the right of the parties" and that "[t]he Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims")

private right of action but stating that "our opinion leaves available the imposition of substantial administrative sanctions by the Insurance Commissioner"); *Jacobellis*, 120 F.3d at 174 (concluding private right of action under Earthquake Insurance Act based in part on the fact that the "Act does not provide for administrative enforcement"). But Ms. Harris has not pointed to any case in which a court found a legislative intent to create a private right of action based solely on the unavailability of administrative enforcement without some other specific indicia of such intent. Moreover, the Court notes that, in 1998, in amending § 450, the legislature contemplated administrative enforcement but ultimately declined to adopt that approach. *See* http://www.leginfo.ca.gov/pub/97-98/bill/sen/sb_2151-2200/sb_2173_cfa_19980813_090947_sen_floor.html (last visited 5/17/2010). It appears that the legislature did not consider establishing an express private right of action even in the wake of *Moradi-Shalal*.

Ms. Harris makes a final argument that, where there is a compelling public policy, a private right of action should be implied even in the absence of legislative intent. While the Court is not unsympathetic to this contention, under the current weight of authority, the argument is problematic. First, the court in *Animal Legal Defense Fund* only stated that, "[i]f we determine the Legislature expressed no intent on the matter either way, directly or impliedly, there is no private right of action, with the *possible* exception that compelling reasons of public policy might require judicial recognition of such a right." 160 Cal. App. 4th at 142 (emphasis added). *See also County of San Diego v*, 164 Cal. App. 4th at 609. Although the court in *Animal Legal Defense Fund* did not expressly state what would constitute such an exception, it suggested that the exceptions would be limited – as where, for example, a constitutional violation has been alleged. *See id.* (citing *Katzberg*).

In the instant case, no constitutional violation has been pled. While § 450 articulates a general public policy against employer coercion, the Court cannot say that this public policy in and of itself is compelling enough to give rise to an implied right of action in the absence of any affirmative indicia of legislative intent. An employee who is compelled to make a purchase from

(internal quotation marks omitted).

her employer, for instance, does obtain something in the exchange for his or her purchase – *i.e.*, this is not an outright theft or conversion by the employer of a vested property right as in the context of a violation of § 351. Moreover, unlike the context of § 351, there is no analogous common law right in connection with a violation of § 450 which is vindicated by the statute. As the court in *Jacobellis* indicated, a private right of action is more likely to be implied where the statute enforces a common law right (*e.g.*, *Middlesex*, 124 Cal. App. 3d 558) than where it creates a claim not available at common law (*e.g.*, *Crusader Ins. Co.*, 54 Cal. App. 4th 121). *See Jacobellis*, 120 F.3d at 175.

Furthermore, an employee who is compelled to make a purchase from her employer is not left without any remedy in the absence of a private right of action under § 450. Most notably, while a PAGA action might not constitute an adequate remedy,[6] it does provide some relief and deterrent. Moreover, the employee can bring a claim under California Business & Professions Code § 17200 predicated on the § 450 violation. *See UFW of Am. v. Dutra Farms*, 83 Cal. App. 4th 1146, 1163 (2000) (noting that, "under the current version of the statute, even a single act may create liability"); *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 n.3 (1997) (stating that "[t]he plain meaning of the amendment, as enacted, is that the UCA now covers single acts of misconduct"). Ms. Harris points out that, under § 17200, only equitable relief is available. *See Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 848 (2009) (stating that, "[a]lthough a private citizen can sue under the UCL, only equitable remedies are available (e.g., injunction, restitution), and damages are not an available remedy"). However, that relief includes restitution: forcing an employer to disgorge the employee's money would compensate the employee for the injury sustained. It is true that § 17200 is subject to the court's equitable discretion. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180 (2000) (noting that "[s]ection 17203 does not mandate restitutionary or injunctive relief when an unfair business practice has been shown" and that a court has "a grant of broad equitable power" in fashioning relief); *see also Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 544 (2008) (noting that equitable

---

[6] PAGA provides for fines and not damages or restitution. As Ms. Harris pointed out at the hearing, there may be some circumstances where the cost of the unlawfully mandated purchase could exceed fines available under PAGA – such as where an employee is required to purchase a cab as a condition of hire.

defenses may not be used to defeat a § 17200 claim but that "equities may be considered when the trial court exercises its discretion to fashion a remedy") (emphasis omitted). But Ms. Harris has not shown that the availability of such discretion so vitiates the adequacy of the § 17200 remedy such that it is necessary to imply a private right of action under § 450.

Finally, the Court notes that the availability of a remedy under § 17200 also suggests that Ms. Harris could not establish an implied right of action under the *Middlesex* standard even if the *Middlesex* test for implying a private right of action is deemed to have survived *Moradi-Shalal*. *See Jacobellis*, 120 F.3d at 174 (noting that the third factor under the *Middlesex* standard is that "such a remedy appears to be needed to assure the effectiveness of the statute").

Accordingly, while the issue is a close one, under weight of current authority, the Court is not able to find an implied private right of action under § 450. Therefore, Vector's motion for judgment on the pleadings with respect to this claim is granted.

B. <u>PAGA Claim</u>

As to the PAGA claim based on the § 450 violation, Vector argues for dismissal on the basis that Ms. Harris has failed to allege in her complaint that she sought permission from the appropriate state agency to prosecute the claim. Ultimately, whether or not Ms. Harris is required to plead that she gave notice to the state agency is not that significant. Even if she were, the Court has the authority to give her leave to amend to include the allegation. Ms. Harris has offered evidence showing that she did give notice, and, while that evidence is not the type of evidence of which the Court may take judicial notice, it shows at least that Ms. Harris has a good faith basis to include the allegation. Vector has failed to demonstrate that it would suffer any undue prejudice if the Court were to permit the amendment because the § 450 claim has been a part of the litigation from the outset.

Accordingly, the Court conditionally denies Vector's motion for judgment on the pleadings on the PAGA claim (based on the § 450 violation). The denial is conditioned on Ms. Harris's filing of an amended complaint to include allegations that she has sought permission from the appropriate state agency to prosecute the PAGA claim (based on the § 450 violation). The amended complaint shall be filed within a week of the date of this order.

United States District Court
For the Northern District of California

## II. CONCLUSION

For the foregoing reasons, Vector's motion for judgment on the pleadings is granted in part and denied in part.

This order disposes of Docket No. 114.

IT IS SO ORDERED.

Dated: May 20, 2010

EDWARD M. CHEN
United States Magistrate Judge