United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALICIA HARRIS,

        Plaintiff,

    v.

VECTOR MARKETING CORPORATION,

        Defendant.
_____/

No. C-08-5198 EMC

**ORDER DENYING PROPOSED INTERVENORS' MOTION TO INTERVENE**

**(Docket No. 311)**

        Currently pending before the Court is a motion to intervene submitted by two parties, Hunter Bryan and Jentila Biddle, both of whom are represented by the same counsel as Plaintiff Alicia Harris. Having considered the parties' briefs and accompanying submissions, the oral argument of counsel, and all other evidence of record, the Court hereby **DENIES** the motion to intervene.

## I.    FACTUAL & PROCEDURAL BACKGROUND

        Ms. Harris initiated this lawsuit in October 2008. The complaint asserted a class action. *See* Docket No. 6 (stipulation). In May 2009, the parties agreed that Defendant Vector Marketing Corp. would bring an early summary judgment prior to class certification proceedings. *See* Docket No. 33 (St. at 2). Vector brought that motion in June 2009. *See* Docket No. 35 (motion). On September 4, 2009, the Court granted in part and denied in part Vector's motion. *See* Docket No. 71 (order). More specifically, the Court held that Vector was entitled to summary adjudication on (1) the § 226

1  damages claim (but not the § 226 injunctive relief claim) and (2) the §§ 201/203 claim.[1] On all other
2  claims, Vector's request for summary adjudication was denied. The Court's rulings applied only to
3  Ms. Harris's claims as an individual because class certification proceedings had not yet been
4  initiated. However, because Ms. Harris did not have a § 226 or §§ 201/203 claim, there was no
5  standard bearer for the class for those claims.

6  Almost a year has passed after the Court's summary judgment order. Now, Mr. Bryan and
7  Ms. Biddle, both of whom are represented by the same counsel as Ms. Harris, have asked for
8  permission to intervene in this lawsuit. Intervention is sought to add new class representatives and
9  to resuscitate the §§ 226 and 201/203 claims – *i.e.*, so that these claims may have a standard bearer
10 for the class.

11 Under this Court's scheduling order, the last day to amend the pleadings or add parties was
12 April 14, 2010, which was more than five months ago. The motion for class certification pursuant to
13 Federal Rule of Civil Procedure 23 is due to be filed on September 22, 2010, *i.e.*, in just a few days.
14 *See* Docket No. 313 (Order, Ex. A).

## II. DISCUSSION

A. Legal Standard

As a preliminary matter, the Court addresses the parties' dispute over what is the governing Federal Rule of Civil Procedure here. According to the proposed intervenors, Federal Rule of Civil Procedure 24 alone is controlling. Rule 24 provides specifically for intervention, both as of right and permissive. According to Vector, Rule 16(b) is controlling – or at the very least, both Rule

---

[1] California Labor Code § 226 requires an employer to keep and provide accurate pay records. *See* Cal. Lab. Code § 226(a) (providing that "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employees wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing [*inter alia*] gross wages earned"); *Cornn v. UPS, Inc.*, No. C03-2001 TEH, 2006 U.S. Dist. LEXIS 9013, at *4 (N.D. Cal. Feb. 22, 2006) (stating that, "[u]nder California Labor Code section 226, employers must provide accurate itemized statements of wages to their employees").

California Labor Code § 201 of the Labor Code requires that wages be paid in a timely fashion upon discharge. *See* Cal. Lab. Code § 201(a) (providing that, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately").

16(b) and Rule 24. Under Rule 16(b),"[a] schedule may be modified only for good cause." Fed. R. Civ. P. 16(b)(4).

The Court holds that Rule 16(b) applies. The proposed intervenors contend that of Rule 16(b) is applicable only with respect to the existing parties in the case. However, nothing in the rule states that it is to be so limited, and the proposed authorities have cited no authority to support their position. In fact, there is authority that supports the opposite position, holding that Rule 16 is applicable when a proposed intervenor seeks to intervene. *See Briggs v. United States*, No. C 07-05760 WHA, 2009 U.S. Dist. LEXIS 50972, at *2-3 (N.D. Cal. June 1, 2009) (applying Rule 16(b) good cause standard in case where intervention sought after date for adding new parties passed under court's scheduling order); *HomeBingo Network, Inc. v. Cadillac Jack, Inc.*, No. 05-0701-WS-B, 2006 U.S. Dist. LEXIS 87502, at *5 (S.D. Ala. Nov. 29, 2006) (same); *see also Platinum Cmt. Bank v. Marshall Invs. Corp.*, No. 06 C 3544, 2008 U.S. Dist. LEXIS 60592, at *8 (N.D. Ill. July 29, 2008) (agreeing with the proposition that there must be good cause for a motion for intervention under Rule 16(b) where the proposed amendment requires modification of the court's scheduling order; but noting that, in case under consideration, the scheduling order had been vacated).

In this case, through the intervention motion, the plaintiff putative class seeks to add parties – literally falling within the scope and certainly the spirit of the Court's scheduling order which was carefully calculated with the rest of the case scheduling and trial date in mind. The advisory committee notes for Rule 24, as well as the text of Rule 23, which the proposed intervenors cited both in their papers and at the hearing, do nothing more than establish that a class member has the right to intervene. *See* Fed. R. Civ. P. 24(a), 1966 advisory committee notes (stating that "a member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court"); Fed. R. Civ. P. 23(d)(1)(C) (providing that a court may "impose conditions on the representative parties or on intervenors"). They do not negate the effect of a scheduling order entered by the Court pursuant to Rule 16(b).

Accordingly, the Court concludes that Rule 16(b) is one of the governing rules with respect to this motion. That being said, it should be noted that, as a practical matter, it does not matter

3

whether Rule 16(b) is one of the governing rules. As discussed below, even if Rule 24 alone were controlling, the proposed intervenors' motion would still fail.

B.     Rule 16(b)

As noted above, Rule 16(b) provides in relevant part that "[a] schedule may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). In the instant case, the Court issued a scheduling order in March 2010, specifying that the last day to amend the pleadings or add parties was April 14, 2010. *See* Docket No. 126 (Order, Ex. A); *see also* Docket No. 313 (Order, Ex. A) (reiterating same deadline). The proposed intervenors' motion, though one to intervene, is also properly considered a motion to amend the pleadings or a motion to add new parties. Therefore, the question is whether the proposed intervenors have established good cause to modify the scheduling order.

Under Ninth Circuit law, a court focuses on the reasonable diligence of the moving party in deciding whether there is good cause to modify the scheduling order. *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007); *see also Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992) (stating that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief" under Rule 16(b); adding that "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, [but] the focus of the inquiry is upon the moving party's reasons for seeking modification").

With respect to Mr. Bryan, there has been no attempt whatsoever to make any demonstration of reasonable diligence. The only declaration that the Court has from Mr. Bryan, *see* Docket No. 135 (Hunter Decl.), says nothing at all about his diligence. For that reason alone, he has failed to satisfy the Rule 16(b) good cause standard and his motion to intervene is denied.

Moreover, the evidence of record reflects that, at the very least, Mr. Bryan knew about this lawsuit on April 13, 2010, *i.e.*, the day that he submitted the above-referenced declaration (in conjunction with Ms. Harris's motion for conditional FLSA certification). Mr. Bryan notes that knowledge of the lawsuit does not necessarily mean knowledge of the inadequacy of Ms. Harris with respect to the §§ 226 and 201/203 claims. This might be a fair point but for the fact that Mr. Bryan was represented by the same counsel as Ms. Harris. It is fair to impute the knowledge of counsel – Mr. Bryan's agent – to him, *cf. I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*,

4

1 No. C-03-1561 MMC, 2005 U.S. Dist. LEXIS 39481, at *55 (N.D. Cal. Dec. 30, 2005) (stating that,
2 "even if the quarterly reports were sent only to Roy's lawyer and broker, such individuals were
3 acting as Roy's agents, and any notice provided to them on Roy's behalf was imputed to Roy"), and
4 clearly counsel had knowledge of the dismissal of Ms. Harris's §§ 226 and 201/203 claims.

5 As for Ms. Biddle, her declaration addresses diligence but provides no real specifics to be of
6 any use to the Court. For example, in her declaration dated August 23, 2010, she states that, "[i]n
7 the course of my recent discussions with counsel, I have come to understand that claims for
8 improper wages statements and prompt payment of wages due on termination are not being
9 represented in this litigation." Biddle Decl. ¶ 12. The term "recent" lacks precision. It is not clear,
10 based on the use of the term, whether Ms. Biddle learned of this fact a week, a month, or even
11 several months before her declaration was filed. Thus, like Mr. Bryan, Ms. Biddle has failed to
12 satisfy the Rule 16(b) good cause standard and her motion to intervene is denied on that basis alone.

13 The Court also notes that Ms. Biddle knew of this lawsuit – as expressly stated in her
14 declaration – in the beginning of April 2010. *See* Biddle Decl. ¶ 11. And like Mr. Bryan, Ms.
15 Biddle was represented by the same counsel as Ms. Harris. Ms. Biddle has failed to explain why,
16 when her attorneys knew of the dismissal of the dismissal of Ms. Harris's §§ 226 and 201/203, she
17 did not move to intervene earlier.

18 As a final point, the Court notes that – although not dispositive – the diligence of counsel for
19 the proposed intervenors, even before the proposed intervenors learned of the lawsuit, should be
20 taken into consideration because counsel for the proposed intervenors has represented Ms. Harris
21 from the inception of this case. As the Court noted at the hearing, Judge Alsup took into account the
22 diligence of counsel under essentially the same circumstances as here. In *Briggs*, the plaintiff filed a
23 class action consisting of two different claims. Subsequently, Judge Alsup held that the second
24 claim was moot. *See Briggs*, 2009 U.S. Dist. LEXIS 50972, at *2. A year later, counsel for the
25 plaintiff sought to revive the dismissed claim two. More specifically, counsel asked for leave to
26 amend the complaint and to allow a new plaintiff to intervene in the case as a substitute named
27 plaintiff and class representative for the claim that was dismissed as moot as to the original plaintiff.
28 *See id.* Judge Alsup denied the motion. He noted that not only had the new proposed plaintiff not

been diligent in seeking the amendment but also that counsel had not been diligent: "[The] action was filed in November 2007. The deadline to request leave to amend the complaint or to add new parties passed approximately fourteen months ago. Class two was dismissed as moot more than twelve months ago. The case has since moved forward and is now at an advanced stage." *Id.* at *4. Judge Alsup went on to note that the original plaintiff – and therefore implicitly counsel for the original plaintiff – "evidently took no affirmative steps to identify a new plaintiff with live claims in the year since class two was dismissed other than a discovery request to the government [defendant]." *Id.* at *7.

*Briggs* aside, it is also fair to take into account the diligence of counsel because counsel has a fiduciary duty to the putative class even prior to class certification. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) (stating that, "[b]eyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed"); *see also Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (indicating agreement with the above statement in *GMC*); *Schick v. Berg*, No. 03 Civ. 5513 (LBS), 2004 U.S. Dist. LEXIS 6842, at *18 (S.D.N.Y. Apr. 20, 2004) (stating that "pre-certification class counsel owe a fiduciary duty not to prejudice the interests that putative class members have in their class action litigation" because "class counsel acquires certain limited abilities to prejudice the substantive legal interests of putative class members even prior to class certification"); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) (noting that "lead counsel owes a generalized duty to unnamed class members [prior to certification]").

Taking into account the diligence of counsel in the instant case, the Court notes that, in the papers that have been filed, counsel has provided no explanation as to why it took counsel approximately a year to file the motion to intervene after the dismissal of Ms. Harris's §§ 226 and 201/203 claims. At the hearing, counsel argued for the first time that it did not believe it necessary to find a substitute representative for those claims until Vector filed its motion to strike the claims in late June 2010. *See* Docket No. 193 (motion to strike). Counsel added that its actions were justified

because there is case law holding that, even where a plaintiff in a class action lacks standing to pursue a claim, that same plaintiff may still be a class representative for that claim.

The Court is not persuaded. There is clear Ninth Circuit authority stating that a plaintiff who lacks standing to pursue a claim cannot be a class representative for that claim. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (stating that, "if Lierboe has no stacking claim, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail"); *see also Wooden v. Board of Regents of the Univ. Sys.*, 247 F.3d 1262, 1287 (11th Cir. 2001) (stating that, "as a prerequisite to certification, it must be established that the proposed class representatives have standing to pursue the claims as to which classwide relief is sought"). Accordingly, counsel was not justified in waiting a year before pursuing a motion to intervene.

While there may be cases supporting counsel's position, counsel has not pointed to any Ninth Circuit authority supporting its position. Moreover, counsel admitted that it knew not all courts have held that a plaintiff lacking standing could still be a class representative, and therefore counsel took a severe risk in not seeking a substitute representative for the §§ 226 and 201/203 claims after the Court's summary judgment ruling disposing of those claims as asserted by Ms. Harris.

Finally, it is worth noting that, even after Vector did move to strike the §§ 226 and 201/203 claims on June 21, 2010, *see* Docket No. 193 (motion), counsel still waited until August 23, 2010, *i.e.*, two months later, to file the motion to intervene. In its order on the motion to strike, the Court specified that counsel had to file the motion by August 23, *see* Docket No. 304 (Order at 7), but nothing precluded counsel from filing the motion earlier, especially when counsel knew that, at the very least, Rule 24 had a timeliness component. Notably, counsel even failed to file the motion to intervene by August 2, 2010, the date that it stated the motion would be filed in the opposition to Vector's motion to strike. *See* Docket No. 208 (Opp'n at 9).

In sum, the Court concludes that the proposed intervenors have failed to establish good cause for modification of the Court's case management order because they, as well as their counsel, did not act with reasonable diligence in filing the motion to intervene.

7

## C. Rule 24

Even if Rule 16(b) were not applicable to the instant case, Rule 24 – like Rule 16 – has a timeliness element. Whether a party seeks to intervene as of right (Rule 24(a)) or by permission (Rule 24(b)), the motion by the party must be timely. *See* Rule 24(a)-(b) (specifying that intervention is possible "[o]n timely motion"). Three factors are considered in determining whether a motion to intervene is timely: "'(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (noting that the timeliness factors are the same under Rule 24(a) and (b), although adding that, for permissive intervention, the timeliness element is analyzed more strictly).

### 1. Stage of the Proceeding

This factor weighs against the proposed intervenors. It is hardly early in the proceedings given that this case was initiated back in October 2008. More important, the hearing on the Rule 23 class certification motion is currently set for October 27, 2010, and the opening brief is due on September 22, 2010, *i.e.*, just a few days away. *See* Docket No. 313 (Order, Ex. A). As the parties know, the current case management schedule, having been amended, contains a compressed time line with little room for delay.

### 2. Prejudice

This factor also weighs against the proposed intervenors. Vector has made a substantial showing that intervention at this stage of the proceedings would be unfairly prejudicial. If the proposed intervenors were allowed to intervene, then, in order to oppose the motion for class certification, Vector may well need to do discovery beyond deposing the proposed intervenors. Most notably, in the case of Ms. Harris, Vector has shown a legitimate need to subpoena records from third parties – *e.g.*, the telephone records for the proposed intervenors (in order to investigate the amount of contact the proposed intervenors had with Vector's managers while they were Sales Representatives) – and to take the depositions of third parties – *e.g.*, the depositions of persons to whom the proposed intervenors allegedly made sales presentations (in order to determine whether those presentations were in fact made). Vector has also demonstrated that it would likely need to

8

track down the proposed intervenors' managers, who may not work for Vector any more, in order to determine whether, *e.g.*, the managers made the statements attributed to them by the proposed intervenors. While the above discovery and investigation might plausibly be done in a compressed amount of time, there is no possibility that it may be done by the time the opening motion for class certification is to be filed (September 22, just a few days away) or even by the time Vector's opposition brief is due (October 6, less than three weeks away).[2]

In contrast, denying intervention would not cause any prejudice to Ms. Harris because she lacks standing to pursue the §§ 226 and 201/203 claims. Moreover, the proposed intervenors admitted that they would still be able to file an independent class action asserting the §§ 226 and 201/203 claims. While the proposed intervenors noted that the statute of limitations might bar them from raising these claims for the same exact class period as here, the Court deems that an insufficient showing of prejudice as their claims would not be barred in their entirety and especially since such an action could have been filed over a year ago when this Court granted summary judgment. Furthermore, there has been no showing of prejudice by proposed intervenors as they have not proffered any evidence different from that presented by Ms. Harris in opposing summary judgment as these two claims.

### 3. Reason for and Length of Delay

Finally, this factor weighs against the proposed intervenors. As discussed above, the proposed intervenors failed to act with reasonable diligence in moving to intervene. Moreover, the length of the delay is not insignificant: It has been a year since the Court's summary judgment ruling, and the proposed intervenors have known of the lawsuit and have known of the potential inadequacy of Ms. Harris as a class representative for the §§ 226 and 201/203 claims (via their counsel) since approximately April 2010.

---

[2] In a supplemental brief, the proposed intervenors suggest that any prejudice to Vector could be cured by the Court conditionally certifying the class and reserving to Vector the right to further challenge the adequacy of the intervenors at a later date. *See* Docket No. 325 (Prop. Intervenors' Supp. Br. at 4). The Court is not inclined to take this approach. The schedule in this case has been repeatedly altered and compressed. Delaying resolution would likely derail the case management schedule that the Court has crafted and that the Court does not intend to modify absent a strong showing of good cause.

9

4. <u>Summary</u>

Taking into account the three factors discussed above, the Court concludes that the motion to intervene was not timely and therefore intervention, whether under Rule 24(a) or (b), is barred.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the proposed intervenors' motion to intervene is denied.

This order disposes of Docket No. 311.

IT IS SO ORDERED.

Dated: September 17, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge