John P. Zaimes (SBN 91933)
jzaimes@reedsmith.com
Roxanne M. Wilson (SBN 94627)
rwilson@reedsmith.com
John H. Lien (SBN 222842)
jlien@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:  +1 213 457 8000
Facsimile:   +1 213 457 8080
Attorneys for Defendant
Vector Marketing Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HARRIS, as an individual and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>VECTOR MARKETING CORPORATION, a Pennsylvania corporation; and DOES 1 through 20, inclusive,<br><br>                    Defendants. | No.: CV 08 5198 EMC<br><br>Date:              October 27, 2010<br>Time:             10:30 a.m.<br>Courtroom:    C<br><br>Complaint Filed: October 15, 2008<br>Trial Date:        June 6, 2011 |

**DEFENDANT VECTOR MARKETING CORPORATION'S**

**MEMORANDUM OF POINTS AND AUTHORITIES IN**

**OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL**

**COLLECTIVE ACTION CERTIFICATION**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ............................................................. 1

II.   THE DEFICIENCIES IN PLAINTIFF'S MOTION ARE SO
GLARING THAT THE MOTION FALLS WELL SHORT OF
MEETING PLAINTIFF'S BURDEN OF PROOF ................................. 3

III.   IT CANNOT BE DETERMINED ON A CLASS-WIDE BASIS
WHETHER THE FOUR-PART TEST APPLIES HERE ...................... 6

IV.   PLAINTIFF CONCEDES BY IMPLICATION THAT THE COURT
SHOULD EXAMINE THE INDEPENDENT CONTRACTOR
VERSUS EMPLOYEE FACTORS BUT FAILS TO FULLY OR
PROPERLY ANALYZE THOSE FACTORS HERSELF ..................... 10

V.    PLAINTIFF FAILS TO CARRY HER BURDEN OF SHOWING
THAT THE OPT-IN CLASS MEMBERS ARE SIMILARLY
SITUATED WITH RESPECT TO THE SIX-PART ECONOMIC
REALITIES TEST............................................................................... 13

     A.    Factor No. 1: Plaintiff Fails To Show That The Class
Members Are Similarly Situated On The Issue Whether Their
Training Is Fungible ................................................................ 15

     B.    Factor Nos. 2 and 4: Plaintiff Fails To Show That The Opt-Ins
Are Similarly Situated On The Issue Whether Vector Derived
An Immediate Advantage From Their Training ....................... 16

     C.    Factor No. 3: Plaintiff's Argument As To This Factor Is
Entirely Off Point.................................................................... 17

     D.    Factor No. 5: Plaintiff Has Failed To Present Any Evidence
That The Opt-Ins Are Similarly Situated On The Issue
Whether They Are Necessarily Entitled To A Job At The
Conclusion Of The Training Period ........................................ 18

VI.   PLAINTIFF HAS FAILED TO SHOW THAT DAMAGES CAN BE
PROVEN ON A CLASS-WIDE BASIS ............................................. 18

VII.   EVEN IF CERTIFIED, THE FLSA CLASS PERIOD WOULD
HAVE TO BE LIMITED TO TWO YEARS....................................... 19

VIII.   THE SIGNIFICANCE OF THE COURT'S RECENT DECISION
NOT TO HAVE THE PARTIES FILE REPLY BRIEFS..................... 21

IX.   CONCLUSION................................................................................... 23

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

# TABLE OF AUTHORITIES

## CASES

Bienkowski v. Northeastern University,
  285 F.3d 138 (1st Cir. 2002)...................................................................9

Bonnette v. California Health and Welfare Agency,
  704 F.2d 1465 (9th Cir. 1983) ........................................................14, 15

Chao v. Tradesmen Int'l., Inc.,
  310 F.3d 904 (6th Cir. 2002) ..................................................................9

Donovan v. American Airlines, Inc.,
  514 F. Supp.526 (N.D.Tex. 1981)........................................................18

Goldberg v. Whitaker House Coop., Inc.,
  366 U.S. 28 (19671).............................................................................14

Hale v. Arizona,
  993 F.2d 1387 (9th Cir. 1993) .............................................................14

In re Wal-Mart Stores, Inc.,
  2008 U.S. Dist. LEXIS 109446 (N.D.Cal. 2008) ................................21

Johnson v. Mammoth Recreations,
  975 F.2d 604 (9th Cir. 1992) ...............................................................21

Kerce v. West Telemarketing Corp.,
  575 F. Supp. 2d 1354 (S.D.Ga. 2008) ...................................................6

Ketchum v. City of Vallejo,
  523 F. Supp. 2d 1150 (E.D.Cal. 2007) ................................................19

Leuthold v. Destination Am.,
  224 F.R.D. 462 (N.D.Cal. 2004)............................................................3

McLaughlin v. Richland Shoe Co.,
  486 U.S. 128 (1988).............................................................................19

Nelson v. Waste Mgt. of Alameda County, Inc.,
  33 Fed.Appx. 273 (9th Cir. 2002) .......................................................20

Pfohl v. Farmers Ins. Group,
  2004 WL. 554834 (C.D. Cal. 2004) .......................................................6

Provenz v. Miller,
  102 F.3d 1478 (9th Cir. 1996) .............................................................22

Reich v. Parker Fire Protection Dist.,
  992 F.2d 1023 (10th Cir. 1993) .................................................14, 15, 17

Rutherford Food Corp. v. McComb,
  331 U.S. 722 (1947)......................................................................13, 14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

Tovar v. U.S. Postal Serv.,
  3 F.3d 1271 (9th Cir. 1993) ...................................................................22

Ulrich v. Alaska Airlines, Inc.,
  2009 WL. 364056 (W.D. Wash. 2009) ..................................................8

Vasquez v. Coast Valley Roofing, Inc.,
  670 F. Supp. 2d 1114 (E.D.Cal. 2009) ...............................................4, 5

Wong v. HSBC Mortgage Corp. (USA),
  2010 WL. 3833952 (N.D.Cal. 2010) ......................................................5

## STATUTES

29 U.S.C. § 255(a) ...................................................................................19

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   **I.**     **PRELIMINARY STATEMENT**

2      Plaintiff's Motion for Final Collective Action Certification misses its mark

3   badly, and in so doing fails to come even close to carrying plaintiff's burden of

4   showing that she is entitled to final collective action certification.  Most of the Motion

5   is such an off point ramble that it largely ignores the key facts and the law pertaining

6   to FLSA final collective action certifications.  It is an unusually deficient filing in at

7   least the following respects:

8      A.     About half of the 22 pages that comprise plaintiff's short memorandum

9   of points and authorities are filled with rhetoric that seems better chosen to address a

10   rally than to address the issue whether final collective action certification should be

11   granted.  The reader is repeatedly treated to the use of such inflammatory phrases as

12   an "indoctrination session" when describing the Vector training experience, referring

13   to Vector as "preying on potential recruits," referring to Vector's recruiting as a

14   "revolving door of recruits" that Vector "brings in and then 'spits out.' "  Plaintiff's

15   memorandum also describes Vector as luring recruits with promises of a "pot of gold"

16   and even makes reference to "potential fraud claims," knowing full well that such

17   claims are not part of this case.

18      All of this may do something to stir the soul of the author, and may even to

19   some extent prejudice the reader against Vector, but it has no place in a motion like

20   this.  The issues here are not governed by *ad hominem* polemics, but by analysis of the

21   law and the facts presented to the Court on the central issue whether the opt-ins are

22   "similarly situated" to one another.

23      We certainly anticipated some of this when we were drafting our Motion to

24   Decertify the FLSA Class, and we accordingly presented evidence in our "Vector

25   Story" section of the paper to counteract these anticipated attacks.  (*See* Motion to

26   Decertify FLSA Collective Action, pp. 6-7.)  However, even we were surprised at the

27   length and number of these emotional, off-point arguments.

28

No.: CV 08 5198 EMC      - 1 -

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

B.      Plaintiff also throws in other arguments that are not properly part of this Motion, concerning such things as the requested end-point of the collective action period for these FLSA claims and whether certain untimely opt-ins are to be counted as part of the class.  Strangely, plaintiff notes that those are to be the subject of a separate motion to be brought in the near future, but she nevertheless spends an inordinate amount of time discussing them in her motion, even though they have absolutely no bearing on the merits of the motion.

C.      What remains of plaintiff's brief largely refers to evidence without meaningful citation and without a focus on whether the opt-in plaintiffs are similarly situated to one another or not.  As a consequence, the motion falls well short of meeting plaintiff's burden.

That is particularly evident when plaintiff's motion is measured against Vector's Motion to Decertify the FLSA Collective Action, which discusses in considerable detail how the collective action group members are not similarly situated to each other, are not similarly situated to the broader putative class and are not similarly situated to the multiple Vector sales reps whose declarations have been submitted by Vector.  There are widely disparate facts at play here, as well as highly individualized defenses, both of which demonstrate that the opt-ins are not "similarly situated."  These facts and defenses pertain to not only the issue whether the opt-in class members are independent contractors or employees, but also the issue whether, even assuming they could be deemed employees on a class-wide basis, they also are similarly situated with respect to the six factor test for determining whether they are entitled to be paid for training.

Finally, plaintiff's meager showing on the third aspect of the similarly situated standard, whether fairness and procedural considerations weigh in favor of final certification, is entirely unpersuasive, particularly when compared to Vector's showing on this subject.  Plaintiff's Motion for Final Collective Action Certification

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   should be denied, and Vector's Motion to Decertify the Conditionally Certified FLSA

2   Collective Action should be granted.

3

## II.   THE DEFICIENCIES IN PLAINTIFF'S MOTION ARE SO GLARING THAT THE MOTION FALLS WELL SHORT OF MEETING PLAINTIFF'S BURDEN OF PROOF

7          Plaintiff in the first instance seems to misapprehend the test for determining

8   whether final certification should be granted.  The test is whether the opt-in plaintiffs

9   are similarly situated to one another, not whether they are similarly situated to plaintiff

10  Alicia Harris.  *See* Order (Docket No. 176), at p.2 (test is whether "putative collective

11  action members are similarly situated"); *Leuthold v. Destination Am.*, 224 F.R.D. 462,

12  467 (N.D.Cal. 2004) (same).  Plaintiff's motion spends a good deal of its time, when it

13  is not spouting inflammatory rhetoric and theories of how Vector "preys" on its sales

14  reps, comparing how Alicia Harris is similarly situated to the class.  That discussion,

15  along with plaintiff's misguided rhetoric, can and should be disregarded.

16         Even when plaintiff does discuss the evidence concerning the opt-ins, as

17  represented by their deposition testimony,[1] she seriously misanalyzes that evidence.

18  First, plaintiff repeatedly analyzes the evidence respecting the opt-ins by referring to

19  what "many" of the opt-ins' experiences were or what "the majority" of the opt-ins'

20  views were.  This completely misses the mark.  This is not an election, where the

21  majority rules, and it is not a summary judgment motion, where plaintiff merely has to

22  show facts sufficient to create a triable issue of material fact.  The fundamental

23  inquiry here is whether the opt-in class members bring disparate facts and settings to

24  the table and whether there are individualized defenses that pertain to them.  Court's

25  Order (Docket No. 132), at p. 2; *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.

26

[1] We note that plaintiff has not challenged whether the sample of 50 depositions randomly selected through a scientific process by Vector is a representative sampling, or that the testimony of the opt-ins can be imputed to the larger opt-in class.  That issue is now settled for purposes of this Motion.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

1   2d 1114, 1123-24 (E.D.Cal. 2009).  By arguing what "many" opt-ins said or what "the

2   majority" of opt-ins said, plaintiff has shown nothing with respect to disparate facts or

3   individualized defenses other than to, by inference, show that there is not

4   commonality among what the opt-ins' experiences were.

5         This of course contrasts with Vector's showing in its Motion to Decertify,

6   where it has carefully analyzed the opt-in testimony on all of the key elements

7   relevant to the pay for training issue, and has shown in great detail that the facts

8   pertaining to the opt-ins are disparate and the defenses pertaining to them are highly

9   individualized.  Thus, for example, plaintiff argues (page 4, lines 7 to 12) that "the

10   vast majority" of the opt-ins said that the training they received was not broadly

11   applicable but was useful only for selling Vector products.  The reality is that only

12   20% of the opt-ins said that the training was only useful for selling Vector products,

13   while 40% said that it was usable for a variety of other purposes including selling

14   Vector products and a full 26% cited the general sales techniques they learned during

15   training.  (*See* Lien Decl., at ¶2 and Exh. A, et.al. thereto.)[2]  Another 14% said they

16   did not learn anything or did not remember what they learned.  (*Id.*)  This goes

17   directly to one of the key issues in the economic realities test:  whether the training is

18   fungible.  Here we have the greatest variability possible, with some opt-ins saying it

19   was not, some opt-ins saying it was, and others saying they were not sure.  This

20   variation is confirmed by the evidence from Vector's scientific survey (*See* Saad

21   Decl., at ¶19 and Exh. A-1 thereto) and by the declarations submitted by Vector with

22   its motion to decertify.

23         In still other instances, plaintiff's citations to the evidence are incomplete and

24   misleading.  For example, over and over again in the opt-in depositions, the deponents

25   would say one thing when asked by Vector's counsel and then, when the same

26

27   2 With the exception of the declarations of John H. Lien and supplemental declaration of Paul Matheson attached to this motion, all other evidentiary citations are to the original compendium filed with Vector's Motions to Decertify the Class and Collective Actions.

28

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  questions was posed to them by plaintiff's counsel, they would change their answer

2  completely. (*See* Lien Decl., at ¶3 and Exh. B thereto.)  Of course in her motion,

3  plaintiff cites only to the portion of the deposition in which the deponent testified as

4  plaintiff wishes he/she had.  Plaintiff ignores the fact that the deponent contradicted

5  him or herself.  This obviously presents issues regarding which of the disparate facts

6  are true and which are not.  It also creates significant credibility issues and highly

7  individualized defenses with respect to each of the people who changed their

8  testimony in that way.  Based on Vector's initial analysis, a substantial percentage of

9  the opt-ins did so.  (*See* Exh. B to Lien Decl. (compiling contradictory testimony

10  elicited by opposing counsel).)[3]

11      Again, the evidentiary showing on plaintiff's motion is woefully inadequate

12  with respect to the critical "similarly situated" test applicable to this motion, and that

13  alone is sufficient to deny the motion for failure to meet plaintiff's burden of proof.

14  *See Wong v. HSBC Mortgage Corp. (USA)*, 2010 WL 3833952, *1 (N.D.Cal. 2010)

15  (finding that plaintiff failed to carry the "heavier burden" at the second step and

16  decertifying the conditional FLSA class); *Vasquez v. Coast Valley Roofing, Inc.*, 670

17  F.Supp.2d 1114, 1123-24 (E.D.Cal. 2009) ("At all times, Plaintiffs have the burden of

18  proving they meet the 'similarly situated' requirement"); Order (Docket No. 176), at

19  2:4-5.

20

21

22

23

24  3 Exhibit B to the Declaration of John H. Lien, filed concurrently herewith, identifies numerous instances where the opt-in plaintiffs testified one way on examination by Vector's counsel, but later provided contradictory testimony when asked by opposing counsel, often after breaks taken in their deposition. (*See, e.g.,* Africa Depo. (Exh. B-1), at 34:24-36:2, 38:7-10, 63:6-67:3, 104:21-105:6 (testifying that features of independent contractor relationship was explained to him, but subsequently testified that no one from Vector explained what an independent contractor was); Garcia Depo. (Exh. B-2), at 74:2-75:19, 133:5-134:15 (initially testifying that he spoke to his manager five or six times after training to Vector's counsel, but later changed it to 20 or 30 after questioning by opposing counsel); Gupton Depo. (Exh. B-3), at 65:21-66:15, 131:8-22 (disclaiming specifics of a phone conversation after the second interview, only to testify later that he was told he was "hired"); Moxley Depo (Exh. B-4), at 74:16-75:7, 160:17-161-16 (stating that he created only one list in the training program, only to identify another one when asked by opposing counsel).)

25

26

27

28

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**III.   IT CANNOT BE DETERMINED ON A CLASS-WIDE BASIS
WHETHER THE FOUR-PART TEST APPLIES HERE**

Plaintiff argues briefly (pages 10 to 11 of her brief) that the opt-in trainees were actually hired as employees before their training began and that the issue whether they are entitled to be paid for training must be analyzed under the four-part test found in the Code of Federal Regulations pertaining to <u>existing</u> employees, rather than the six-part economic realities test.  The length of plaintiff's arguments on this subject suggests how little faith she has in it, and that lack of faith is for good reason.

First, in order for the four-part test to apply, the trainees must have been hired as <u>employees</u>. *See., e.g., Pfohl v. Farmers Ins. Group*, 2004 WL 554834, *3 (C.D. Cal. 2004) ("independent contractors are not covered by the FLSA"); *Kerce v. West Telemarketing Corp.*, 575 F.Supp.2d 1354, 1362 (S.D.Ga. 2008) (applying four-factor pay for training test to initial and ongoing training at first stage of conditional certification only assuming, *arguendo*, that plaintiff was an employee, not independent contractor).  That is because, as we noted in our Motion to Decertify, the FLSA and the pay for training issues that arise under it, including this CFR section, only apply to employees.  That is even more clearly the case where plaintiff here is so clearly contending that the opt-ins are existing <u>employees</u> following their "hire."  Thus, if plaintiff is going to pursue this argument, she must also show that the opt-in class members are all similarly situated on the elements of the independent contractor versus employee test.  *See, e.g., Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1359-1362 (acknowledging that question of misclassification of independent contractor was of "primary importance" before reaching similarly situated FLSA first tier analysis on pay for training claim).[4]  However, plaintiff simply has not done so here.  In fact, she has barely made an effort, and therefore has failed to meet her

---

[4] Plaintiff has affirmed that predicate proposition elsewhere in this action.  *See* Order (Docket No. 71), at 7:3-4 ("Ms. Harris does not dispute that, if she was an independent contractor rather than an employee, *all of her claims* must be dismissed.") (Emphasis added.)

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

1   burden of showing that that threshold requirement is satisfied in order for her to

2   pursue a claim that the opt-ins were hired as employees.  Moreover, as Vector has

3   shown in its Motion to Decertify, the opt-in class members are in fact <u>not</u> similarly

4   situated on that threshold independent contractor-employee requirement in any event.

5   (We incorporate herein by reference the arguments at pages 19 to 28 of our Motion to

6   Decertify the FLSA Collective Action.)

7          While plaintiff's failure to show that the opt-ins are similarly situated with

8   respect to the independent contractor versus employee requirement is completely

9   dispositive of plaintiff's argument as to the four-part test, there is a second,

10  independent reason why the four part test argument fails.  Plaintiff has failed to show

11  that the opt-ins were similarly situated as to the issue whether they were "hired" at the

12  time they commenced training, even putting aside for purposes of this discussion

13  whether they meet the "employee" aspect of the requirement.  To begin with, the

14  relevant CFR section does not use the phrase "hired as an employee."  It simply uses

15  the phrase "employee."  This again means that, as a threshold matter, plaintiff must

16  show that the opt-in class members are similarly situated on the issue whether they

17  were current employees when they went through training.

18         This also means that the critical inquiry is whether these trainees were in fact

19  existing employees at the time they went through training.  The facts are entirely

20  disparate on this subject.  <u>First</u>, a large percentage of Vector Sales Representatives

21  (55%) simply never show up for the first day of training, even when they are told that

22  they are "accepted" or are told "welcome aboard" or are "congratulated." (Vector's

23  FLSA Decert. Mot., at 26:9-11.)  For more than half of those invited to training to not

24  show up at all strongly suggests that they do not consider themselves employees at

25  that time.  <u>Second</u>, even after participating in all or some of the initial day of training,

26  a significant percentage (45%) never show up again.  (*Id.*, at 26:12-13.)  These facts

27  are wholly inconsistent with the assertion that Vector trainees are existing employees.

28  They strongly suggest the contrary.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    <u>Third</u>, the opt-ins recognize that they must sign a Vector Sales Rep Agreement

2    before they can sell Vector products, i.e. before they can actually begin their

3    "employment" activity.  Fully 73% of the opt-ins said that they understood that, and

4    another 19% said that they were not sure.  (*See* Exh. A2-a to Saad Decl. ("Believe that

5    he/she could sell knives during training or before the sales representative

6    agreement?").)  <u>Fourth</u>, a number of opt-ins stated that they would be offered a

7    position as a sales representative upon completing training.  93% said this, while 7%

8    said they were unsure.  (*Id.*)  This presents yet another disparate set of facts

9    concerning the question of whether these individuals were existing "employees" at the

10   time of their training.

11        What this also means is that, for the most part, whatever words were used to

12   communicate to candidates what their status was, whether it was "welcome aboard,"

13   "congratulations," or "you're in," those words created something much more akin to a

14   contingent offer, the contingency being that these individuals would go through

15   training or otherwise present themselves at some time for an opportunity to sign the

16   Vector Sales Rep Agreement.  This is not unlike a situation in which someone is

17   offered a job subject to their passing a drug and alcohol screening and/or a

18   background check.  Simply because someone says "congratulations" or "welcome

19   aboard" or even "you're hired" does not establish the employment relationship,

20   particularly where there are clearly contingent events that must occur before the

21   individual can actually begin performing the required work.

22        The governing cases confirm this.  In *Ulrich v. Alaska Airlines, Inc.*, 2009 WL

23   364056, *6 (W.D. Wash. 2009), for example, the district court found that the inclusion

24   of the phrase "Congratulations and welcome!" in an employment offer letter to flight

25   attendant trainees did not undermine the conditional nature of the offer, particularly

26   where plaintiff acknowledged she was "hired" only *after* completion of training.

27   (Emphasis in original).

28

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

In *Bienkowski v. Northeastern University*, 285 F.3d 138, 141 (1st Cir. 2002), Northeastern hired campus police officers on the condition that, within one year of their appointment, they obtained certification as registered emergency medical technicians. *Id.*, at 139. (Northeastern provided the training necessary to obtain the EMT certification.) The First Circuit found that the four-part test was inapplicable, since the training at issue was not focused on "continuing education relating to existing job duties." *Id.*, at 141 (emphasis added). The appeals court "doubt[ed] that the [CFR] was meant to cover the … situation presented … that is, where the training is … a pre-condition for employment which the employer tolerantly allows to be satisfied while the employee is working on a probationary basis." *Id.*, at 141. Thus, the court found Northeastern not liable to pay for the time its employees spent as students, rather than as workers, nothing that:

> "Northeastern has decided to hire its employees on a probationary basis until they complete the training required to hold the job on a permanent basis."

*Id.*; *see also Chao v. Tradesmen Int'l., Inc.*, 310 F.3d 904, (6th Cir. 2002) (applying four part test to existing employment relationship, but declining to "penalize [ an employer] for allowing a potential employee to begin earning income while striving to meet certain prerequisites for the job when the employer could just as easily withhold employment until successful completion of all the job requirements"). The status of Vector sales reps is even more dubious than the Northeastern police officers or the individuals in *Chao*, since they do not even perform work on any sort of probationary status basis.

Finally, even putting both of these arguments aside for a moment -- and either argument is entirely dispositive of this issue -- the reality is that the opt-ins are not similarly situated on the question whether they were "hired" at the time of their training. In addition to Alicia Harris, only 32% of the opt-in plaintiffs deposed by Vector claim that they were told "you're hired." (*See* Lien Decl., at ¶4 and Exh. C-1 thereto.) Others were allegedly told very different things. Some (22%) were told

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   "welcome to the team." (*See* Lien Decl., at ¶4 and Exh. C thereto.)  That vague

2   phrase is far removed from being hired, even if there were not contingencies involved.

3   It is inspecific as to what being "welcomed to the team" means.  Does it mean that the

4   individual is being welcomed to the training sessions?  Does it mean that he or she is

5   being welcomed to some interim status?  This obviously presents a very disparate

6   factual situation from one in which someone is told "you're hired."  (*See, e.g.,* Lien

7   Decl., at ¶11 and Exh. J; Hunter Depo., at 58:13-61:23 (stating that although he felt he

8   had been offered a position as a Sales Rep, Hunter still had to go through training as

9   "part of the process"); Moxley Depo., at 93:1-7 (training was part of the process of

10  becoming a Sales Rep); Ruff Depo., at 45:5-7 (same).)

11      The same is true of the phrase "congratulations", which 12% of the opt-ins

12  testified they heard. (*See* Lien Decl., at ¶5 and Exh. D thereto.)  That word is even

13  more vague.  It by no means connotes that anyone has been hired, let alone that they

14  have been hired as an employee.  It could just as easily mean that they have been

15  accepted into the training program.  Still other opt-ins (4%) said that they were told

16  "you're in." (*See* Lien Decl., at ¶4 and Exh. C-2.)  Again, the vagueness is apparent,

17  and it begs the question, "in what?"  Training?  The remaining opt-ins' testimony on

18  this subject was so widely varied as to not be capable of categorization.

19      And of course all of these utterances not only present disparate facts, they

20  create individualized defenses for each of the opt-ins to whom they pertain.

21

22  **IV.   PLAINTIFF CONCEDES BY IMPLICATION THAT THE COURT**

23  **SHOULD EXAMINE THE INDEPENDENT CONTRACTOR VERSUS**

24  **EMPLOYEE FACTORS BUT FAILS TO FULLY OR PROPERLY**

25  **ANALYZE THOSE FACTORS HERSELF**

26      Beyond her irrelevant rhetoric, her off topic discussions of the end-point of the

27  class period and her brief discussion of the inapplicable four-part test, plaintiff spends

28  a fair amount of her motion discussing the independent contractor versus employee

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  test. (*See* Plaintiff's Motion, pages 6-7). We agree that that test is applicable here as a

2  threshold consideration, not only as to the four-part test, but as to the six-part test as

3  well. (*See* Motion to Decertify FLSA Collective Action, pp. 9-19.)

4      Plaintiff correctly focuses on control as one of the important aspects of that test,

5  but she has not thoroughly analyzed the remaining factors. And even as to the control

6  factor, plaintiff has simply misanalyzed the evidence for purposes of this motion.

7  Again, the test is whether the plaintiff opt-ins are <u>similarly</u> <u>situated</u> on the subject of

8  control, not what "many" or even "most" said. Plaintiff erroneously cites to what

9  "many" deponents testified to, or simply ignores any comparative analysis of what

10  they said.

11      For instance, in discussing Personal Daily Interest and the supposed

12  requirement of daily contact with managers, plaintiff argues that "many" deponents

13  said that they contacted their managers before, during and after each demonstration.

14  (Plaintiff's Mem., p. 6, lines 15-18.) Again, the use of the word "many" does not

15  meet the "similarly situated" test. The issue is whether there are disparate facts

16  relating to this question of contact, and there most definitely are. In fact, plaintiff's

17  own citation to evidence, Exhibit 23 to the Humphrey Declaration, refers to testimony

18  by only 27 of the 50 opt-ins, inferring that another 40% or more testified differently.

19      A much more comprehensive analysis is presented by Dr. Saad's Declaration,

20  where he analyzed all 50 deponents. The opt-ins differ markedly in what they said

21  about whether they had even some contact. Only 60% said that they did, while

22  another 16% said that they did not. Still others (24%) said they just were not sure.

23  (Saad Decl., ¶56.) It is apparent from this review that disparate facts and settings

24  abound among the opt-ins on this issue.

25      This pattern is confirmed by the survey evidence that Vector presented in its

26  Motion to Decertify. Fully 69% of the survey respondents said that they did <u>not</u> have

27  daily contact, another 18% said they had it only in the initial going, and then did not

28

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   have it thereafter.  A comparative few, 19%, said that they had ongoing daily contact.

2   (Saad Decl., at ¶64.)

3       Even more egregiously, plaintiff fails to make <u>any</u> proper showing as to another

4   of her claimed indicia of control:  the allegedly required reading and/or memorizing of

5   the training manual for use in demonstrations.  (Plaintiff's Mem., p. 6, lines 19-20.)

6   Plaintiff simply says that there is evidence of those controls and cites to all 50

7   depositions.  But what the deponents actually said was that they sometimes read the

8   manual, but not always (6%), that they did so in the early going, but later changed

9   their practice (2%), that they memorized their presentations rather than read from the

10  manual (30%), and that they read <u>portions</u> of the manual but did not read word for

11  word (12%).  Moreover, 28% of the opt-in deponents said they referred to the manual

12  and also added to or changed it, while 10% otherwise deviated from the manual by

13  using their own approach.  (*See* Lien Decl., at ¶6 and Exh. E – E-4 and E-6 – E-7

14  thereto.)  Opt-In Plaintiff Robert Paige, for example, said: "Well, they encouraged us

15  in the training manual to go kind of develop our own scripts...."  (*Id.*, at ¶7 and Exh. F

16  thereto (Paige Depo).)  Thus, we have wholly disparate facts and settings on this

17  claimed aspect of control and of course highly individualized defenses that flow

18  therefrom.[5]

19      Importantly, these are the only factors under the independent contractor

20  employee test that plaintiff analyzes.  The remainder are unaddressed, and the

21  evidentiary analysis presented by Vector in its Motion to Decertify is therefore the

22  only analysis of those factors.  (*See* Motion to Decertify, pp. 9-15.)  That analysis

23

24  [5] The situation is also clearly one of disparate facts with respect to alleged restrictions on advertising and the use of the Vector name.  (Plaintiff's Mem., p. 7, lines 1-4.)  There, plaintiff presents a blanket citation to only 22 of the 50 deponents to support this point, meaning fully 56% presumably have disparate facts.

25  Worst of all is plaintiff's cite regarding restrictions on pricing.  There, the primary evidentiary cite is to Exhibit 29 to the Humphrey Declaration, but as plaintiff confirmed in its errata sheet, there is no Exhibit 29.

26  Even on the *de minimis* point about Vector providing brochures, a short piece of rope and a piece of scrap letter (Plaintiff's Mem., p. 6, lines 21-23), plaintiff cites to only 30 of the 50 deponents, again missing the point about disparate facts and individualized defenses.  Even if all of the 30 deponents' testimony (60%) actually conforms to plaintiff's citation, that leaves 40% of the opt-ins who apparently said something at variance with the 60%.

27

28

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

1    shows that the independent contractor-employee issue cannot be resolved on a class-

2    wide basis because the opt-ins are <u>not</u> similarly situated.

3        In sum, though plaintiff concedes that it is important to examine the control

4    factor as part of the threshold issue whether these trainees are "employees" under the

5    FLSA, she absolutely fails to meet her evidentiary burden with respect to control or

6    the other factors in the independent contractor-employee test. Plaintiff's Motion for

7    Final Collective Action Certification should be denied, and Vector's Motion to

8    Decertify granted, on this basis alone.

9

10   **V.    PLAINTIFF FAILS TO CARRY HER BURDEN OF SHOWING THAT**

11   **THE OPT-IN CLASS MEMBERS ARE SIMILARLY SITUATED WITH**

12   **RESPECT TO THE SIX-PART ECONOMIC REALITIES TEST**

13       The inquiry with respect to the FLSA pay for training claim and whether it can

14   be adjudicated on a class basis ends with the analysis of the employee versus

15   independent contractor facts just discussed. That analysis demonstrates that the opt-in

16   members are not similarly situated, and thus precludes final collective action

17   certification.

18       But even if plaintiff were able to overcome that impediment, she has also failed

19   to meet her burden on the economic realities test. First of all, we would do well to

20   bear in mind what this test is. It is an "economic realities" test. Thus, it should be

21   applied in a way that takes into consideration the economic realities. That is, it

22   requires a realistic look at the economics of what has taken place here, not some set of

23   theoretical arguments, many of them off point. Yet off point theoretical arguments are

24   largely what plaintiff has presented. Indeed, plaintiff does not even get to her main

25   argument on the economic realities test until roughly the 2/3 mark of her motion. That

26   argument presents too little too late.

27       The Supreme Court has made clear that the "economic realities" test is one that

28   broadly examines the economic realities of the situation. *See Rutherford Food Corp.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    *v. McComb*, 331 U.S. 722, 730 (1947) (finding that the determination of whether an

2    employer-employee relationship exists does not depend on "isolated factors but rather

3    upon the circumstances of the whole activity"); *Goldberg v. Whitaker House Coop.,*

4    *Inc.*, 366 U.S. 28, 33 (19671) (finding that the touchstone is "the economic reality" of

5    the relationship).

6         The Department of Labor also analyzes the relationship between the parties by

7    looking at the economic realities of the situation itself, and not just a specific pocket

8    of time, such as training.  As the prefatory language of the DOL test states, "Whether

9    trainees are employees... will depend upon *all* circumstances surrounding their

10   activities on the premises of the employer."  *See* Wage & Hour Manual (BNA) 91:416

11   (1975); *Reich v. Parker Fire Protection Dist.*, 992 F.2d 1023, 1026-27 (10th Cir.

12   1993) (same).  Wage and Hour Administrator opinion support this view, clearly

13   stating that "there is no single rule or test for determining whether an individual is an

14   employee, but that the *total situation controls*."  *See* Op. Wage-Hour Adm'r No. 638

15   (July 18, 1967) (emphasis added).

16        The Ninth Circuit also uses the "totality of the circumstances" approach.  That

17   court's approach frames the "economic realities" test as one that applies to the entirety

18   of the situation between the parties and not to one specific or particular context.

19   *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465 (9th Cir. 1983)

20   stated that courts are to consider the "totality of the circumstances" of the relationship.

21   *Id.* at 1470.  However, the court also stated that, while the factors "provide a useful

22   framework for analysis ... they are not etched in stone and will not be blindly applied."

23   *Id.* at 1470.

24        The Ninth Circuit reaffirmed its stance in *Hale v. Arizona,* 993 F.2d 1387 (9th

25   Cir. 1993).  The court there held that inmates who work in prison programs are not

26   employees under the FLSA.  *Hale* found that the *Bonnette* factors were not as useful

27   because, while the prisoners were required to do work, they were also provided with

28   clothing, shelter and food.  *Id.* at 1394.  As such, the court held that the totality of the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  circumstances presented did not indicate an employer-employee relationship

2  contemplated by the FLSA, reasoning instead that the economic reality of the

3  relationship in that case lay "in the relationship between the prison and the prisoner"

4  and was not one of employer and employee. *Id.* at 1395.

5      **A.**     **Factor No. 1: Plaintiff Fails To Show That The Class Members Are**

6              **Similarly Situated On The Issue Whether Their Training Is Fungible**

7          The first factor of the economic realities test looks at "whether the training,

8  even though it includes actual operation of the facilities of the employer, is similar to

9  that which would be given in a vocational school." *Reich v. Parker Fire Prot. Dist.*,

10  992 F.2d 1023, 1027-28 (10th Cir. 1993). Plaintiff does not analyze either aspect of

11  this factor, i.e. whether the training includes actual operation of the facilities of the

12  employer <u>or</u> whether the training is fungible. Instead, plaintiff's memorandum

13  embarks on a brief off point ramble about whether the training is uniform or not and

14  then summarily concludes that, because the training is uniform, this factor can be

15  determined on a class-wide basis. (Plaintiff's Mem., p. 13, lines 2-18.) Would that

16  the analysis were that simple.

17          For example, there are highly disparate facts which plaintiff never discusses on

18  the subject of whether the training is similar to that which would be given in a

19  vocational school, i.e. is fungible. The opt-in class members testified in some

20  instances (20%) that they felt that the Vector training was not fungible, but that it only

21  applied to Vector sales. (*See* Lien Decl., at ¶2 and Exh. A - A-4 thereto.) Still others

22  (26%) testified to precisely the opposite. They felt that the training had broader

23  application.[6] (*Id.*) And still others (40%) believed that they received both general

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

   6 For example, opt-in plaintiff Brandon Watrin said:

25          Q. So when you talk about your experience as a Vector sales rep, what do you say to potential --
        or what have you told potential employers?

26          A. I basically gave a brief -- I basically give a brief summation of what I did for the company and
        what I learned from it and how I still use what would be applicable for the new job.

27          Q. And can you tell me how you say it would be applicable for the new job?

28          A. Yeah. Vector. it taught me a lot of things. Like it taught me how to motivate myself and

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    sales training and specific training for selling Vector products. (*Id.*)[7] These facts are

2    obviously as disparate as they can be on this subject, even among the opt-ins. The full

3    spectrum of variability is present here:  yes, no, yes and no, and maybe so.

4         The survey results confirm the disparate nature of the facts surrounding this

5    factor even more emphatically. Fully 41% of those surveyed said the training was

6    fungible in terms of learning how to organize a sales presentation. Another 31% said

7    training was fungible in terms of learning how to speak comfortably in a sales setting.

8    (Saad Decl., at ¶19 and Exh. A-1 thereto.) In sum, there are disparate facts, and along

9    with them individualized defenses, on the subject of whether this training was

10   fungible, and that precludes final collective action certification.

11   **B.**   **Factor Nos. 2 and 4:  Plaintiff Fails To Show That The Opt-Ins Are**

12           **Similarly Situated On The Issue Whether Vector Derived An**

13           **Immediate Advantage From Their Training**

14        In this discussion, plaintiff tries a couple of different sleights of hand. First,

15   plaintiff lumps together Factor No. 2, whether the training is for the benefit of the

16   trainees, with Factor No. 4, whether the training provides <u>immediate</u> benefit to Vector.

17   They are wholly different tests, as is obvious from reciting them. Plaintiff knows that

18   the evidence is overwhelmingly in Vector's favor on the benefit to the trainees factor,

19   so she attempts to subsume that factor in the immediate benefit analysis.

20        Second, knowing that she has problems with the "immediate benefit" factor,

21   particularly based on what the Court has previously said in motion hearings about the

22   need to show that the benefit is in fact <u>immediate</u>, plaintiff ignores the word

23   "immediate" and refers instead to a "<u>substantial</u> benefit." (*See, e.g.*, Vector's Motion

---

24        schedule myself and how I could succeed in any world and how -- and as far as job-specific things, it

25        taught me how to build rapport with people and build customer service and listen to the customer and
          develop exactly what they would like. and how -- basically customer service and how -- time
          management skills, things of that nature.

26   *See* Exh. L to Lien Decl. (Watrin Depo.), at 136:5-21.

27   7 In addition, there were facts presented through the university professors as to the fungibility of this training. (Motion
     to Decertify FLSA Collective Action, pp. 20-22.)

28

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    for Reconsideration (Docket No. 295), at pp. 6-9.)  It is also at this juncture that

2    plaintiff also launches into a significant portion of her rhetoric about "preying on

3    potential recruits," "revolving door of recruits being spit out" and the like.  Included in

4    this rhetoric are references to such facts as when sales were made, what percentages of

5    sales reps made sales, the amounts of commissions earned on average, and various

6    and sundry other factors.  These assertions are all entirely irrelevant to the inquiry

7    whether <u>immediate</u> benefit can be shown on a class-wide basis, especially whether the

8    benefit was derived in training, and they should be ignored as simply more of the *ad*

9    *hominem* rhetoric that characterizes much of plaintiff's motion.

10       All of this appears to be an attempt to mask the fact that plaintiff knows that, in

11   terms of immediate benefit, she cannot show on a class-wide basis, if on any basis at

12   all, that Vector receives an <u>immediate</u> benefit during the training.  *Reich v. Parker*

13   *Fire Prot. Dist.*, 992 F.2d 1023, 1129 (10th Cir. 1993) ("[i]nsofar as the trainees did

14   not perform productive work for defendant during their training, the benefit to

15   defendant was de minimis").  We will not repeat the thorough analysis set forth in our

16   Motion to Decertify of the multiple ways in which the issue of immediate benefit is

17   laden with disparate facts and individualized defenses but will simply refer the Court

18   to pages 23 to 26 of that Motion and incorporate it herein by reference.

19   **C.    Factor No. 3:  Plaintiff's Argument As To This Factor Is Entirely Off**

20   **       Point**

21       Over the course of two paragraphs, plaintiff launches into a discussion of her

22   and her counsel's personal theories of wrongdoing by Vector.  That discussion has

23   absolutely nothing to do with whether the trainees displace regular employees.  As we

24   noted in our Motion to Decertify, Vector trainees do not displace regular "employees"

25   or regular sales reps.  Plaintiff does not even address this point, opting instead to

26   belabor her theory of how Vector is engaged in a nefarious plot to lure people into

27   becoming sales reps, while at the same time preparing to train people to <u>replace</u> them.

28

No.: CV 08 5198 EMC                          - 17 -

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  This discussion, without any evidentiary support, and without any relevance, should

2  be entirely disregarded.[8]

3       **D.   Factor No. 5:  Plaintiff Has Failed To Present Any Evidence That**

4                 **The Opt-Ins Are Similarly Situated On The Issue Whether They Are**

5                 **Necessarily Entitled To A Job At The Conclusion Of The Training**

6                 **Period**

7       In this section, Plaintiff again offers only argument, and <u>not a single citation</u> to

8  any evidence.  Thus, on this subject, the evidentiary analysis in Vector's Motion to

9  Decertify is entirely unopposed in terms of any evidentiary showing as to whether this

10  is a factor that can be determined on a class-wide basis.  We incorporate that

11  discussion herein (pages 26 to 27) by this reference.

12

13  **VI.   <u>PLAINTIFF HAS FAILED TO SHOW THAT DAMAGES CAN BE</u>**

14       **<u>PROVEN ON A CLASS-WIDE BASIS</u>**

15       We did not discuss in our Motion to Decertify whether damages can or cannot

16  be proven on a class-wide basis, but since plaintiff raises this point in her motion, we

17  will address it briefly here.  The fact is that damages on the pay for training claim

18  cannot be proven on a class-wide basis because the opt-ins are all over the map in

19  terms of what they claim their damages were.  As the Court knows, the standard

20  training period is 18 hours, spread over three days, and many of the opt-ins claim that

21  they participated in about 18 hours of training.  But a large percentage (60%) say that

22  they participated in anywhere from 24 hours to 1,360 days.  (Saad Decl., at ¶74-75.)[9]

23  As we noted in our Motion to Decertify, this presents both disparate facts and

24

---

25  [8] The key term here is "displace," not "replace."  Of course Vector has to "replace" members of its sales force over time.
Every company does.  That is why some or all of the pay for training cases, from the seminal Portland Terminal to the

26  airline training cases, discuss training new people to replace existing people.  There is nothing nefarious about that.  *See,
e.g., Donovan v. American Airlines, Inc.,* 514 F.Supp.526, 529 (N.D.Tex. 1981)(finding American's training program
non-compensable under the FLSA even though the company was "careful to match its forecasted need for flight
attendants with the number of accepted applicants to avoid unnecessary training or attendant shortages").

27  [9] Another 30% said they spent less than 18 hours.  *See generally,* Exh. I to Wilson Decl. (roughly 1730 consent to join
forms).

28

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

1 individualized defenses, and thus militates for denial of final collective action

2 certification.

3 It is certainly not enough to take these plaintiffs at their word, particularly

4 where they are motivated by the expectation of greater financial gain by driving up the

5 number of days they claim they were trained.  Indeed some of the claims are so

6 ridiculous as to demand individualized inquiries as to how any one plaintiff could

7 have spent over 50 hours in training or over 100 or over 1,360 hours.  (See Lien Decl.,

8 at ¶8 and Exh. G thereto (C. Galvez claiming 80 hours of training; J. Miranda

9 claiming 631 hours; J. Rogers claiming 500 hours; B. Smith claiming 100 hours; S.

10 Tan claiming 88 hours; K. Corral claiming 1,360; B. Westbrook claiming 840 hours).)

11 Damages cannot be proven on a class-wide basis.

12

13 **VII.  EVEN IF CERTIFIED, THE FLSA CLASS PERIOD WOULD HAVE TO**

14 **BE LIMITED TO TWO YEARS**

15 Plaintiff asks this Court to finally certify a FLSA collective action of:

16 All individuals who worked for Defendant Vector Marketing
Corporation in the State of California as 'Sales Representatives' from
17 April 15, 2006 through the resolution of this case.

18 The temporal scope of the collective action must be rejected.  If a class were finally

19 certified in this action, it should be certified as to those Sales Representatives who

20 participated in Vector's initial training within two years of filing their consent to join

21 forms on August 2, 2010.

22 Under the FLSA, a plaintiff must file suit within two years of the alleged

23 violation.  If a willful violation can be established, that suit can be filed within three

24 years. See 29 U.S.C. § 255(a).  But to establish a willful violation, the opt-in plaintiffs

25 must demonstrate that Vector acted with knowing conduct, or reckless disregard of

26 whether the FLSA prohibits the employer's conduct. See McLaughlin v. Richland

27 Shoe Co., 486 U.S. 128, 131-135 (1988).  Mere negligence of an affirmative duty is

28 insufficient to trigger the exemption from the two year statute of limitation. See

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    *Ketchum v. City of Vallejo*, 523 F.Supp.2d 1150, 1157 (E.D.Cal. 2007) (the "fact that

2    an employer acts unreasonably in determining its legal obligation is not sufficient to

3    show that the employer acted recklessly"); *Nelson v. Waste Mgt. of Alameda County*,

4    Inc., 33 Fed.Appx. 273, 274 (9th Cir. 2002) ("there must be evidence that the

5    employer affirmatively knew it was violating FLSA or that it was acting with

6    'reckless disregard' of the FLSA").

7         Despite two-plus years of litigation, neither Harris nor any of the opt-in

8    plaintiffs have presented any evidence that Vector acted willfully in not paying

9    minimum wages for initial training under the FLSA. *Id.* (plaintiff bears the burden of

10   showing a willful violation to trigger the extended three year limitations period).

11   Therefore, there is no evidence that <u>any</u> of the plaintiffs are similarly situated on the

12   issue whether Vector willfully violated the FLSA. The two year statute of limitations

13   applies here, even if the collective action is certified.[10]

14        The two year limitations period is fully consistent with the May 2010 Notice

15   provided to members of the FLSA collective action who were identified as persons

16   "*potentially eligible* to join this lawsuit." *See* Exh. 1 to Declaration of Rachel

17   Wnorowski (Docket No. 230-1), at p. 3 (emphasis added). The Notice also advised

18   that Sales Representatives "should be aware that Fair Labor Standards Act claims are

19   limited to two- *or* three-year statute of limitations, and delay in joining this action or

20   proceeding separately may result in some or all of your claims expiring as a matter of

21   law." *Id.*, at p. 5 (emphasis added).

22

23

24   _____

25   [10] Plaintiff may invoke the tolling agreement to resist the certification of a two year collective action. But, the terms of
     that April 6, 2009 agreement demonstrate that it no longer applies. *See* Stipulation (Docket No. 32). As set forth in the
     recitals, plaintiff cornered Vector into a tolling agreement on the basis that she would file a "timely" motion for
26   conditional certification following a determination on Vector's motion for summary judgment. *Id.*, at 2:3-4. Plaintiff
     has been anything but prompt. She did not file her FLSA motion until April 14, 2010, some seven months after the
     Court's September 4, 2009 order denying summary judgment. *See* Plt's Motion for Conditional Collective Action
27   Certification (Docket No. 132). Moreover, per the terms of the agreement, Vector never admitted liability as to the issue
     whether it acted willfully. Stipulation (Docket No. 32), at 2:10-13.

28

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   —

2       Finally, though this issue is not properly before the Court, we are compelled to

3   briefly address it in the event the Court chooses to consider it.  Plaintiff demands that

4   a second FLSA notice be sent to those Sales Representatives not included in the May

5   2010 notice and to have a collective action certified through the "resolution of this

6   case."  This Court has already ruled on plaintiff's demand, indicating that it would

7   follow Judge Armstrong's order in *In re Wal-Mart Stores, Inc.*, 2008 U.S.Dist. LEXIS

8   109446 (N.D.Cal. 2008).  *See* Order (Docket No. 304), at pp. 5-6.  Judge Armstrong

9   explained (to the same plaintiff's counsel representing Harris in this action) that

10  having a class period end date of "through the resolution of the action" would be

11  impracticable.  *Id.*, at 14-15.  Vector agrees.

12      If another notice were sent, Vector would need to conduct basic discovery to

13  determine whether any additional plaintiffs would be similarly situated with those

14  who have already opted into the action.  There is currently no time to do so before the

15  discovery cutoff and trial dates in this action.  Further, plaintiff would need to

16  establish good cause to modify this Court's August 2, 2010 deadline for the filing of

17  consent to join forms, and there is no time for that undertaking either.  *See* Fourth

18  Amended Case Management Order (Docket No. 313); *see also Johnson v. Mammoth*

19  *Recreations*, 975 F.2d 604, 609 (9th Cir. 1992) (good cause required to modify

20  scheduling order).

21

22  **VIII.  THE SIGNIFICANCE OF THE COURT'S RECENT DECISION NOT**

23  **TO HAVE THE PARTIES FILE REPLY BRIEFS**

24      We understand that the Court may have been surprised to find four different

25  briefs filed on September 22, two motions to certify, one with respect to the FLSA

26  Collective Action and the other with respect to the Rule 23-based claims, along with

27  two motions to decertify, one with respect to the FLSA claims and the other with

28  respect to the Rule 23 claims.  As is apparent from those filings, the parties anticipated

No.: CV 08 5198 EMC                         - 21 -

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    that, given the markedly different standards applicable to those two kinds of

2    proceedings, one an opt-in and the other opt-out, it made sense to address each

3    separately, and it made sense to give both sides a chance to address those motions in

4    the way each side saw fit, one through decertification motions and the other through

5    motions to certify.

6         While we now appreciate that the Court may have had a different expectation,

7    and while we respect and accept the Court's decision not to have reply briefs filed, we

8    are concerned that, as often happens in motion briefing, one party or another may add

9    a new factual material and legal argument that was not presented in its original filing.

10   That is a particular concern here, given that, as we have noted in this opposition and in

11   the opposition to the FLSA motion, plaintiff has spent much of its time in both of its

12   opening briefs espousing its theory of a broader set of wrongs here than it has

13   analyzed in the evidence and the law applicable to motions to finally certify FLSA

14   collective actions and motions to certify Rule 23 class actions.  Plaintiff may now shift

15   her focus and present new facts, new law and new arguments that are more on point.

16        For that reason, we remind the Court of the black letter law that new material

17   that was not included in the original motion may not be added to the briefing post-

18   filing of the motion itself.  *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir.

19   1993); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).  Each party's

20   opposition is supposed to simply respond to what was in the other party's opening

21   filings, not dump in significant new material.  (*Id.*)

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

1

## IX.   **CONCLUSION**

2      For the reasons set forth herein and in Vector's Motion to Decertify the FLSA

3   collective action, Vector requests that plaintiff's motion be denied and that its Motion

4   to Decertify the Conditionally Certified FLSA Collective Action be granted.

5

6   DATED:  October 6, 2010            REED SMITH LLP

7

8                                        /s/ John P. Zaimes
                                       John P. Zaimes
9                                      Attorneys for Defendant
                                       Vector Marketing Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT VECTOR MARKETING CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL COLLECTIVE ACTION CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware