1  **MARLIN & SALTZMAN**
   Stanley D. Saltzman, Esq. (SBN 90058)
2  Louis M. Marlin, Esq. (SBN 54053)
   Marcus J. Bradley, Esq. (SBN 174156)
3  Christina A. Humphrey, Esq. (SBN 226326)
   Kiley L. Grombacher, Esq. (SBN 245960)
4  29229 Canwood Street, Suite 208
   Agoura Hills, California  91301
5  Telephone:     (818) 991-8080
   Facsimile:     (818) 991-8081
6  ssaltzman@marlinsaltzman.com
   louis.marlin@marlinsaltzman.com
7  mbradley@marlinsaltzman.com
   chumphrey@marlinsaltzman.com
8  kgrombacher@marlinsaltzman.com

9  *(Additional Plaintiff's counsel on next page)*

10 Attorneys for Plaintiff and Proposed Class

11            **UNITED STATES DISTRICT COURT**

12       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13 ALICIA HARRIS, as an individual and on        **CASE NO. CV 08-5198 EMC**
14 behalf of all others similarly situated,       (Assigned to Hon. Edward M. Chen)

15                Plaintiff,                       **PLAINTIFF'S NOTICE OF MOTION AND
                                                   MOTION FOR PRELIMINARY APPROVAL
16 v.                                              OF CLASS ACTION SETTLEMENT**

17 VECTOR MARKETING                                DATE:        April 8, 2011
   CORPORATION, a Pennsylvania                     TIME:        10:00 a.m.
18 corporation; and DOES 1 through 20,             CTRM:        C
   inclusive,                                      JUDGE:       Hon. Edward M. Chen
19
                  Defendants.
20                                                 Discovery Cutoff:   March 2, 2011
                                                   Trial Date:         June 6, 2011
21

22

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28

---

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement
Case No. CV 08-5198 EMC**

1  **Additional Plaintiff's Counsel**

2  **DIVERSITY LAW GROUP**
   Daniel H. Chang, Esq. (SBN 183803)
3  Craig S. Hubble, Esq. (SBN 200789)
   Larry W. Lee, Esq. (SBN 228175)
4  444 S. Flower Street
   Citigroup Center, Suite 1370
5  Los Angeles, California   90071
   Telephone:      (213) 488-6555
6  Facsimile:      (213) 488-6554
   dchang@diversitylaw.com
7  chubble@diversitylaw.com
   lwlee@diversitylaw.com

8  **LAW OFFICES OF SHERRY JUNG**
9  Sherry Jung, Esq. (SBN 234406)
   444 S. Flower Street
10 Citigroup Center, Suite 1370
   Los Angeles, California   90071
11 Telephone:      (213) 488-6555
   Facsimile:      (213) 488-6554
12 sherryj23@hotmail.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

# **TABLE OF CONTENTS**

Page

1.   NATURE OF RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 1

3.   SUMMARY OF THE LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   Nature of the Case, and its Litigation History . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   The Pleadings, Summary Judgment and Certification Motions . . . . . . . . . . . . . 5

    C.   Discovery and Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.   Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4.   SUMMARY OF THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5.   THE SETTLEMENT CLEARLY MEETS, AND EXCEEDS, THE STANDARDS
    FOR PRELIMINARY APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.   The Settlement Agreement Resulted from Arm's-Length Negotiations . . . . . . . . 14

    B.   The Settlement Has No Obvious Deficiencies . . . . . . . . . . . . . . . . . . . . . . . . 16

6.   CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    A.   Certification of a Settlement Class is Appropriate . . . . . . . . . . . . . . . . . . . . . 17

    B.   Additions To The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

7.   NATURE AND METHOD OF CLASS NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

8.   CLAIMS ADMINISTRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

9.   AMOUNT OF ATTORNEYS' FEE REQUEST TO BE INCLUDED IN CLASS
    NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

10.  AMOUNT OF ENHANCEMENT AWARDS REQUEST TO BE INCLUDED
    IN THE SETTLEMENT NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11.  PROPOSED SCHEDULE FOR CLAIMS ADMINISTRATION AND FINAL
    FAIRNESS HEARING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

12.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

i

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES**

*Boyd v. Bechtel Corp.*
    485 F. Supp. 610 (N.D. Cal. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brotherton v. Cleveland*
    141 F.Supp.2d 907 (S.D.Ohio 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Class Plaintiffs v. Seattle*
    955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Cook v. Niedert*
    142 F. 3d 1004 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*
    137 F.R.D. 240 (S.D. Ohio 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Gatreaux v. Pierce*
    690 F.2d 616 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*In re Dun & Bradstreet Credit Services Customer Lit.*
    130 F.R.D. 366 (S.D. Ohio 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Heritage Bond Litigation*
    2005 WL 1594403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Linerboard Antitrust Litig.*
    2004 U.S. Dist. (E.D. PA. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Joel A. v. Giuliani*
    218 F.3d 132 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kirkorian v. Borelli*
    695 F. Supp. 446 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.*
    618 F.3d 988 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mullane v. Central Hanover Bank & Trust Co.*
    339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*
    688 F.2d 615 (C.D. Cal. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

ii

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Williams v. Vukovich*
    720 F.2d 909 (6th Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES AND RULES

Federal Rules of Civil Procedure, Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Rules of Civil Procedure, Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Rules of Civil Procedure, Rule 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Federal Rules of Civil Procedure, Rule 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

## MISCELLANEOUS

2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 15

2 Newberg, *Newberg on Class Actions* § 8.32 . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Manual For Complex Litigation* (Fourth) § 30.42 . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Manual for Complex Litigation*, Fourth, § 22.661 (2004) . . . . . . . . . . . . . . . . . . . . . . . 14

*Manual of Complex Litigation*, Fourth, § 21.632 (2004). . . . . . . . . . . . . . . . . . . . . . . . . 13

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 8, 2011, at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 450 Golden Gate Avenue, Courtroom C, 15th Floor, San Francisco, California, 94102, Plaintiff will and hereby does move this Court for an Order:

1.     Preliminarily approving the proposed settlement, and executing the [Proposed] Order Granting Preliminary Approval of Class Action Settlement (filed contemporaneously herewith);

2.     Preliminarily certifying the Amended Settlement Class for purposes of settlement only;

3.     Directing that the Class be given notice of the pendency of this action and the settlement; and

4.     Scheduling a hearing to consider final approval of the settlement, entry of a proposed final judgment, and plaintiffs' counsels' application for an award of attorneys' fees and reimbursement of costs and expenses, as well as an Enhancement Award to the Class Representative.

The motion for class certification will be based on this Notice, the Memorandum of Points and Authorities and declarations filed herewith, and the pleadings and papers filed herein.

DATED:   March 29, 2011              **MARLIN & SALTZMAN**
**DIVERSITY LAW GROUP**
**LAW OFFICES OF SHERRY JUNG**


By:   /S/ Christina A. Humphrey
Christina A. Humphrey, Esq.
of Marlin & Saltzman
Attorneys for Plaintiff

iv

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

1   **1.    NATURE OF RELIEF SOUGHT**

2   By this unopposed motion[1], plaintiff and the certified class seek this Court's preliminary

3   approval of a substantial settlement of the certified claims pending between the parties, as well as the

4   claim asserted in this litigation seeking the imposition of Labor Code § 203 penalties.  Collectively,

5   these are the "settled claims."  The settlement requires that defendant pay up to a maximum of **$13**

6   **million** to the class members.  This maximum payout, divided equally between the "training time"

7   claims and the "sample set" reimbursement claims, contemplates the creation of a settlement fund

8   which will entitle all those who submit a claim to a repayment of over 85% of the sums which they

9   could have recovered had the matter proceeded to trial[2], exclusive of penalties, assuming that the class

10  had prevailed at trial.  In addition, as this Court may already be aware from recent briefing submitted

11  in relation to the cross motions for summary judgment, Vector has recently unveiled substantial

12  changes to its "sample set" program.  As a result of these changes, effective in January 2011, trainees

13  are no longer required to pay for the sample set, but rather are issued a set "on loan" by the company[3].

14  All of these settlement benefits for the class members will be set forth in detail herein.

15  **2.    INTRODUCTION AND SUMMARY OF ARGUMENT**

16  After more than two and one half years of truly intense litigation, in both the trial and the

17  appellate courts, the matter was finally resolved in a manner deserving of and reflecting the strength

18  of the claims asserted, yet still recognizing the downside risks attendant to all litigation.  The parties'

19  cross motions for summary judgment/adjudication were set for hearing only six days following the

20  mediation session.  These motions were fully briefed.  In addition, trial in the matter was scheduled

21  to begin on June 6, 2011, only three months following the mediation.  In the two and one half years,

22  [1] As set forth in the Settlement Agreement, a true and correct copy of which is attached to

23  the Declaration of Stanley D. Saltzman as Exhibit "A", Vector does not oppose this motion and seeks
    approval of the settlement as it is submitted.  It has not been asked by the Class to either adopt or

24  "join" in the arguments set forth, but has been provided the opportunity to review the motion prior
    to its filing for any inaccuracies.  The arguments are those of the class.

25

26  [2] Before deduction of the fees, costs, enhancements and PAGA payment, as all subject to the
    eventual approval of this Court.

27

28  [3] In making this change during the course of the litigation, Vector did not concede that its
    prior conduct violated Labor Code § 450.

1

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

1 there were numerous pleading motions, even more numerous discovery motions, an earlier briefing
2 and argument of Defendant's summary judgment motion, and two full rounds of certification motions,
3 including defendant's motion to deny certification.  There were numerous sets of written discovery
4 exchanged and responded to, equally numerous party depositions, and depositions of a random
5 sampling of 50 FLSA opt-in class members.  Plaintiff mailed a pre-certification letter to over 30,000
6 class members - and fielded over 5,000 responding phone calls or emails.  Notice of Conditional FLSA
7 Certification was then mailed out to over 45,000 putative class members.  Following final certification,
8 yet another notice of certification was then mailed out to over 67,000 putative class members.  Each
9 of these mailings, and the handling of all responses via counsel or the claims administrator, was
10 accomplished based on costs advanced or committed by class counsel.  Each mailing was critical in
11 the eventual resolution of the case on such successful terms.

12       During this same time period, Defendant sought the trial court's permission, unsuccessfully,
13 for leave to appeal the denial in part of its earlier summary judgment motion.  Subsequently, following
14 the court's order granting in part (and denying in part) final certification, Defendant again sought leave
15 to appeal that ruling, this time by way of a Rule 23(f) petition.  Concurrent with that relief, Defendant
16 also sought a stay of proceedings from the trial court, and when that was denied, sought an emergency
17 stay in the Ninth Circuit, designed to avoid the mailing of the Notice of Final Certification.  All these
18 various requests for relief were opposed by the Class, and denied by the courts involved; however, the
19 issues raised would remain appealable issues following trial on the merits.

20       In summary, this matter has required an intense period of two and one half year's litigation.
21 The intensity has been unrelenting.  At the end of the day, the matter has been settled for a sum which
22 truly represents a very substantial approximation of the Defendant's total ultimate exposure,
23 discounting the penalty remedies.  Class counsel's level of commitment of resources, both as to time
24 and money expended, has also been extraordinary.  The many court hearings, as to so many different
25 issues, have clearly demonstrated this constantly evolving case process.  As set forth herein, in relation
26 to the expenditure of costs advanced and committed, class counsel has gone above and beyond the
27 norm in pursuit of the claims for the class.  To date, approximately $435,000.00 has been spent on
28 costs advanced (all to be detailed for the Court in the eventual motion for final approval of fees and

2

1  costs), and another $75,000.00 is currently obligated in relation to the recently completed notice of
2  final certification.  In short, the commitment of both time and money by class counsel has been
3  extraordinary.  Without this level of commitment of both time and money, it is difficult to imagine that
4  the case could have resulted in the settlement which is now before this Court.

5  The terms of the settlement are set forth in the Settlement Agreement entered into by the parties
6  and attached to the Saltzman Decl. as Exhibit A.  Pursuant to the Settlement, the parties request that
7  the Court enter an order:

8  (1)  preliminarily approving the proposed settlement, and executing the [Proposed] Order
9  Granting Preliminary Approval of Class Action Settlement (filed contemporaneously
10  herewith);

11  (2)  preliminarily certifying the Amended Settlement Class for purposes of settlement only;

12  (3)  directing that the Class be given notice of the pendency of this action and the
13  settlement; and

14  (4)  scheduling a hearing to consider final approval of the settlement, entry of a proposed
15  final judgment, and plaintiffs' counsels' application for an award of attorneys' fees and
16  reimbursement of costs and expenses, as well as an Enhancement Award to the Class
17  Representative.

18  For purposes of the proposed settlement, the Settlement Class that the Court is being asked to
19  certify is defined as:

20  Named Plaintiff Alicia Harris, and all current and former California
21  sales representatives of defendant Vector Marketing Corporation, who
22  signed sales representative agreements between October 15, 2004 and
23  through the date of the preliminary approval, as well as any such sales
24  representatives who paid for a "sample set" of knives, and did not return
25  the set for reimbursement.

26  Pursuant to the terms of the Settlement Agreement, attached to the Saltzman Decl. as Exhibit
27  "A", a class of approximately 69,000 current and former sales representatives of the Defendant will
28  share in the maximum settlement fund of $13 million.

3

1    The parties have agreed on the form and content of all the necessary documents to be provided
2    to Class Members to inform them of the settlement.  They are presented herewith for review and
3    approval by the Court. The Notice of Proposed Class Action Settlement and Claim Form, collectively
4    referred to as the "Notice Packet" -- are attached as Exhibits 1 and 2, respectively, to the Settlement
5    Agreement. The parties have further agreed as to the terms and conditions under which notice will be
6    provided, designation of Epiq Systems, Inc. as claims administrator, the estimated costs of
7    administration, the contingencies or conditions to the settlement's final approval, and other terms that
8    are necessary and customarily provided by such class action settlements.

9    The proposed settlement was reached during a mediation conducted before Antonio Piazza,
10   Esq., one of this state's most prominent and respected mediators.  Earlier in the case, mediation was
11   attempted before Mark Rudy, Esq., yet another eminent mediator. At that time, the matter was not ripe
12   for a resolution along the lines just agreed to, and that effort failed.  At this time, given the current
13   posture of the case, the many rulings and much needed guidance provided by this Court in relation to
14   the many legal issues, and, yes, the impending hearing on the cross motions for summary judgment,
15   the parties were able to reach a settlement.

16   The proposed settlement easily meets the criteria for preliminary approval which are set forth
17   in the *Manual for Complex Litigation*, 4th Ed. The settlement is well within the range of what would
18   be fair, reasonable, and adequate in this case, and thus the class requests that the Court take the first
19   step in the approval process by granting the requested preliminary approval of the settlement which
20   is sought herein.

21   **3.      SUMMARY OF THE LITIGATION**

22   **A.      Nature of the Case, and its Litigation History**

23   The matter now pending for preliminary settlement approval was originally filed on
24   October 15, 2008, in the Superior Court of California, the County of San Francisco.  It was removed
25   to this Court on November 17, 2008. The broad outlines of this case were set forth in the Introduction
26   of this motion.  A review of the case docket in the trial court reveals that over 450 documents have
27   been filed.  In addition, there have been two separate matters as to which the Defendant has sought
28   appellate review. Describing this case as having been "intensely litigated" is an understatement of

4

1    monumental proportions.  There have been all too many late night and into-the-early-morning brief

2    writing sessions, and from the many discussions between counsel on both sides, both parties to this

3    litigation have been so engaged.  During the equally intense round of 50 random sample depositions,

4    conducted in less than three weeks, it was not uncommon for class counsel to be allocating as many

5    as eight attorneys for days at a time to cover, prep for, and otherwise meet the task of handling those

6    depositions.  As a result of the many court hearings necessitated in the case, much of the work of both

7    parties, including that of class counsel, was evident to the Court.

8            Simultaneous to the ongoing and always evident court work, as well as the extensive

9    depositions and discovery conducted of which this Court was often made aware by virtue of motions

10   or other hearings, class counsel was also constantly working behind the scenes to develop anticipated

11   expert testimony, working with its statistical expert to extract legally admissible conclusions from the

12   data the Defendant was required to produce, and always speaking with and interviewing putative class

13   members to develop relevant testimony for both motions and the eventual trial.  The class members

14   in this case were extremely interested in this case - certainly more so than in most cases handled by

15   these class counsel.  Quite literally, over 5,000 such class members reached out to counsels' offices

16   during the case handling.  This response has been especially helpful to class counsel, and counsel are

17   extremely pleased to be able to present a settlement that closely mirrors the claims of most interest to

18   the class members.  By tying the settlement to the "training time" and "sample set" issues, and allowing

19   for claims to be made as to those matters, those who elect to participate in the settlement are entitled

20   to over 85% of what they would be legally entitled to recover had they prevailed in trial.

21                   **B.     The Pleadings, Summary Judgment and Certification Motions**

22           As noted above, the action was filed in state court on October 15, 2008.  Thereafter, the case

23   was removed to the federal court and assigned to this Court.  Following removal, defendant brought

24   a Motion for Summary Judgment or, in the Alternative, Summary Adjudication pursuant to

25   Fed.R.Civ.P. 56 ("MSJ").  In support thereof, Defendant submitted no less than eleven (11) witness

26   declarations.  In response, Plaintiff sought and received additional time to conduct discovery with

27   respect to the declarant witnesses.  Plaintiff subpoenaed and deposed many of the declarants, including

28   traveling across the nation on short notice for said depositions.  On September 9, 2009, this Court

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement
Case No. CV 08-5198 EMC**

1   issued its Order granting in part and denying in part Defendant's MSJ. Subsequently, on October 9,

2   2009, Defendant filed a motion seeking Certification of this Order for Interlocutory Appeal (28 U.S.C.

3   1292(b)) and seeking to stay the proceedings. This motion was denied by this Court on November 20,

4   2009. [Doc 101]. The litigation continued.

5       On March 10, 2010, Defendant filed a Motion for Judgment on the Pleadings. [Doc. 114].

6   Plaintiff opposed this motion and the Court granted it in part and denied it in part.

7       Soon thereafter, after completing substantial discovery, Plaintiff filed her motion for

8   conditional FLSA certification on April 14, 2010. In addition to the full briefing in relation to this

9   motion, following oral argument, the parties submitted supplemental briefs to this Court. Shortly

10  thereafter, on May 18, 2010, this Court granted Plaintiff's Motion for Conditional FLSA Class

11  Certification. [Doc. 176.]

12      On June 21, 2010, Defendant filed a Motion to Strike Portions of Plaintiff Alicia Harris's Third

13  Amended Complaint. Following the close of the notice/opt-in period, Defendant commenced its round

14  of 50 sample class member depositions, which took place in about three weeks, throughout the state.

15      Thereafter, on September 22, 2010, the parties filed dueling certification motions. Plaintiff

16  sought final FLSA certification as well as Rule 23 class certification. Defendant moved this Court for

17  an Order denying Rule 23 class certification and decertifying the FLSA class. The parties again

18  submitted supplemental briefing. On November 5, 2011, this Court granted in part and denied in part

19  Plaintiff's Motion for class certification. [Doc. 375]. On November 8, 2011, Defendant filed an *ex*

20  *parte* application to stay the case pending resolution of appellate proceedings, and contemporaneously

21  sought leave to appeal this Court's certification ruling.

22      Following Defendant's motion to stay, the dissemination of class notice, and after a telephonic

23  conference with the Court, the parties submitted a Stipulation temporarily staying the notice but

24  permitting the Plaintiff to continue with her discovery on behalf of the class. This Stipulation was

25  extended two additional times; however, as trial neared, Plaintiff could no longer stipulate to defer

26  notice without endangering the entire pre trial schedule and the pending trial date of June 6, 2011.

27  When this last deferral of notice was declined by the class, Defendant filed a renewed motion to stay

28  the litigation which was denied by the Court. [Doc. 410] Defendant then sought emergency relief from

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

1  the Ninth Circuit, seeking to stay the case, and also filed a Petition for Permission to Appeal the

2  certification order of the trial court, which was denied by the Ninth Circuit Court of Appeals on

3  February 8, 2011.

4       Following this denial of the stay, the Notice of Class Certification under Rule 23, as well as

5  of the final FLSA Certification, was mailed to over 67,000 class members.

6       Concurrently, on February 10, 2011, the parties filed their respective cross motions for

7  summary judgment. [Doc. 418, 416]. The motions were fully briefed, and scheduled for hearing on

8  March 16, 2011, immediately following the close of the opt-out period.

9       In the interim, the parties agreed to attempt case resolution via mediation, and agreed to select

10  Mr. Piazza as the mediator. At the time the mediation took place, the trial of this matter was scheduled

11  for June 6, 2011, only three months later. Expert designation was also set to occur on March 16, 2011,

12  and thus while the mediation was being prepared for and conducted, the class was also fully engaged

13  in completing its expert declarations and submissions, in order to comply with that critical pre-trial

14  scheduling order deadline.

15            **C.**    **Discovery and Investigation**

16       As noted several times, *supra*, discovery, including written interrogatories and demands, PMQ

17  depositions, party depositions, expert depositions, the 50 random sample depositions, numerous

18  motions to compel further responses, was constantly ongoing. Numerous subpoenas were issued by

19  the Defendant pertaining to the class representative's personal educational and employment records,

20  and several rounds of briefing and hearings were undertaken in relation to Plaintiff's motions to quash

21  relating thereto. Ultimately, this Court sustained many of these assertions.

22       All of the investigation and discovery described above was conducted by plaintiffs' counsel

23  with the expectation that the matter would ultimately have to be resolved by trial. Vector's formidable

24  counsel set a course early which was designed to knock out the case and leave Vector's business model

25  unscathed. Every step of the action was hard fought, and contributed to both side's being able to

26  develop a full and complete understanding of all the legal and factual issues, as well a full appreciation

27  of each side's respective strengths and weaknesses.

28       Ultimately, the huge amount of work which was undertaken permitted both sides to approach

7

1   mediation well informed and well equipped to reach a fair and reasonable solution. The Plaintiff Class
2   and, presumably, Vector were certainly in a position to walk away from mediation and continue on to
3   either the summary judgment hearing, or trial, as the case may have been, if a reasonable and
4   appropriate settlement could not be reached.  This was made clear to Defendant's counsel both in
5   pre-mediation meetings, as well as in the mediation itself.  Defendant, in turn, made it known that it
6   was prepared to continue with the litigation if that was deemed to be its best course of action.  It never
7   wavered from that position throughout the litigation, and certainly gave no indication of doing so prior
8   to the mediation.

9              **D.     Mediation**

10             After early discovery had been completed, but before the plaintiffs' motion to certify the class
11   had been filed, the parties had agreed to participate in a mediation session in an early attempt to resolve
12   the case.    The parties met in Los Angeles, before attorney Mark Rudy, a well respected
13   attorney-mediator specializing in wage and hour class actions.  That one day mediation, over 18
14   months ago, did not result in any meaningful progress. Immediately thereafter, Defendant filed its first
15   motion for summary judgment/adjudication.  As noted, the Court allowed the plaintiff the right to
16   conduct depositions of witnesses and experts relied upon by the Defendant in support of its motion,
17   which were taken by proposed class counsel around the country.  The Court then granted that motion
18   in part, and denied it in part.

19             There were no further settlement conferences conducted until the March 10, 2011 session.
20   Several weeks ago, while the recent summary judgment briefing was ongoing, lead counsel met
21   privately, and agreed to schedule a mediation, to take place following the completion of the summary
22   judgment briefing and prior to the scheduled hearing date of March 16, 2011.  The parties agreed to
23   select a new mediator, so that the discussions could begin anew, untainted by prior efforts. Mr. Piazza
24   was known to both sides, and they agreed to engage his services.  Following extremely complicated
25   and fully arms-length negotiations, the parties were able to conclude the settlement which is now
26   presented for approval to this Court.

27             On behalf of the certified class, attorneys Stanley D. Saltzman of the Marlin & Saltzman firm,
28   and Larry W. Lee, as well as Daniel Chang and Howard Magee of the Diversity Law Group, were

8

1  present.  Plaintiff Alicia Harris was available for telephone consultation, and ultimately to offer her

2  signed approval of a settlement if one were reached, as requested by both the mediator and the

3  Defendant.  Defendant was represented by John P. Zaimes and Roxanne M. Wilson of Reed Smith

4  LLP, and personally appearing for the Defendant itself were Mr. John Whelpley, President and COO

5  of Vector Marketing Corporation and Mr. Paul Matheson, its Legal Affairs Manager.

6  **4.   SUMMARY OF THE SETTLEMENT**

7  The mediation concluded with a written Memorandum of Understanding being executed by

8  all counsel, and the parties themselves.  Thereafter, the joint motions for summary judgment were

9  taken off calendar by the two moving parties.  The parties then immediately moved into the final

10  negotiations of the formal Settlement Agreement now presented to this Court.

11  The litigation described above was clearly contentious, and often called for extreme efforts on

12  both sides.  Recognizing the critical opportunity to resolve the matter for the benefit of both the class

13  and the defendant, the settlement negotiations which ensued were entirely collegial at all times, while

14  maintaining the non-collusive, adversarial, and at arm's length requirements of all class action

15  settlements.  Given the extensive course of the litigation, plus the ongoing full and complete briefing

16  conducted throughout the case, and this Court's many rulings to date, both sides were fully enabled to

17  assess the merits of the respective positions.  The settlement now presented was crafted in the light of

18  this full exchange of litigation concepts, taking into consideration many of the Court's rulings and

19  comments, and the current status of the litigation.  The Plaintiff, the class and its counsel, on the one

20  hand, and the Defendant and its counsel, on the other hand, agree that the settlement is fair and

21  equitable to both sides.

22  The terms of the settlement are set forth in the Settlement Agreement, which is attached to the

23  Saltzman Decl. as Exhibit A and incorporated herein by reference, and include the following principal

24  terms:

25         a.   Defendant will pay a maximum settlement amount of $13,000,000.00.  This sum

26                   includes payments to be made to claimants, administration costs, awards of attorneys'

27                   fees and costs, incentive awards to the named plaintiff and a payment to resolve the

28                   PAGA claim.

9

b.    The total settlement of $13,000,000.00 will be divided into two halves, subject to claims being presented for training time claims in the amount of $6,500,000.00, and claims being presented for sample set claims in the amount of $6,500,000.00. Each Class Member is entitled to receive his or her share of these allocated funds out of the total fund created, after the payment of costs of administration, attorneys' fee and costs awarded, incentive awards, and PAGA, under the following very simple formula:

**The Training Time Claims:**

There are approximately 69,000 class members included in the training time portion of the case. The total amount of $6.5 million allocated to this claim yields the sum of $94.20 per person for the unpaid claimed training time. This equates to approximately 85% of the total value of the training time claimed per person, utilizing approximately 15 hours for the training, and based on the weighted average minimum wage over the class period of $7.39 per hour. (15 x $7.39 = $110.85 per person; $94.20 equals 85% of $110.85).

**The Sample Set Claims:**

(1) According to Defendant's records, there are approximately 52,000 class members included in the sample set portion of the case. This is arrived at by taking the total number of class members who made a payment for the sample set, and then deducting the approximate 25% who already returned the set for a full refund or who had been loaned a sample kit. The allocation of one half of the settlement fund to this claim, again equaling $6.5 million, results in a claim payment of approximately 86% of the total average payment made by the class members. This is arrived at by dividing the $6.5 million fund by the 52,000 claimants in this group, which yields $125.00 per person. This sum equals 86% of the total approximate sum of $145.00 claimed per class member ($135.00, plus sales tax, totaling approximately $145.00). In addition, Defendant will also be paying for the full cost of the UPS return of the knives.

(2) Given this Court's previously stated concerns with how to fashion relief for this

10

claim, should the class eventually prevail on the claim, in light of the fact that the claimants still possess the sample set knives, and Defendant's arguments in that regard relative to the Court's discretion in framing such relief, the parties have agreed upon a novel approach to this claim. In order to obtain this payment of 86% of the out of pocket claim for the sample set, the class members will have to return the sample set in order to meet Class Counsel's concerns that this requirement not be unduly burdensome, the Defendant has agreed to include with each Notice packet a separately paid for "pre-paid" UPS return label so that the class members can easily effect the return at no cost to themselves.[4]

c.    Vector will not object to an award of attorneys' fees to plaintiffs' counsel for the work already performed by Class Counsel in this case, and all of the work remaining to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining dismissal of the action. The Parties have agreed that this request will not exceed 32.2% of the settlement fund created for the benefit of the class. Class Counsel will also seek recovery of their actual litigation costs advanced or incurred in an amount now estimated to be about $435,000.00. In addition, Class Cousel owes an outstanding amount due to the Claims Administrator in the amount of $75,000. The parties will also incur the cost of the settlement class notice in an amount not to exceed $250,000. These costs will be detailed in the final fairness hearing motions.

d.    Vector will not object to an incentive award to the representative plaintiff in an amount up to $25,000.

e.    The Parties have agreed that Epiq Systems, Inc., which has handled all class administration matters to date in this matter, will also act as the Claims Administrator for settlement purposes. Epiq has represented that the administration expenses in this

---

[4] As is the case with the "self addressed stamped envelope" also negotiated for the benefit of the class, the process of offering pre-paid UPS return labels will be set up so that only those forms that are used will actually be paid for, so that there is no undue waste built into the process.

11

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

1  matter will not exceed $250,000.00 (*Saltzman decl., para. 19*)

2  f.  The parties have agreed on the forms of notice (three variants) to be mailed to the Class

3  and which are attached as Exhibits 1a through 1c to the Settlement Agreement, and the

4  proposed Claim Form, which is attached as Exhibit 2 to the Settlement Agreement -

5  and is collectively referred to as the "Notice Packet." Included within the Notice

6  Packet will be a **"self addressed stamped envelope"** for return mailing purposes, thus

7  permitting an easy and cost free method for class members to return their claim form.

8  g.  The class list, provided in computerized form by Vector to the Claims Administrator,

9  was updated via the National Change of Address database only 6 weeks ago, in

10  connection with the mailing of the Notice of the Rule 23 and the FLSA Final

11  Certification, and has been continually updated even further since then to trace the

12  small percentage of "undeliverable" notices. That percentage is now under 5%. Thus,

13  other than updating for recently added class members, the class list is substantially

14  complete.

15  h.  The Notice Packet will be mailed by first class mail.

16  i.  Class Members will have sixty (60) days from the date the Notice Packets are mailed

17  by the Claims Administrator to postmark their Objections, and/or Requests For

18  Exclusion, and the same sixty (60) days to postmark their Claim Form. **A process is**

19  **included in the Settlement Agreement for the handling of late claims for up to an**

20  **additional 30 days**, at up to 50% of the value of a timely claim.

21  j.  The Claims Administrator will mail a follow up notice **(a "reminder" post card)** to

22  those Class Members who have not affirmatively responded within the first 30 days of

23  the claims period.

24  k.  The Claims Administrator will perform one skip trace on returned mail and re mail

25  Claim Forms to an updated address (if any) within ten (10) days of receiving notice that

26  a Notice Packet was undeliverable. It is the intent of the parties that reasonable means

27  be used to locate Class Members.

28  l.  The Claims Administrator will certify jointly to Class Counsel and Defendant's counsel

12

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

1    which claims were timely filed.  The Claims Administrator shall be responsible for

2    calculating the payments owed, and for issuing payment.

3       m.   Upon final approval of the settlement by the Court, the Settlement Class, comprised of

4    all Class Members to whom mailing has been duly completed or attempted, and who

5    have not submitted a timely and valid Request for Exclusion form, shall be held to have

6    agreed to release Defendant from the settled claims, as set forth in xx of the Settlement

7    Agreement.

8    **5.     THE SETTLEMENT CLEARLY MEETS, AND EXCEEDS, THE STANDARDS**

9    **FOR PRELIMINARY APPROVAL**

10   Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must

11   receive Court approval.  The court has broad discretion to grant such approval and should do so where

12   the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v.*

13   *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir.

14   2000).  In determining whether a proposed settlement should be approved, the Ninth Circuit has a

15   "strong judicial policy that favors settlement, particularly where complex class action litigation is

16   concerned." (*In re Heritage Bond Litigation*, 2005 WL 1594403, citing *Class Plaintiffs v. Seattle*, 955

17   F.2d 1268, 1276 (9th Cir. 1992).)

18   Court approval involves a two-step process in which the Court first determines whether the

19   proposed settlement deserves preliminary approval and then, after notice is given to Class Members,

20   whether final approval is warranted. *Manual of Complex Litigation*, Fourth, § 21.632 (2004). *See,*

21   *Hanlon, supra*, at 1019. ("The court ordinarily holds a preliminary hearing to determine whether there

22   is a likelihood it could approve the settlement, before conducting a full 'fairness hearing'").

23   At the preliminary approval stage, the Court need only "determine whether the proposed

24   settlement is within the range of possible approval." (*Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th

25   Cir. 1982).)  Ultimately, a class action should be approved if "it is fundamentally fair, adequate and

26   reasonable." *Class Plaintiffs v. Seattle*, 955 F.2d at 1276; See also *Officers for Justice v. Civil Service*

27   *Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (C.D. Cal. 1982) ("the court's intrusion

28   on what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be

13

1   limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of

2   fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken

3   as a whole, is fair, reasonable and adequate to all concerned"). There is a "strong initial presumption

4   that the compromise is fair and reasonable." *Hanlon, supra*, at 1019. Throughout the analysis, it is

5   important to note that courts strongly favor settlement, particularly in complex class actions. *See, e.g.,*

6   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

7         Although at this stage of preliminary approval, the Court is not expected to engage in the more

8   rigorous analysis that is required for final approval (see *Manual for Complex Litigation*, Fourth,

9   § 22.661 at 438 (2004)), the Court's ultimate fairness determination will include balancing several

10  factors, including some or all of the following:

11        . . . the strength of plaintiffs' case; the risk, expense, complexity and

12        likely duration of further litigation; the risk of maintaining class action

13        status throughout the trial; the amount offered in settlement; the extent

14        of discovery completed, and the stage of the proceedings; the

15        experience and the stage of the proceedings; the experience and views

16        of counsel; the presence of a governmental participant; and the reaction

17        of the Class Members to the proposed settlement. (*Officers for Justice,*

18        *supra*, 688 F. 2d 615, 625.)

19        Not all of the above factors apply to every class action settlement, and one factor alone may

20  prove determinative in finding sufficient grounds for court approval. (*Nat'l Rural Telecommunication*

21  *Cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).) District courts have wide

22  discretion in assessing the weight and applicability of each factor. (*Id.*)

23        **A.    The Settlement Agreement Resulted from Arm's-Length Negotiations**

24        Recently, the Ninth Circuit affirmed its longstanding support of settlements reached through

25  arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948

26  (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual

27  decision of the [settling] parties." *Id.* at 965, citing *Hanlon, supra*, at 1027; and to assuring itself that

28  the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. Certainly, with the

14

1    extensive pre-mediation case work-up, and the involvement of Mr. Piazza, and previously of

2    Mr. Rudy, all of these factors are present here.

3        The *Rodriguez* court "put a good deal of stock in the product of an arms-length, non-collusive,

4    negotiated resolution, and have never prescribed a particular formula by which that outcome must be

5    tested." *Rodriguez, supra*, at 965 (citations omitted). As the Court explained, "In reality, parties,

6    counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by

7    considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances

8    of obtaining it, discounted to present value." *Id.* at 965 (citations omitted). *See also, Williams v.*

9    *Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of

10   experienced counsel who has competently evaluated the strength of his proofs"); 2 *Newberg on Class*

11   *Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation* (Fourth) § 30.42.)

12       The proposed settlement now before this Court is the product of truly intense litigation,

13   extensive court involvement in framing the issues for class handling and trial, and the interaction with

14   extremely experienced mediators. In short, full and complete arm's-length negotiations have occurred.

15   With the benefit of the significant exploration of the facts and law during the prosecution of the case,

16   class counsel were able to fully consider the strengths and weaknesses of their case, and of Vector's

17   defenses. *Saltzman dec., para. 11.* Considerable time and effort has been put forth to analyze the law

18   as it would apply to the facts of this matter, to brief the same and to argue the same to this Court. The

19   ultimate settlement of a maximum payment of $13 million, representing over 85% of the value of the

20   two primary claims, is a testament to the tenacity of the case work-up, and fully supports the fairness

21   and benefits of the settlement to the class. *Saltzman decl.13 and 15.* Conversely, the Defendant has

22   been continuously represented by very capable counsel, who have taken every opportunity to develop

23   all aspects of their defenses. Accordingly, by the time the settlement was reached, the Defendant was

24   also capable of being fully informed in regard to all aspects of the case.

25       The parties were able to negotiate a fair settlement, taking into account both the risks and the

26   costs of continued litigation. The negotiations were at all times conducted professionally and at

27   arm's-length. The opinion of experienced counsel, as here, offered in support of the settlement, is

28   entitled to considerable weight. "A presumption of fairness, adequacy, and reasonableness may attach

15

1    to a class settlement reached in arm's length negotiations between experienced, capable counsel after

2    meaningful discovery.  See, *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of

3    experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622

4    (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of

5    reasonableness).

6         Plaintiffs have also taken into account the uncertainty and risk of the outcome of further

7    litigation, and the difficulties and delays inherent in such litigation. Plaintiffs are also aware of the

8    burdens of proof necessary to establish liability for the claims asserted at the anticipated trial in the

9    action, Defendant's defenses thereto, and the risks of maintaining class certification throughout the

10   case, including any ultimate post-trial appeals.  The case could literally have continued on for two or

11   more years, inclusive of any potential appeals of the pending trial result.  Heretofore, the Defendant

12   has certainly indicated by its actions that it intended to fully utilize all of its appellate rights.

13        Based on the foregoing, Plaintiff and the class counsel determined that the settlement set forth

14   in the Agreement was a fair, adequate and reasonable settlement, and was in the best interests of

15   Plaintiff and the class. *Saltzman dec., para. 15.*  In turn, Vector has also clearly expended substantial

16   amounts of time, energy and resources in connection with the litigation, and if this settlement is not

17   approved, it will be compelled to continue to do so.  Defendant has, therefore, agreed to settle upon

18   the terms set forth in the Settlement Agreement, in order to put to rest the claims certified by this

19   Court, as well as the section 203 claims previously asserted.

20              **B.      The Settlement Has No Obvious Deficiencies**

21        The proposed settlement has no obvious deficiencies.  Under the terms of the settlement,

22   Defendant has committed to a maximum payment of $13 million to resolve the settled claims.  The

23   settlement provides no preferential treatment for Plaintiff or other Class members.  Plaintiff Alicia

24   Harris will receive a distribution from the settlement proceeds calculated in the same manner as the

25   distributions to all other Class Members.

26        There is no precise benchmark for determining whether a settlement is fair.  "Ultimately the

27   district court's determination represents "an amalgam of delicate balancing, gross approximations and

28   rough justice." *Officers for Justice, supra,* at 625 (citation omitted).  In making its determination, the

16

1   Court should weigh the benefits that the settlement will realize for the class against the uncertainty of
2   litigation and the possibility that the class members would obtain no relief in the absence of a
3   settlement. *See, Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

4       Throughout this litigation, the parties have vigorously asserted their respective positions. This
5   settlement represents a substantial recovery for the class, and a well crafted compromise of the
6   divergent positions of the parties, taking into account the rulings issued to date by this Court. The
7   uncertainty of future rulings, from the perspective of both sides, was certainly factored into the
8   negotiations by the parties, and emphasized by the mediator.

9       The settlement has been reached after considerable negotiation, involving the mediation efforts
10  of highly experienced mediators. Each side evaluated the strengths and weaknesses of their case and
11  independently came to the conclusion that this settlement represents a responsible means of addressing
12  the claims of Plaintiffs, and the defenses of Defendant. Given the foregoing, the settling parties now
13  urge this Court to grant preliminary approval.

14      The fact that Vector has already made a change to its business model, such that the sample set
15  is no longer paid for in any way by the trainee/sales representatives is also worthy of this Court's
16  consideration. This is a substantial change that will benefit future trainees/sales representatives.

17  **6.    CERTIFICATION**

18          **A.    Certification of a Settlement Class is Appropriate**

19      Here, this Court has already found that the requirements for class certification have been met.
20  The Ninth Circuit has denied the Defendant's Rule 23(f) petition for review. As will be discussed in
21  Section 6.B. below, the only modification to the court's prior order granting certification is to slightly
22  expand the settled claims so as to include the Labor Code § 203 claims previously dismissed by the
23  Court on summary judgment. Given the pre-certification dismissal of this claim, it was not considered
24  during the certification proceedings. Plaintiffs have already demonstrated that the certified claims
25  meet the four prerequisites in *Federal Rules of Civil Procedure*, Rule 23(a), numerosity, commonality,
26  typicality, and adequacy of representation, and one of the three requirements of *Federal Rules of Civil*
27  *Procedure*, Rule 23(b). The Court has also already granted final FLSA certification. As such, the
28  prerequisites for certification of this class action under Rules 23(a) and (b)(3) of the *Federal Rules of*

17

1 *Civil Procedure* are clearly satisfied, as are the FLSA criteria. Plaintiff class will not revisit these
2 criteria, and respectfully refers the Court to its very recent order regarding Certification, issued on
3 November 5, 2010 (Docket no. 375).

4                 **B.**      **Additions To The Class**

5         As part of the settlement negotiations and as part of the consideration for defendant to agree
6 to pay up to $13 million to resolve this matter, it was agreed that the Labor Code § 203 claim,
7 previously dismissed by the Court, would be included within the settlement, and released by the Class.
8 In all other respects, the claims being settled are those certified by the Court as well as the Plaintiff's
9 individual claims.

10         The Court is now asked to approve a settlement class certification as to the Labor Code § 203
11 claim. The only new issue that claim presents in relation to the "training time" claim to which it
12 applies is the "willful" standard. That standard is evaluated in light of the defendant's conduct, on a
13 class wide basis, and is therefore uniquely suited to class wide determination. If the defendant's overall
14 conduct is willful as to one class member in relation to its training program, it would be willful as to
15 all the class members. Therefore, based upon the parties agreement to include this claim in the settled
16 claims, it is requested that the Court also find that settlement class certification in relation to this claim
17 is appropriate. Based on this finding, the Plaintiff Class also asks that the Court approve the stipulated
18 amended complaint filed herewith, adding this claim back into the action for settlement purposes. In
19 the event final approval of the settlement is not granted, the parties will return to the same legal posture
20 that existed immediately prior to reaching the settlement.

21 / / /

22         **7.**      **NATURE AND METHOD OF CLASS NOTICE**

23         "For any class certified under Rule 23(b)(3), the court must direct to Class Members the best
24 notice practicable under the circumstances, including individual notice to all members who can be
25 identified through reasonable effort." (*Fed.R.Civ.P.* Rule 23(c)(2)(B).) "The court must direct notice
26 in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary
27 dismissal or compromise." (*Fed.R.Civ.P.* Rule 23(e)(B).) To comport with due process, notice must
28 be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

18

1  of the action and afford them an opportunity to present their objections . . . [I]f with due regard for the

2  practicalities and peculiarities of the case these conditions are reasonably met, the constitutional

3  requirements are satisfied." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

4    Courts have held that notice mailed to the last known address of identifiable class members

5  satisfies this standard, even if it is possible that some class notices do not reach class members. In this

6  case, this Settlement Notice will be the <u>fourth</u> mailing to be directed to the class members. This level

7  of communication with class members is almost without precedent, and has come at great expense to

8  the representative plaintiff and the class. The most recent mailing was completed only weeks ago, so

9  the claims administrator has very recent mailing address updates to work with. As a result, it is

10  expected that the Settlement Notice mailing will reasonably reach at least 95% of the class members,

11  an extraordinary result.

12    The Settlement also provides for a follow-up procedure intended to maximize participation of

13  the Class Members by the use of a reminder postcard. This postcard will be mailed, mid-way through

14  the claims period on or about May 13, 2011, to all class members who by that reminder mailing date

15  have not affirmatively acted on the Notice, either by presenting a claim, objecting to the settlement or,

16  in the case of newly noticed class members, by submitting an election to opt out of the class. This

17  reminder postcard mailing is an unusual procedure, bargained for by class counsel, and intended to

18  increase participation in the settlement to as large a number as possible. In addition, notice packets

19  returned as undeliverable will be subjected to a further follow up and re-mailing procedure.

20    With regard to the content of the notice, the proposed versions of which are attached to the

21  Settlement Agreement as Exhibits 1a through 1c, it meets all requisite levels for appropriately

22  providing full disclosure and information to the class members. "Notice is satisfactory if it generally

23  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

24  investigate and to come forward and be heard." 2 Newberg, *Newberg on Class Actions* § 8.32 at

25  8-103.

26    The Settlement Agreement also provides that the Claims Administrator will publish the Notice

27  and Proof of Claim Form on the website of class counsel.

28  / / /

19

---

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

1     **8.**    **CLAIMS ADMINISTRATION**

2     The Parties seek the approval of the appointment of Epiq Systems, Inc. as the Claims/Class

3 Administrator. Previously in this case, Epiq Systems has handled the mailing of the pre-certification

4 notice by Plaintiff, the Notice of Conditional Collective Action Certification, as well as the recent

5 Notice of Rule 23 and FLSA final certification. Epiq is thus intimately familiar with this class action,

6 the mailing lists created and also uniquely prepared to have its staff respond to telephonic inquiries

7 from class members regarding the class settlement. It has previously acted as claims administrator in

8 hundreds of wage and hour cases throughout the country. Epiq Systems has represented that the cost

9 of printing, mailing and handling of the claims submissions and class member inquiries will not exceed

10 $250,000.00. *Saltzman dec. para. 19.* The Parties have agreed that this sum will be paid out of the

11 settlement fund.

12     **9.**    **AMOUNT OF ATTORNEYS' FEE REQUEST TO BE INCLUDED IN CLASS**

13            **NOTICE**

14     The Settlement Agreement (Exhibit A) contemplates that Class Counsel will apply to the Court

15 for an award of fees to be paid from the settlement fund created, in the amount of 32.2% of the agreed

16 maximum of $13,000,000.00. Defendant will not object to the request. Thus, in conjunction with the

17 request for Final Approval of this settlement, and in conformance with the timing dictates of the recent

18 Ninth Circuit decision in *Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.*, 618 F.3d

19 988 (9th Cir. 2010), Class Counsel will seek an award of attorneys' fees equal to $4,190,000.00.

20     Additionally, Class Counsel will also seek reimbursement of the very substantial costs incurred

21 to date, and to be incurred up to the time of final approval, in an amount now estimated to be

22 approximately $435,000.00. Including any additional costs which may still be incurred, or any bills

23 which have not yet been received from third-party vendors, Class Counsel thus request that the Class

24 Settlement Notice advise the class members that counsel will be seeking reimbursement of fixed costs

25 in an amount not to exceed $760,000.00. At this time, these very substantial costs include broad

26 categories which encompass the pre-certification mailing; the conditional certification mailing and

27 opt-in process handled and by Epiq; the final certification mailing; numerous depositions; expert fees,

28 and mediation fees, amongst other items. In addition, there is an outstanding amount due to the Claims

20

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**<br>**Case No. CV 08-5198 EMC**

1  Administrator in the amount of $75,000 for the recently completed certification mailing.  Further,

2  Class Counsel will incur the cost of the Class Settlement Notice, which the Claims Administrator has

3  represented will not exceed $250,000.00.  The full and detailed costs will be set forth at the time of

4  submission for final approval.

5  Returning to the fees to be requested at the final approval hearing, while the primary basis for

6  the fee application will be the percentage of the common fund approach, the fee request herein will

7  also be independently validated and supported by the loadstar and multiplier approach, with a

8  multiplier under 1.5.[5]  The extent of the constant litigation effort devoted by Class Counsel in support

9  of this matter reflects that under the loadstar and modest multiplier approach, the total fee is also easily

10  supported.  While entitlement to an award of attorneys' fees is a matter left for discussion at the final

11  approval hearing, class counsel briefly notes that, under either the percentage of the fund approach or

12  the loadstar and multiplier methodology, the award that will be sought is appropriate.

13  The requested fee equal to 32.2% of the common fund created for the benefit of the class is

14  well within the accepted range of compensation.  This is the precise type of recovery which should

15  yield a "normal" one third contingent fee in the legal marketplace, had each and every Class Member's

16  action been pursued individually.

17  The award sought herein (either on a common fund basis, or based upon a lodestar with a less

18  than 1.5 multiplier) is commensurate with (1) the risk Class Counsel took in litigating this action; (2)

19  the substantial time, effort and expense dedicated to the case; (3) the skill and determination they have

20  shown; (4) the results they have achieved throughout the litigation; (5) the value of the settlement they

21  have achieved for Class Members; and (6) the other cases counsel have turned down in order to devote

22  their time and efforts to this matter.

23  The obvious risk, at the time the initial filing was undertaken on the matter, and again when

24

25  [5] Plaintiffs' counsel will provide the Court with contemporaneously created and maintained
time and billing records, redacted where necessary to protect ongoing work product and attorney

26  client privileges.  Should the Court request or require non-redacted records, then of course the same
could be submitted for the Court's *in camera* review.  These time records detail counsels' efforts, and

27  the extraordinary yet necessary amount of time that has been devoted for the benefit of the members

28  of the class.

21

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

1  Marlin & Saltzman agreed to become co-counsel in this case, was that the case would not succeed.

2  These were novel claims, and as the Court has repeatedly noted, there is a dearth of governing law

3  available to the parties and the court.  In addition, counsel knew that Defendant Vector, which had

4  operated under its business model for so many years, would not be amenable to voluntary change, and

5  also that Defendant had any and all resources needed to defend itself.  Class Counsel faced risk and

6  difficulty on numerous levels.  Consistent with this pre-filing understanding, Vector immediately

7  retained the significant resources and skill provided by the Reed Smith law firm, and this firm was

8  clearly instructed to undertake all legal steps to defend the Defendant's business practices.

9        As described in greater detail earlier in this motion, each and every step of the litigation

10  verified the initial thoughts of the original proposed class counsel that the case would be heavily

11  litigated. Pleadings, discovery, document production, depositions, motions for summary judgment and

12  certification were all serially and aggressively challenged.  In response, original counsel both reacted,

13  and originated, whatever was necessary to seize the initiative.  Ultimately, approximately one year into

14  the action, when it became clear that the pace of litigation would continue unabated, The Diversity

15  Law Group reached out to the Marlin & Saltzman firm to co-counsel the matter.

16        Thereafter, the litigation continued at a hectic pace.  Conditional certification was achieved,

17  experts were retained as necessary, depositions of dozens of class members were conducted on

18  multiple tracks, and then final certification and yet further summary judgment motions were filed and

19  fully briefed. Class counsel literally matched defendant at every turn, and always committed whatever

20  resources and costs were necessary to continue the battle.  Teams of attorneys were pulled from other

21  matters and deployed as needed in the ongoing deposition and pleading and discovery battles.

22        The end result is the substantial and beneficial settlement now before the Court.  All along, it

23  was always possible that the case could be lost, or not certified, and that class counsel would end up

24  with all costs and time lost, and nothing paid in return.  This was truly a contingent risk of monumental

25  proportions.

26        At the time of final approval, should preliminary approval be granted and Notice be sent out,

27  Class Counsel will detail in a separate motion for approval of fees and costs, yet further information

28  regarding the effort expended.  At this time, however, it is critical to make class members aware of the

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

1   amount of attorneys' fees being sought, so that they can respond to the request, if they so choose.  For
2   that reason, the proposed Notice clearly sets forth the fact that fees in the amount of $4,190,000.00 will
3   be sought.  Class Counsel, and the Plaintiff, thus respectfully ask that the Court approve the mailing
4   of the Notice with this request set forth.  Similarly, the costs set forth above, in the approximate
5   amount of $760,000.00, are also requested to be included in the Notice.

6   **10.    AMOUNT OF ENHANCEMENT AWARDS REQUEST TO BE INCLUDED IN**
7   **THE SETTLEMENT NOTICE**

8   Alicia Harris has been totally involved in the case from the start.  Specifically, in addition to
9   having her deposition taken on two separate occasions, the Class Representative had much of her
10  private life made public as a result of her initiation of this lawsuit on behalf of the other class
11  members.  For example, although marginally relevant, Ms. Harris had her high school records
12  subpoenaed by Defendant.  Similarly, Ms. Harris' personal telephone records were also subpoenaed.
13  Moreover, personal friends and family were also subpoenaed to testify about numerous issues,
14  including Ms. Harris' mother, godmother, godfather, neighbors, and fellow churchgoers.  Needless to
15  say, Alicia Harris has been required to endure a substantial pressure over the course of this litigation,
16  not only from Defendant, but from the people in her personal life.  Ms. Harris has done so without ever
17  wavering from her position as the Class Representative.

18  By law, class representatives are eligible for incentive payments."  (*Staton v. Boeing Co.*, 327
19  F.3d 938, 977 (9th Cir. 2003).)  "Because a named plaintiff is an essential ingredient of any class
20  action, an incentive award is appropriate if it is necessary to induce an individual to participate in the
21  suit." (*Cook v. Niedert*, 142 F. 3d 1004, 1016 (7th Cir. 1998); see also *In re Linerboard Antitrust Litig.*,
22  2004 U.S. Dist. LEXIS 10532, at *56 (E.D. PA. June 2, 2004) (Where "the class representatives have
23  conferred benefits on all other class members . . . they deserve to be compensated accordingly.").

24  The total of the incentive award that will be sought at the time of the final approval hearing is
25  $25,000.00, representing approximately 0.19 percent of the maximum settlement amount.  Numerous
26  courts have approved enhancements awards which are roughly 1% of the total settlement fund, or ten
27  times the proportion sought here.  (See, e.g., *Brotherton v. Cleveland*, 141 F.Supp.2d 907 (S.D.Ohio
28  2001) [approving $50,000 enhancement based on $5.25 million settlement]; *Enterprise Energy Corp.*

23

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

1 | *v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 51 (S.D. Ohio 1991) [awarding $300,000

2 | in enhancements based upon $30 million settlement]; *In re Dun & Bradstreet Credit Services*

3 | *Customer Lit.*, 130 F.R.D. 366, 373 74 (S.D. Ohio 1990) [awarding $215,000 to several class

4 | representatives out of an $18 million fund].)

5 | Accordingly, the proposed Notice gives class members notice that an incentive award of

6 | $25,000 will be requested at final approval for the representative plaintiff. The Court is respectfully

7 | requested to approve the inclusion of this amount in the Notice.

8 | **11.   PROPOSED SCHEDULE FOR CLAIMS ADMINISTRATION AND FINAL**

9 | **FAIRNESS HEARING**

10 | The Parties request that the following schedule be established for the administration of the

11 | settlement and a Final Fairness Hearing. All of the time frames noted hereafter, unless specified

12 | otherwise, are tied to the proposed dates agreed to by the Parties, of which the Court's approval is now

13 | requested:

| | |
|---|---|
| Claims Administrator to mail the Notice Packets | April 15, 2011 |
| Mailing of Reminder Postcard | May 13, 2011 |
| Last date to file objections/request for exclusion | May 30, 2011 |
| Last date to submit claims | June 14, 2011 |
| Late Claim submission deadline | July 14, 2011 |
| Filing Deadline for Attorney Fee and Cost Motion | TBD |
| Filing Deadline for Final Approval/Incentive Motion | TBD |
| Final Fairness Hearing for Final Approval Motions | TBD |

22 | **12.   CONCLUSION**

23 | Counsel for the parties have reached this settlement following extensive litigation, ongoing

24 | case discussions and arm's-length negotiations. The Court is being asked to permit notice of the terms

25 | of the settlement to be sent to the Class and to schedule a final fairness hearing to consider final

26 | approval of the settlement and all the attendant rulings thereon. Plaintiff respectfully requests that the

27 | Court grant preliminary approval of the proposed settlement and enter the proposed Preliminary

28 | / / /

**Plaintiff's Notice of Motion / Motion for Preliminary Approval of Class Action Settlement**
**Case No. CV 08-5198 EMC**

1  Approval Order submitted herewith, and for such additional relief as this Court should deem proper.

2

3  DATED:  March 29, 2011                    MARLIN & SALTZMAN, LLP
                                             DIVERSITY LAW GROUP
4                                            LAW OFFICES OF SHERRY JUNG

5
                                             By: ___/S/ Christina A. Humphrey_____
6                                                 Christina A. Humphrey, Esq.
                                                  of Marlin & Saltzman
7                                                 Attorneys for Plaintiff and the Class

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25