United States District Court

For the Northern District of California

1
2
3
4
5          UNITED STATES DISTRICT COURT
6          NORTHERN DISTRICT OF CALIFORNIA
7
8   ALICIA HARRIS,                           No. C-08-5198 EMC
9               Plaintiff,                    **ORDER GRANTING PLAINTIFF'S
                                              MOTION FOR PRELIMINARY
10          v.                                APPROVAL OF CLASS ACTION
                                              SETTLEMENT; AND GRANTING
11  VECTOR MARKETING CORPORATION,            LEAVE TO FILE FOURTH AMENDED
                                              COMPLAINT**
12              Defendant.
                                              **(Docket Nos. 450, 451)**
13
    _____/
14

15                    I.   __INTRODUCTION__

16          Pending before the Court is Plaintiff Alicia Harris's Motion for Preliminary Approval of

17  Class Action Settlement.  Docket No. 450.  Pursuant to the parties' Settlement Agreement,

18  Defendant Vector Marketing Corporation has agreed not to oppose Plaintiff's Motion for

19  Preliminary Approval and therefore has not filed a brief in response.  Also pending before the Court

20  is the parties' Joint Stipulation to Conditionally Amend the Third Amended Complaint for purposes

21  of settlement.  Docket No. 451.

22          On April 8, 2010, the Court held oral argument on Plaintiff's Motion, during which it

23  questioned the parties extensively about the terms of their Settlement Agreement and ordered

24  supplemental briefing as to certain issues relating to the Agreement.  *See* Docket No. 457.  In

25  response, both Plaintiff and Vector filed supplemental briefs.  Docket Nos. 458 (Plaintiff's

26  Supplemental Brief), 462 (Vector's Supplemental Brief).  The Court held a further hearing on April

27  20, 2011, during which it addressed issues raised in the parties' supplemental filings.  After careful

28  consideration of the Settlement Agreement, the parties' briefs, and counsel's arguments during the

1   hearings, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval of the Settlement

2   consistent with the modifications to the Settlement Notice set forth in this Order.  Further, the Court

3   **APPROVES** the parties' Joint Stipulation and **GRANTS** Plaintiff leave to file the proposed Fourth

4   Amended Class and Collective Action Complaint.

## II.   BACKGROUND

6   A.   Litigation History

7        Plaintiff filed this class action against Vector in October 2008, alleging that Vector's failure

8   to pay wages to participants in its three-day sales training seminar and its requirement that the

9   participants purchase sample kits of knives violated federal and state employment law.  Specifically,

10  in the Third Amended Class and Collective Action Complaint, Plaintiff asserts claims on behalf of

11  herself and the class members for:(1) failure to pay minimum wages in violation of California Labor

12  Code § 1197; (2) failure to pay minimum wages in violation of the federal Fair Labor Standards Act

13  (the "FLSA"), 29 U.S.C. § 206; (3) violation of Labor Code § 2802; (4) violation of Labor Code §

14  2698 *et seq.*; and (5) unfair business practices in violation of California Business and Professions

15  Code § 17200.  Docket No. 184; *see also* Joint Stipulation at 3.

16       On May 18, 2010, the Court conditionally certified Plaintiff's FLSA claim for collective

17  action.  Docket No. 176.  Subsequently, on November 5, 2010, the Court granted final certification

18  of the FLSA collective action, and granted in part Plaintiff's motion for certification of a Rule 23

19  class action.  Docket No. 375.  In February 2011, the parties filed cross-motions for summary

20  judgment, which were set for hearing on March 16, 2011.  Docket Nos. 416, 418.  However, during

21  a mediation session on March 10, 2011, the parties reached a settlement on all claims and withdrew

22  their motions for summary judgment.  *See* Docket No. 445.  Thereafter, on March 25, 2011, Plaintiff

23  filed the instant Motion seeking preliminary approval of the parties' settlement.  Docket No. 450.

24  B.   Overview of the Settlement Agreement

25       Following the settlement in principle reached during mediation, on March 29, 2011, the

26  parties executed a Joint Stipulation of Settlement and Release (the "Settlement Agreement").  Ex. A.

27  to the Declaration of Stanley D. Saltzman (Docket No. 450-2 at 1-38).  The key provisions of the

28  Settlement Agreement are as follows.

United States District Court

For the Northern District of California

1    *Payment Terms and Subclasses:*  In full settlement of the claims asserted in this lawsuit,

2    Vector agrees to pay a "Maximum Settlement Amount" of $13 million.  *Id.* ¶¶  2.H, 4.A.  In

3    exchange for the payment, the settlement class members agree to release Vector from their claims

4    seeking unpaid wages for participating in Vector's three-day sales training seminar, costs incurred in

5    obtaining the sample kits of knives from Vector, and all claims under California Labor Code §§ 201-

6    203.  *Id.* ¶ 3.A.  The Maximum Settlement Amount includes payments to settlement class claimants

7    for release of their claims, any award of attorneys' fees and costs, the Claims Administrator's costs,

8    a $25,000 civil penalty payment to the Labor and Workforce Development Agency pursuant to

9    California's Private Attorneys General Act ("PAGA"), and any incentive award to Ms. Harris.  *Id.*

10   ¶¶ 2.I, 4.A.

11        The settlement payments to class members will be paid from the "Net Settlement Amount,"

12   which is the amount of the Maximum Settlement Amount after deducting: (1) class counsel's fees;

13   (2) class counsel's costs; (3) payments for untimely claims; (4) the PAGA payment; and (5) any

14   incentive award to Ms. Harris.  *Id.* ¶ 4.F.  The Settlement Agreement estimates that if the Court

15   approves the maximum amounts of attorneys' fees and costs, the PAGA Payment, and the incentive

16   award to Ms. Harris, the Net Settlement Amount should be approximately $7,760,000.00  *Id.* ¶ 4.F.

17        The settlement class will be compromised of two subclasses: (1) the Training Time Subclass;

18   and (2) the Sample Kit Subclass.  *Id.* ¶¶ 2.O, 4.G.  Each subclass will be allocated 50% of the Net

19   Settlement Amount, estimated to be $3,880,000 per subclass.  *Id.* ¶ 4.G.  Settlement class members

20   may be part of either or both subclasses according to the following criteria.  *Id.* ¶ 4.G.

21        The Training Time Subclass will be comprised of class members who: (1) signed a Vector

22   Sales Representative Agreement during the Class Period; (2) attended Vector's initial three-day

23   sales training seminar; and (3) did not previously file an opt-out form.  *Id.* ¶ 4.G.1.  Eligible

24   members of the Training Time Subclass will each be awarded an estimated gross settlement payment

25   of $94.00, which after subtracting the class member's share of attorneys' fees and costs, the

26   incentive award, and the PAGA Payment, is anticipated to result in a net payment of approximately

27   $57.00.  *Id.*

28

United States District Court

For the Northern District of California

1   The Sample Kit Subclass will be comprised of class members who: (1) signed a Sales

2   Representative Agreement during the Class Period; (2) obtained a sample kit of knives during the

3   initial three-day sales training seminar or shortly thereafter by making a payment to Vector; and (3)

4   have not previously returned their sample kit to Vector for a refund of the payment. *Id.* ¶ 4.G.2.

5   Eligible members of the Sample Kit Subclass will each be awarded $125.00, which, after the

6   deductions outlined above, is anticipated to result in a net payment of approximately $75.00. *Id.*

7   Along with submitting a valid claim form to the Claims Administrator, Sample Kit Subclass

8   members must also return their sample kit of knives to Vector via a pre-paid shipping form included

9   with the Class Settlement Notice in order to obtain the award.[1] *Id.*

10   In addition to these payments to class members, the Settlement Agreement also provides for

11   a maximum $25,000 payment to the Labor and Workforce Development Agency, which represents

12   civil penalties pursuant to the California Labor Code's Private Attorney General's Act. *Id.* ¶¶ 2.K,

13   4.B.

14   *Attorneys' Fees and Costs*:  The Settlement Agreement authorizes class counsel to apply to

15   the Court for an award of attorneys' fees and costs incurred in litigating this case, which Vector

16   agrees not to oppose. *Id.* ¶ 4.C.  The Agreement caps the amount of fees class counsel may seek at

17   32.2% of the Maximum Settlement Amount, or $4,190,000.00, and caps the award of costs,

18   including the claims administrator's costs and expenses, at $1 million. *Id.* ¶¶ 4.C.1, C.2.

19   *Incentive Payment*:  The Agreement authorizes Ms. Harris to seek an incentive payment for

20   her participation in this lawsuit of up to $25,000, which Vector will not oppose. *Id.* ¶ 4.D.

21   *Releases*:  The Settlement Agreement provides that all class members other than those who

22   oped-out, shall release Vector from any claims arising out of or related to the claims certified by the

23   Court in its November 5, 2010 Order, as well as any claims that could have been certified or asserted

24   but were not, relating to:  (1) unpaid wages for participation in Vector's initial three-day sales

---

26   [1]  To the extent that Vector receives an incomplete sample kit, the Settlement Agreement
27   provides that Vector shall make a good faith determination whether the sample kit contents are
      sufficient to entitle the class member to reimbursement.  Settlement Agreement ¶ 4.G.2.  It further
28   provides that any disputes over Vector's determination "will be resolved by counsel for the Parties,
      pursuant to their prior discussions and written exchanges relating to the issue." *Id.*

4

1  training seminar; (2) reimbursement in connection with obtaining a sample kit of knives from

2  Vector; and (3) violations of Labor Code §§ 201-203, California Business and Professions Code §

3  17200, and any PAGA penalties.  *Id* ¶ 6.A.  Specifically, the Settlement Agreement contains the

4  following two release provisions describing the "California Released Claims," and the "Federal

5  Released Claims":

6       1. [U]pon the Final Approval by the Court of this Stipulation,
        each Class Member fully releases and discharges Defendant and each
        of its present and former parent companies, subsidiary companies,
7       related or affiliated companies, shareholders, partners, owners,
        officers, directors, employees, agents, independent contractor
8       managers, including their office, branch, district, and division
        managers and their assistant managers, attorneys, insurers, successors
9       and assigns, and any individual or entity which could be jointly liable
        with Defendant or any of them from any and all claims, debts,
10      liabilities, demands, obligations, guarantees, costs, expenses, attorney
        fees, interest, damages, action or causes of action for, or which relate
11      to, each Class Member's participation in Vector's initial three day
        sales training seminar program and/or his/her acquisition of the sample
12      kit of knives from Vector, including, but not limited to, the
        nonpayment of wages under any federal, state or local law related to
13      participation in the initial three day sales training seminar, expense
        reimbursement to the extent arising out of or related to the Sample Kit
14      or initial training, compelling or coercing patronage of Defendant,
        itemized wage statements, cash bond, meal or rest periods to the extent
15      arising out of or related to Vector's initial three day sales training
        seminar, any other related claims or penalties under the California
16      Labor Code (including, without limitation, damages or penalties under
        Labor Code §§ 201-204, 226, 226.7, 400-410, 450, 510, 558, 1197,
17      2802, and 2698, *et seq.*), the Fair Labor Standards Act (including,
        without limitation, 29 C.F.R. 785.27 through 29 C.F.R. 785.31) or
18      similar federal or state governmental agencies regulating wage and
        hour or labor and employment laws related to each Class Member's
19      participation in the initial three day sales training seminar or
        acquisition of the sample kit of knives, the Wage Orders of the
20      Industrial Welfare Commission, unfair, fraudulent and/or unlawful
        business practices pursuant to the common law or California Business
21      & Professions Code § 17200, breach of contract, and/or any other
        claims alleged in this action or that could have been alleged in this
22      action, including without limitation, all claims for restitution or other
        equitable relief, liquidated damages, punitive damages, waiting time
23      penalties, related penalties of any nature whatsoever, interest, attorney
        fees and costs ("California Released Claims"), from October 15, 2004
24      through the date of preliminary approval of this Settlement, arising
        from or related to each Class Member's participation in Vector's
25      initial three days sales training seminar program or acquisition of the
        sample kit of knives in the initial training program or shortly
26      thereafter.

27

28

United States District Court

For the Northern District of California

1             2.  In addition, upon the Final Approval by the Court of this
2  Stipulation, and except as to such rights or claims as may be created
     by this Stipulation, each Training Time Subclass Member who
3  previously submitted an opt in form and consented to join the
     conditionally certified collective action or submits a Claim Form fully
4  releases and discharges Defendant and each of its present and former
     parent companies, subsidiary companies, related or affiliated
5  companies, shareholders, partners, owners, officers, directors,
     employees, agents, independent contractor  managers, including their
6  office, branch, district, and division managers and their assistant
     managers, attorneys, insurers, successors and assigns, and any
7  individual or entity which could be jointly liable with Defendant or
     any of them from any and all claims, debts, liabilities, demands,
8  obligations, guarantees, costs, expenses, attorney fees, interest,
     damages, action or causes of action for, or which relate to 29 U.S.C. §
9  206 as such claims relate to training time ("Federal Released Claims),
     from April 15, 2006 through the date of preliminary approval of this
10  Settlement, arising from or related to each Class Member's training to
     become a sales representative[] with Defendant in the State of
11  California. [ . . . . ]

12  *Id*. ¶¶ 6.A.1-2.  Further, the Settlement Agreement provides that, with respect to the foregoing

13  Released Claims, "each Class Member expressly waive[s] any rights or benefits to them under the

14  provisions of section 1542 of the California Civil Code . . ."  *Id*. ¶ 6.A.3.

15       *Procedure for Claims and Settlement*:  Class Counsel is required to move for preliminary and

16  final Court approval of the Agreement.  *Id*. ¶ 5.B.  Following the Court's preliminary approval of the

17  Settlement Agreement, Epiq Systems, Inc. – the proposed Claims Administrator – shall mail a notice

18  packet to each class member consisting of the proposed Class Settlement Notice and the appropriate

19  claim form depending on the member's eligibility for each of the subclasses.  *Id*.  ¶ 5.C.  At least 10

20  days prior to the final fairness hearing, the Claims Administrator shall provide the Court with a

21  declaration of due diligence and proof of mailing regarding the mailing of the notice packet and

22  attempts to locate class members.  *Id*. ¶ 5.D.

23       There are two proposed claim forms: one strictly for the Training Time Claim, and the other

24  for both the Training Time claim and the Sample Kit Claim.  *See* Ex. 2 to Saltzman Decl. (Docket

25  No. 450-2 at 37-38).  Both forms require the class member completing the form to certify under

26  penalty of perjury that he or she attended Vector's initial three-day sales training seminar.

27  Settlement Agreement ¶ 5.E.  Additionally, the claim form for the joint Training Time and Sample

28  Kit Claims requires the class member completing the form to certify that he or she made a payment

for the sample kit from Vector.  *Id*.  All claim forms must be sent by U.S. mail and postmarked

within 60 days after the Claims Administrator mails the form to the respective class member.  *Id*.

Claim forms postmarked 60 days after the mailing of the Class Settlement Notice shall be

deemed untimely and invalid.  *Id*. ¶ 5.G.  However, members of the Training Time Subclass and/or

Sample Kit Subclass who submit claims forms that are postmarked more than 60 days after the

mailing of the Class Settlement Notice, but on or before the 90th day after the mailing of the Class

Settlement Notice, may be entitled to 50% of their claim value, up to a total cumulative amount of

$240,000.  *Id*.[2]  Any class member who submits a claim form postmarked later than 90 days after the

mailing of the Class Settlement Notice will not be entitled to an award.  *Id*.

*Unclaimed Settlement Funds*: The Settlement Agreement provides that any funds not claimed

by class members through valid and timely Claim Forms shall not be distributed to class members,

but shall be retained by Vector.  *Id*. ¶ 4.B.

*Objections*:  Any class member who has not opted out may file an objection to the Settlement

Agreement (or any of its terms) within 45 days after the Class Settlement Notice is mailed to the

class member, with a final postmark deadline of May 30, 2011.  *Id*. ¶ 5.H.1.

*Settlement Award Checks*:  Settlement award checks issued to class members shall be valid

for 120 days from the date of their issuance and will be automatically cancelled by the Claims

Administrator if the class member does not cash the check within that time, at which point the class

member's claim will be deemed null and void.  *Id*. ¶ 5.J.  Settlement award checks that have expired

will not be reissued and the funds shall be returned to Vector 150 days after the Settlement Effective

Date.  *Id*.

## III.   DISCUSSION

A.   Certification of a Settlement Class under Rule 23(a) and (b)(3)

On November 5, 2010, the Court granted final collective action certification of Plaintiff's

FLSA claim based on Vector's failure to pay trainees minimum wages for the time spent in initial

---

[2]  If the total amount awarded is less than $240,000, the remaining amount will be retained by Vector.  *Id*.  On the other hand, if the value of the Untimely Claim Forms "exceeds the outstanding funds allocated to Class Counsel's Costs, then each untimely claimant shall be paid by the Claims Administrator on a pro-rata basis from the available fund of . . . $240,000.00[]."  *Id*.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  training.  Docket No. 375.  The Court defined the FLSA class as "all individuals who worked for

2  Vector in the state of California as Sales Representatives from April 15, 2006, through May 12,

3  2010."  *Id*. at 18.

4       Further, the Court granted in part Plaintiff's Rule 23 motion for certification of her state law

5  claims for: (1) failure to pay minimum wages for participation in Vector's initial training seminar in

6  violation of California Labor Code § 1197; (2) unfair competition based on the failure to pay

7  minimum wages for the initial training and for the coerced purchase of the sample knife set; (3)

8  violation of PAGA, Labor Code § 2698, based on the coerced purchase of the sample knife set; and

9  (4) failure to reimburse to the extent based on the coerced purchase of the sample knife set under

10  Labor Code § 2802.  As to these initial state claims, the Court found that Plaintiff had made an

11  adequate showing that the requirements of Rule 23(a) and 23(b)(3) were satisfied and therefore

12  certified a Rule 23(b)(3) class with respect to those claims.[3]  *Id*. at 30-31.  The Court defined the

13  class as "all individuals who worked for Vector in the state of California as 'Sales Representatives'

14  from October 15, 2004 through the date of the class notice."  *Id*. at 31.

15       In the instant motion, Plaintiff requests that the Court approve these classes and claims for

16  purposes of settlement with one modification.  Specifically, Plaintiff states that as part of the

17  settlement negotiations, and as part of the consideration for Vector agreeing to pay up to $13 million

18  to resolve this lawsuit, the parties agreed that the Labor Code § 203[4] claim would be included within

19  the settlement and released by the settlement class.  Mot. at 18.  Accordingly, the parties request that

20  the Court approve the Labor Code § 203 claim as part of the certified classes' claims.  *Id*.

21

22

---

23       [3]  The Court, however, denied Plaintiff's Rule 23 motion with respect to her post-training

24  claim pursuant to Labor Code § 2802 which sought reimbursement of expenses incurred as a Sales
   Representative.  *Id*. at 36.

25       [4]  Section 203 of the Labor Code provides:

26       If an employer willfully fails to pay, without abatement or reduction,
        in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any

27       wages of an employee who is discharged or who quits, the wages of
        the employee shall continue as a penalty from the due date thereof at

28       the same rate until paid or until an action therefor is commenced, but
        the wages shall not continue for more than 30 days.

1   Concurrently, the parties have filed a Joint Stipulation to Conditionally Amend Complaint

2   for Settlement Purposes, requesting that the Court permit Plaintiff to file a Fourth Amended

3   Complaint that includes a claim for violation of Labor Code §§ 201-203.  Docket No. 451 at 4-5.

4   The parties also request that the certified classes be modified as follows:

5           The Class consists of: (1) all individuals who signed a Sales
            Representative Agreement with Defendant in the state of California
6           between October 15, 2004 and April 6, 2011, related to Plaintiff's
            claims for violation of Labor Code §§ 203, 1197, 2802, 2698 *et seq.*,
7           and Business and Professions Code § 17200 *et seq.* as it relates to
            training only (the Rule 23 Class) and (2) all individuals who signed a
8           Sales Representative Agreement with Defendant in the state of
            California between April 15, 2006 and April 6, 2011, related solely to
9           Plaintiff's claim for minimum wages in violation of 29 U.S.C. § 206
            and Labor Code § 203 as it relates to training time only (the FLSA
10          Class) (the Rule 23 Class and the FLSA Class shall hereinafter be
            referred to as the "Class Members").

11

12  *Id.* at 4-5.

13      As Plaintiff acknowledges, in its September 4, 2009 Order, the Court found that the named

14  Plaintiff failed to present any evidence that Vector "willfully" failed to pay Plaintiff wages in a

15  timely matter, as is required to prevail on a claim under Labor Code § 203(a), and therefore granted

16  summary judgment in favor of Vector on this claim.  *See* Docket No. 71 at 24.  Because Vector's

17  motion for summary judgment preceded the Court's class certification rulings with respect to

18  Plaintiff's claims, including the Labor Code § 203 claim, the Court's dismissal of the § 203 claim

19  applied only to Plaintiff as an individual.  *See* Docket No. 304.  However, because Plaintiff's § 203

20  claim failed, there was no standard bearer for the class as to that claim.  *Id.* at 3.

21      Subsequently, in January 2010, the Court granted in part and denied in part Plaintiff's

22  request to file a Third Amended Complaint.  Docket No. 109.  The Third Amended Complaint

23  included a claim for violation of Labor Code § 203, which Vector moved to strike on the ground that

24  the Court had previously dismissed the claim as to Ms. Harris.  Docket No. 304.  While the Court

25  denied Vector's request to strike the § 203 claim, it noted that unless a representative existed to

26  assert the Labor Code 203 claims, the claim may not be pursued any further in this litigation.  *Id.* at

27  4.  Toward that end, in August 2010, two opt-in class members, Hunter Bryan and Jantila Biddle,

28  filed a motion to intervene in this lawsuit and to represent the class as to the Labor Code 201-203

1    claim.  Docket No. 311.  The Court denied the motion, finding that the deadline for amending

2    pleadings had expired and the proposed intervenors had failed to establish good cause to modify the

3    Court's scheduling order because they did not act with reasonable diligence in filing the motion to

4    intervene.  *Id*. at 7.

5        The parties now seek to include the California Labor Code § 203 claim as part of the

6    certified settlement class.  Plaintiff submits that, although the Court did not have the opportunity to

7    assess whether the § 203 claim met the criteria for class certification under Rule 23 because it

8    dismissed the claim before the certification stage, adding the claim to the certification does not

9    present any material change to the classes previously certified.  Specifically, Plaintiff proffers that

10   the only change to the previously-certified Training Time Claims would be the addition of a

11   "willful" element, which is applicable on a class-wide basis, *i.e.*, if Vector's conduct in failing to pay

12   wages for training time was willful as to one class member, it was willful as to the entire class.  Mot.

13   at 18.  Further, Plaintiff argues that because the § 203 concerns the same conduct that forms the

14   basis of the other Training Time Claims, the Rule 23 analysis the Court previously undertook with

15   respect to those claims also applies to the § 203 claim.

16       The Court has carefully considered the parties' request and Plaintiff's arguments in support

17   and finds that addition of the Labor Code § 203 claim will not materially change the scope of the

18   certified classes[5] and is consistent with the Court's analysis in certifying the class.  The Court

19   **APPROVES** the parties' Stipulation and **GRANTS** Plaintiff leave to file the Fourth Amended

20   Complaint attached as Exhibit A to the Stipulation within 5 days of this Order.  Further, with the

21   modification proposed by Plaintiff, the Court **GRANTS** the motion to certify the FLSA and Rule 23

22   classes for purposes of settlement.

23   ///

24   ///

25   ───────────────────

26       [5] Although class members did not have this information about waiver of § 203 claims when
     they decided to opt out of the Rule 23 class, the Court finds the value of the claims insignificant in

27   light of potential proof problems as to willfulness, and thus expansion of the waiver to include § 203
     claims is probably immaterial and not prejudicial to the class.  Of course, class members will have

28   the right to object to the settlement and if objections are raised on this issue, the Court will consider
     them.

**United States District Court**
For the Northern District of California

B.      Preliminary Approval of the Settlement

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  As the Ninth Circuit explained, "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, before a court approves a settlement it must conclude that the settlement is "fundamentally fair, adequate and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).  Generally, the district court's review of a class action settlement is "extremely limited."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  The Court considers the settlement as a whole, rather than its components, and lacks the authority to "delete, modify or substitute certain provision."  *Id.*  (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir.1982)).  Rather, "[t]he settlement must stand or fall in its entirety."  *Id.*

At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.  *See Alvarado v. Nederend*, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (granting preliminary approval of settlement in wage and hour class action); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008); *Collins v. Cargill Meat Solutions Corp.*, 2011 WL 837140, at *6 (E.D. Cal. Mar. 9, 2011) (granting preliminary approval of settlement in wage and hour class action); Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the fairness of the proposed settlement, including a determination that there are no obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys . . . .").  Closer scrutiny is reserved for the final approval hearing.

The Court will evaluate each of the preliminary approval factors in turn.

1.      The Settlement Process

The first factor the Court examines is the means by which the parties arrived at settlement. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (citing 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:42 (4th ed. 2002)). Here, the parties arrived at the settlement after engaging in extensive discovery and after fully briefing their respective motions for summary judgment. Plaintiff and class counsel therefore had adequate information before them to gauge the value of the class's claims and assess whether Vector's proffered settlement amounts adequately compensated the class members for their damages. *See Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims."). Moreover, the parties had the benefit of several decisions from this Court, including the Court's September 4, 2009 summary judgment order, expressly setting forth the substantive law and analytical framework applicable to the class's claims. With the Court's prior rulings as guidance, the parties were in a position to assess the strengths and weaknesses of their arguments and evidence, and make an informed decision about the risks associated with proceeding to hearing on their cross-motions for summary judgment, and, if necessary, to trial.

Further, as Plaintiff points out, the parties reached their settlement during a mediation session conducted by Antonio Piazza, who has significant experience mediating complex civil disputes. This further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel. *See Chun-Hoon v. McKee Foods Corp*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *see also Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Carter v. Anderson Mech., LP*, 2010 WL 1946784, at *7 (C.D. Cal. May 11, 2010) (citing *Satchell*).

///

///

///

2.      The Presence of Obvious Deficiencies

The second factor the Court considers is whether there are obvious deficiencies in the Settlement Agreement.  Plaintiff contends that there are not.  In support she proffers that "[u]nder the terms of the Settlement Agreement, Vector has committed to a maximum payment of $13 million to resolve the settled claims," which she characterizes as a "substantial recovery for the class, and a well crafted compromise of the divergent positions of the parties, taking into account the rulings issued to date by this Court."  Mot. at 16-17.  Plaintiff also submits that the Settlement Agreement does not provide any preferential treatment for herself or other class members.  Mot. at 16.  Aside from these attributes, Plaintiff does not provide any meaningful discussion in her motion as to why the Settlement Agreement provides reasonable and adequate relief for the class or otherwise contains provisions protecting the class's interests.

During the hearings, the Court extensively questioned counsel for both parties about the terms of the Settlement Agreement.  In response to the Court's questions, counsel elucidated the basis for the Maximum Settlement Amount, how the settlement payments to both subclasses were calculated, and the conditions for receiving settlement payments, including the claims process and return of the sample kits.  Counsel's explanations clarified many important aspects of the settlement.  However, as discussed in detail below, while the face of the Settlement Agreement may not present an obvious deficiency, there are serious questions whether the Settlement Agreement will achieve a fair and adequate resolution.

3.      Preferential Treatment

Under the third factor, the Court examines whether the Settlement Agreement provides preferential treatment to any class member.  Plaintiff contends that the Settlement Agreement provides equal relief to all class members and the distributions to each class member – including Plaintiff – are calculated in the same way.  While the Settlement Agreement does authorize Ms. Harris to seek an incentive award of up to $25,000 for her role as named plaintiff in this lawsuit, the Court will ultimately determine whether Ms. Harris is entitled to such an award and the reasonableness of the amount requested.  In any event, the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or

1   unreasonable.  *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g*

2   *Corp.*, 563 F.3d 948, 958-69 (9th Cir. 2009).  Thus, the absence of any preferential treatment

3   supports preliminary approval of the Settlement Agreement.

4           4.      Whether the Settlement Falls Within the Range of Possible Approval

5           Finally, the Court must consider whether the Settlement Agreement falls within the range of

6   possible approval.  "To evaluate the range of possible approval criterion, which focuses on

7   substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced

8   against the value of the settlement offer."  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d

9   1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp.2d at 1080)

10  (internal quotations omitted).  Additionally, to determine whether a settlement is fundamentally fair,

11  adequate, and reasonable, the Court may preview the factors that ultimately inform final approval:

12  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of

13  further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

14  offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

15  experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction

16  of class members to the proposed settlement.  *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575

17  (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).  Although the Court undertakes a more in-depth

18  investigation of the foregoing factors at the final approval stage, these factors inform whether the

19  Settlement Agreement falls within the "range of possible approval."

20                  a.      Comparison of Expected Recovery with Settlement

21          The Court first considers the classes' expected recovery balanced against the value of the

22  settlement offer.  Because the damages and relief associated with the Training Time Claims and the

23  Sample Kit Claims are distinct, the Court will evaluate the expected recovery and the settlement

24  awards for the Training Time and Sample Kit Claims separately.

25  ///

26  ///

27  ///

28  ///

United States District Court

For the Northern District of California

i.    Training Time Claims

Turning to the Training Time Claims first, both Plaintiff and Vector submit that the maximum judgment the class would be entitled if the class prevailed on the Training Time Claims is $7,648,650.00.[6]  Mot. at 10; Def. Suppl. Br. at 5.  The Court agrees.

The parties contend the settlement is a favorable one that benefits the class.  As indicated above, the Settlement Agreement provides for a $13 million Maximum Settlement Amount, with half of that amount, or $6.5 million, allocated to Training Time Claims.  According to the parties, this figure represents over 85% of the value of the Training Time Claims, calculated as follows.  With respect to the wages due for participation in Vector's three day training seminar, Plaintiff multiplied the approximate time class members spent in training (15 hours) by the weighted average minimum wage over the class period ($7.39), resulting in estimated unpaid wages of $110.85 per person.  Mot. at 10.  Under the proposed Settlement Agreement, the 69,000 eligible Training Time Subclass members will divide the $6.5 million, resulting in an award of $94.00 each, which after deductions enumerated in ¶ 4.F, yields a net payment of approximately $57.00.  *See* Proposed Notice at 1, Ex. 1A to Saltzman Decl. (Docket No. 450-2 at 39).  While the gross individual award amount comes to $94.00, because the Settlement Agreement provides that attorneys' fees and other costs will be deducted off the top, the Training Time Subclass members' net award of $57.00 effectively amounts to a payment of 51% of their estimated unpaid training time wages.

The parties assert that this recovery is not only fair and reasonable, but constitutes a "significant, if not remarkable" recovery for the class.  Def. Suppl. Br. at 4.  Particularly, Vector argues that the settlement award is greater than the true settlement value of the case.  *See id.* at 5.  Starting with the maximum potential recovery amount of $7,648,650 as a baseline, and assuming a 50% litigation risk rate on the claims, Vector posits that the class should be entitled to a judgment (for settlement purposes) in the amount of $3,824,825.  *Id.*  Subtracting 33% for attorneys fees ($1,262,027), class counsel and the claims administrator's costs ($380,000), and an incentive

---

[6]  To arrive at this figure, the parties multiplied the number of Training Time class members (69,000) by the unpaid average wage for the training time ($110.85).

United States District Court

For the Northern District of California

1    payment to Plaintiff ($12,500),[7] Vector calculates the net fund that should be available for

2    distribution to the class at $2,169,578.  *Id.*  Vector submits that each class member would under this

3    analysis be entitled to a gross amount of $55.  Because this is 42% less than the $94 gross per

4    member award negotiated under the Settlement Agreement, Vector asserts that the Settlement

5    Agreement provides a favorable recovery for the class.  Plaintiffs do not take issue with this

6    analysis.

7    The parties' analysis is problematic for several reasons.  First, to compare the value of the

8    settlement against the expected recovery at trial, the Court must estimate the "maximum amount of

9    damages recoverable in a successful litigation" and compare that with the settlement amount.  *Glass*

10   *v. UBS Financial Services, Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) at *4 *quoting, In re*

11   *Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 459 (9th Cir. 2000).  The maximum

12   amount of damages if Plaintiffs are successful at trial is not discounted by the litigation risk.  It is a

13   number which serves as a comparative base, reflecting the full verdict value if the Plaintiff class

14   were successful at trial.  Attorney's fees are not deducted from damages awarded since a fee shifting

15   statute applies here.  *See* Calif. Labor Code § 1194(a).  Thus, the "maximum amount of damages

16   recoverable in a successful litigation" for purposes of analysis under *Glass* and *In re Mego Financial*

17   is $7,648,650, not $2,169,578.

18   In using this figure, the Court does not discount the verdict value by leakage resulting from a

19   claims process where less than all members file claims or from reversion of unclaimed funds to

20   Vector.  The Court reaches this conclusion after considering the parties' arguments and

21   supplemental briefing.  Were the Plaintiff class to obtain a verdict at trial, the Court would in all

22   likelihood distribute the award directly to training period class members without requiring members

23   to file a claim.  In her Supplemental Brief, Plaintiff concedes that there is nothing precluding a direct

24   distribution of payment checks to the entire class.  Pl. Suppl. Br. at 10.  Both Plaintiff and Vector

25   argue, however, that a claims process should be utilized in this case.

26

27   ───────────────
     [7] While Vector uses the maximum amount of attorneys' fees and costs authorized under the
28   Settlement Agreement, it factors in only half of the $25,000 incentive payment authorized under the
     Agreement.

16

Vector contends that the claims procedure is justified for several reasons.  First, Vector argues that, as in a single-plaintiff lawsuit, class members should be required to "prove up" their individual damage amount by filing a claim form. Def. Suppl. Br. at 19.  It argues that claims forms are routinely used in wage and hour class actions so that a class member may attest to the hours worked, even if the employer has the employees' time records. *Id*.  What Vector overlooks, however, is that the members of the Training Time Subclass have already been identified and their amount of unpaid wages sought is uniform throughout the class.  There is no dispute as to hours worked as all class members participated in three days of training and, if they prevail at trial, would be entitled to wages for 15 hours spent in Vector's training seminar.  Moreover, unlike a consumer class action (or even the Sample Kit Claims) where authentication and proof of purchase may properly be required as a predicate to each class member's recovery, no such proof is needed here. Vector has its own records documenting that each class member participated in the training seminar.

Vector also contends that claim-filing process reduces "the risks for abuse" and administrative burdens. Def. Suppl. Br. at 20.  It posits that without a claims procedure "nearly $500,000 ($57 net proceeds times 69,000 class members) in live checks would be making their way through the United States postal system with no potential end destination in sight." *Id*.  Vector contends that "because class members would not be assenting to receiving the proceeds and would not have advance knowledge of its deliverables, settlement checks could be stolen or misappropriated without their knowledge." *Id*.  While the Court appreciates Vector's interest in ensuring that any settlement payment checks are securely delivered to class members, Vector's concerns are overstated.  The class has already been formally certified and addresses of class members vetted.  As defense counsel acknowledged at the April 20th hearing, there have been three prior mailings to class members in this case, with the last mailing regarding final certification resulting in a 95% successful delivery rate.

Both parties argue that the costs associated with a class-wide direct mailing of checks are higher than those associated with the claims made process.  Pl. Suppl. Br. at 11; Def. Suppl. Br. at 21.  In support, Plaintiff has proffered testimony from Michael O'Connor of Epiq Class Action & Claims Solutions – the proposed Claims Administrator under the Settlement Agreement – who

**United States District Court**

For the Northern District of California

1   opines that if the parties dispensed with the claims procedure and utilized a direct mail method of

2   distributing checks to the class members, the cost would be $336,000, versus $250,000 for a claims

3   process under the proposed settlement.  Declaration of Michael R. O'Connor ("O'Connor Decl.") ¶

4   5, Docket No. 460.  In particular, Mr. O'Connor indicates that the increase would be the result of

5   additional postage costs and "other administrative costs," which he identifies as a higher volume of:

6   (1) check reissues; (b) uncashed checks to process; and (3) unclaimed funds to process (which Mr.

7   O'Connor presumes would escheat to the state).  *Id*. ¶ 6.  While the increase in postage may be an

8   expected consequence of the direct mailing method of distribution, Mr. O'Connor does not provide

9   any explanation for the increase in the remaining costs if the parties used the direct mailing method.

10  Further, Mr. O'Connor acknowledges that some costs associated with the distribution of the

11  settlement funds would decrease, such as the overall claims processing cost if the claim requirement

12  was eliminated.

13          Even if there were unclaimed funds resulting from dated addresses, uncashed checks, or a

14  claims process where less than 100% of the class members responded, the maximum amount of

15  damages recoverable were the Plaintiff class to succeed at trial should not be discounted for a

16  reversion of unclaimed funds to Vector.  It is unlikely the Court would order such a reversion after

17  judgment.  The Ninth Circuit has held in the post-judgment context,  "[f]ederal courts have broad

18  discretionary powers in shaping equitable decrees for distributing unclaimed class action funds."  *Six*

19  *Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1306, 1307 (9th Cir. 1990) (citing 2

20  Newberg on Class Action § 10.17).  In formulating a procedure to distribute the unclaimed funds,

21  courts may select from any of the following distribution methods: (1) *cy pres* or fluid distribution;

22  (2) escheat to the government; (3) reversion to the defendant; or (4) pro rata distribution of the

23  unclaimed fund to located class members.  *Id*. at 1307 & fn 4.  As the Ninth Circuit explained, "[t]he

24  district court's choice among distribution options should be guided by the objectives of the

25  underlying statute and the interests of the silent class members."  *Id*.

26          Importantly, the Ninth Circuit has cautioned "reversion to the defendant may be appropriate

27  when deterrence is not a goal of the statute or is not required by the circumstances."  *Six Mexican*

28  *Workers*, 904 F.2d at 1308 (finding that because of the deterrent objective of the Farm Labor

United States District Court

For the Northern District of California

1    Contractor Registration Act and nature of the defendant's violation, reversion of unclaimed funds to

2    defendant was not appropriate).  Conversely, reversion is not appropriate where deterrence is a

3    statutory goal and is not otherwise required by the circumstances.  Vector argues that the statute

4    underlying Plaintiff's training time compensation claim, California Labor Code § 1197, does not

5    have a deterrent goal.  Vector argues that the statute simply seeks to enforce the minimum wage

6    fixed by the labor commission and Plaintiff's claim pursuant to this section is one for compensation.

7    However, Labor Code § 1197.1 authorizes a "civil penalty" against an employer who fails to pay

8    minimum wages.  At least one California court has characterized the penalty provided in § 1197.1 as

9    "punitive in nature." *Brewer v. Premier Golf Properties*, 168 Cal. App. 4th 1243, 1253 (2008).

10   Inclusion of a penalty evidences a deterrent effect.  Moreover, the Labor Code also provides for

11   liquidated damages in addition to actual damages where the employer does not demonstrate good

12   faith.  Labor Code § 1194.2.  As the employee is also entitled to interest on actual damages (Labor

13   Code § 1194), the provision for liquidated damages functions not as compensation for the time-value

14   of money, but as an additional deterrent.

15          Alternatively, the parties argue that the reverter provision should be permitted in light of

16   other circumstances at play in this case.  Pl. Suppl. Br. at 9.  According to Plaintiff, if the parties

17   would have agreed to a non-reversionary settlement, the trade-off would have been a lower

18   settlement payment from Vector, resulting in a lower award to the class members.  Plaintiff thus

19   contends that the reversion provision was a bargaining tool which allowed counsel to maximize the

20   settlement award for those class members who do satisfy the claims process.  While this rationale

21   explains why the Settlement Agreement contains a reverter, it does not address what would happen

22   post-judgment were the Plaintiff class to succeed at trial.  Given the deterrent goal of the Labor

23   Code, the parties have not identified any other circumstances warranting a reversion of unclaimed

24   funds to Vector should Plaintiff obtain a judgment after trial.

25          In sum, the Court will measure the value of the settlement to the class against the full verdict

26   value of $7,648,650.

27          As mentioned at the hearing, the Court has substantial questions about the settlement value to

28   the class with respect to the Training Time Claim.  Because the Settlement Agreement contains a

1    claims procedure and reversion for unclaimed funds, the Court fears that if after class notice, only a

2    small percentage of the class files claims, the net aggregate recovery by the class will be a tiny

3    fraction of the $7,648,650 maximum verdict value at trial.  For instance, if only 10% of the 69,000

4    class members file claims (and recover $57 each after deduction), the net aggregate class recovery

5    will be $393,000, representing only 5% of the maximum verdict value for this subclass.  If 20% of

6    the class files claims, the net aggregate recovery will be $786,000, slightly over 10% of the

7    maximum verdict value.  As the Court indicated, even when considering the substantial litigation

8    risks and other factors discussed below which inform the fairness and adequacy of the settlement, if

9    the claims rate is low and the aggregate recovery paltry, the Court will likely refuse to approve the

10   settlement.  Nonetheless, at the hearing, rather than renegotiate the terms of the Settlement

11   Agreement, the parties expressed confidence there would be a more robust rate of participation and

12   chose to proceed with the approval process of the Settlement Agreement in its present form.

13          The Court wishes to make clear, however, that it is not holding that a claims process is

14   inherently unfair or that the parties' inclusion of the reversion provision as a term of the Settlement

15   Agreement is *per se* unreasonable.  As the parties correctly point out, courts routinely approve

16   settlement agreements that include such provisions.  *See, e.g.*, *Navarro v. Servisair*, 2010 WL

17   1729538, at *1 (N.D. Cal. April 27, 2010) (grating final approval of settlement pursuant to which the

18   "[d]efendant will retain a substantial portion of the common fund through reversion); *Glass v. UBS*

19   *Fin. Servs., Inc.*, 2007 WL 474936, at *8 (N.D. Cal. Jan. 26, 2007) (overruling objection to final

20   approval of the settlement based on reverter); *see also* Herbert Newberg & Alba Conte, 3 Newberg

21   on Class Actions § 10:15 (4th ed. 2010).  However, the issue is not necessarily the inclusion of such

22   provisions per se, but how these provisions *in operation* affects the value of the settlement as

23   compared to the maximum verdict Plaintiff could obtain at trial – one important factor in judging the

24   fairness and adequacy of the settlement.

25          In sum, the actual value of the settlement cannot be accurately assessed until the claims

26   process is completed.  At the time of the final fairness hearing, the parties and the Court will be in a

27   position to accurately calculate the value of the settlement and compare it to the maximum damages

28   recoverable were the Plaintiff class to succeed at trial.  For this reason, the class participation rate

1  may be critical in the Court's ultimate determination of whether the settlement is fair, reasonable,

2  and adequate.[8]

3                      ii.      Sample Kit Claims

4          With respect to the Sample Kit Claims, Plaintiff indicates that there are 52,000 Sample Set

5  Subclass members who each paid approximately $145.00 ($135 plus sales tax) for the sample kits.

6  Mot. at 10.  Plaintiff explains that, under the Settlement Agreement half of the Net Settlement

7  Amount, or $6.5 million, will be allocated to settling the Sample Kit Claims, which, when divided

8  by the 52,000 class members results in a gross award of $125.00 each, representing 86% the total

9  average payment made by the class members. *Id*.  However, after the deductions specified in ¶ 4.F,

10  the net payment to class members will be $75.00. *See* Proposed Notice at 1, Ex. 1A to Saltzman

11  Decl. (Docket No. 450-2 at 39).  Thus, as with the Training Time Claims, the actual settlement

12  payment subclass members will receive amounts to approximately 51% of the estimated total

13  damages associated with obtaining the sample kits.

14          During the April 8th hearing, the Court questioned counsel about the reasonableness of this

15  amount and about the condition that the subclass members return the sample kit along with filing a

16  claim in order to receive the settlement award.  Counsel explained that the settlement payment takes

17  into account the fact that class members have had use of the knives and obtained value therefrom;

18  many may have sold or given the knives as gifts.  To permit these individuals to retain the value and

19  use of the knives and still obtain a refund under the Settlement Agreement could result in a windfall

20  to subclass members.  More significantly, this Court previously held there is no private cause of

21  action for damages on this claim; the only claim that survived dismissal and for which the class was

22  certified is the claim for restitution under California Business and Professions Code § 17200.  The

23  ────────────

24          [8]  In *Glass*, for instance, the settlement agreement provided for a maximum settlement of
$45,000,000, from which the class members' claims would be paid, as well as attorneys' fees, costs,

25  enhancement awards, and administration costs.  2007 WL 221862, at * 1.  The agreement further
provided that any unclaimed funds would revert to the defendant. *Id*.  At the close of the claims

26  process, 6,684 of the 13,176 class members submitted claim forms – a participation rate of roughly
51%. *Id*. at *5.  The claims submitted sought payment of $21,133,928 from the settlement fund,

27  amounting to a gross class payment of 46.9% from the settlement fund.  Taking the participation rate
into consideration as one of many factors, the district court found that the settlement was fair,

28  reasonable, and adequate and granted final approval of the settlement. *Id*. at *14.

1   condition that the knives be returned in order to receive payment is consistent with the principles of

2   restitutionary relief.  Thus, even if claims were tried to a verdict in favor of the Plaintiff class, unlike

3   the Training Time Claim, a claims procedure and a return of the knives would likely be required in

4   order to obtain an award for the Sample Kit Claim.  Thus, the likelihood of a substantial disparity

5   between the value of the settlement and the maximum award at trial seems small.  The Court has far

6   less concern about the fairness of the Settlement Agreement as the Sample Kit Claim as it does with

7   respect to the Training Time Claim.

8                  b.        Other Factors

9          In addition to comparing the settlement value with the class's potential recovery, the Court

10  previews the other factors that will inform the overall fairness and adequacy of the settlement.[9]  The

11  Court reiterates that at least two factors – the amount offered in settlement and the reaction of the

12  class – cannot be fully addressed until the claims procedure is complete.

13                        i.        The Strength of the Plaintiffs' Case

14         With respect to the FLSA claim, the threshold question is whether the class members were

15  employees and therefore entitled to minimum wage for work performed under the FLSA, or trainees

16  who fell outside the scope of the FLSA's minimum wage requirement.  The Court has already ruled

17  that the proper test to make this determination is the Department of Labor's test based on the factors

18  articulated in the Supreme Court's decision in *Walling v. Portland Terminal Co.*, 330 U.S. 148

19  (1947).  The Court also indicated that the proper application of the test was a totality of the

20  circumstances approach, which focused on the economic realities that existed between Vector and

21  the training participants.  *See* Nov. 5, 2010 Order at 11.  There appear to be substantial litigation

22  risks to both parties as the factors do not clearly favor one party over the other.

23                       ii.        The Risk, Expense, Complexity, and Duration of Further Litigation

24         The second factor focuses on the risks, expense, complexity, and projected duration of the

25  litigation.  *See Churchill Village*, 361 F.3d at 575.  Both Plaintiff and Vector agree that continued

26  ────────────────

27         [9]  Although the parties' briefs contain argument relevant to some of the factors, they have not
     presented a comprehensive discussion of the factors at this time.  At the final approval stage, the

28  parties will be required to present a thorough discussion of the factors for the Court's consideration
     and to address the issues and questions highlighted in this Order with respect to the factors.

1  litigation of this case posed significant risks to both parties and would have substantially increased

2  the fees and costs incurred to date.  If summary judgment were denied, the parties would expend

3  considerable time and money preparing for trial.  Moreover, the losing party could well appeal the

4  verdict.

5                  iii.      The Risk of Maintaining Class Action Status

6        The Court considers the risk of maintaining class action status through the trial of this case.

7  As the record in this case illustrates, Vector vigorously disputed certification of the FLSA and Rule

8  23 classes.  There does not appear to be a significant risk to maintaining class action status were the

9  parties to litigate this case through verdict.  However, as Vector's Rule 23(f) petition demonstrates,

10  Plaintiff could well face a challenge to the proprietary of the certification rulings on appeal.

11                  iv.      The Settlement Amount

12        The Court has already stated its misgivings and concern about  the use of a claims procedure

13  and provision for reversion of unclaimed funds to Vector with respect to the Training Time Claim.

14  It cannot judge the settlement value until claims are filed.

15                  v.      Extent of Discovery and the Procedural Posture

16        The fifth factor examines the extent of discovery the parties have completed and the current

17  stage of the litigation to evaluate whether "the parties have sufficient information to make an

18  informed decision about settlement."  *Linner v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th

19  Cir. 1998).  As Plaintiff recounts in her motion, the parties completed substantial discovery leading

20  up to their cross-motions for summary judgment, including propounding interrogatories and requests

21  for production of documents and taking depositions of Plaintiff, fifty randomly-selected class

22  members, and persons designated by Vector pursuant to Rule 30(b)(6).  *See* Mot. at 7-8.

23                  vi.      The Experience and Views of Counsel

24        The sixth factor takes into account counsel's experience and their respective views of the

25  Settlement Agreement.  The Court has previously evaluated Class Counsel's qualifications and

26  experience and concluded that counsel is qualified to represent the class' interests in this action.

27  The Court notes, however, that courts have taken divergent views as to the weight to accord

28  counsel's opinions.  *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal.

1  May 11, 2010) ("Counsel's opinion is accorded considerable weight."); *Riker v. Gibbons*, 2010 WL

2  4366012, at *4 (D. Nev. Oct. 28, 2010) ("The recommendation of experienced counsel in favor of

3  settlement carries a great deal of weight in a court's determination of the reasonableness of a

4  settlement.") (internal quotation omitted); *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is

5  reluctant to put much stock in counsel's pronouncements, as parties to class actions and their

6  counsel often have pecuniary interests in seeing the settlement approved.").

7                                        vii.    Government Participant

8          Because there is no governmental participant in this case, this factor is inapplicable.

9                                        viii.   Class Member Reaction

10          The final factor examines the class members' response to the proposed settlement.  *See*

11  *Churchill Village*, 361 F.3d at 575.  Because the class had not been notified of the settlement, the

12  Court cannot undertake any evaluation of the class's reaction to the settlement, including the number

13  and substance of any objections.  As discussed above, the class participation rate in filing claims will

14  also inform the Court's assessment of the class member reaction.

15  C.    Summary

16          Taking each of the foregoing factors into consideration, the Court finds that, at this stage, the

17  parties have made a sufficient showing that the Settlement Agreement potentially provides a fair

18  resolution of the class members' claims against Vector.  The Court cannot say at this juncture that

19  the proposed settlement has any obvious deficiencies or does not fall within the range of possible

20  approval.  The Court therefore **GRANTS** Plaintiff's request for preliminary approval of the

21  Settlement Agreement.

22  D.    Appointment of Class Representative and Class Counsel

23          In its November 5, 2010 order granting final certification of Plaintiff's FLSA collective

24  action and certifying Plaintiff's state law claims related to the initial training under Rule 23(a) and

25  (b)(3), the Court determined that Ms. Harris is an adequate representative for the class as to the

26  Training Time Claims and found that her attorneys were competent to serve as Class Counsel.  *See*

27  Docket No. 375 at 25-26.  Based on the materials the Court previously considered in conjunction

28  with Plaintiff's certification motion, and for the reasons the Court articulated in its certification

1   order, the Court now appoints Ms. Harris as Class Representative for settlement purposes, and

2   appoints Marlin & Saltzman, LLP, The Diversity Law Group, and the Law Offices of Sherry Jung as

3   Class Counsel for purposes of settlement.

4   E.      Proposed Class Notice and Notification Procedures

5          Generally, a class action settlement notice "is satisfactory if it generally describes the terms

6   of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

7   forward and be heard." *Churchill Village*, 361 F.3d at 575.

8          The parties have agreed upon the form and content of the Notice of Class Action Settlement

9   and Vector Settlement Claim Form for Both Training Time and Sample Kit Claims.  Saltzman Decl.,

10  Ex. 1 & 2 (Docket Nos. 450-1 & 450-2).  The Court finds that the Notice sufficiently informs the

11  class members of: (1) the nature of the litigation, the Settlement Class, and the identity of Class

12  Counsel; (2) the essential terms of the Settlement Agreement, including the gross settlement awards

13  and the net settlement payments class members can expect to receive as part of the Training Time

14  Subclass and the Sample Kit Subclass and the release of claims against Vector; (3) information

15  about how administrative costs, court-approved attorneys' fees, and possible incentive payment to

16  Ms. Harris will be paid from the Maximum Settlement Amount; (4) how to object to the settlement;

17  (5) the procedures for final approval of the settlement and Settlement Agreement, including the

18  hearing date and time, the issues that will be addressed at the hearing, and the class members'

19  opportunity to appear at the hearing; and (6) how to obtain additional information about the

20  settlement.  Accordingly, the Court approves the Notice of Class Action Settlement

21         Additionally, Rule 23(e)(1) mandates that, before the Court approves a settlement, "The

22  court must direct notice in a reasonable manner to all class members who would be bound by the

23  proposal."  The Settlement Agreement sets forth the following procedure for providing notice to the

24  class members.  Within seven days after the Court grants preliminary approval of the Settlement,

25  Vector shall provide the Claims Administrator with the each class member (and each Subclass

26  Member's) name, address, and the last four digits of each individual's social security number.

27  Settlement Agreement ¶ 5.A.  After the Court grants preliminary approval, the Claims Administrator

28  shall mail the Claim Form and Class Settlement Notice to each class member using the information

1    transmitted to the Claims Administrator by Vector. *Id.* ¶ 5.C. No later than 30 days after mailing of

2    the Class Settlement Notice, the Claims Administrator shall mail to each Class member who has not

3    responded to the initial mailing a reminder postcard. *Id.* ¶ 5.F. The Claims Administrator will re-

4    send within five business days any Notices of Settlement and Claim Forms returned to the Claims

5    Administrator as non-delivered during the 60 day period for filing claims to the forwarding address

6    if provided on the returned envelope. *Id.* ¶ 5.F. If no forwarding addressing is provided or

7    available, the Claims Administrator shall perform a public record search for the Class member and

8    re-send the Class Settlement Notice and Claim Form to the Class member if located through the

9    search. *Id.* At least 10 days prior to the Final Fairness Hearing, the Claims Administrator shall

10   provide the Court with a declaration of due diligence and proof of mailing with regard to the mailing

11   of the Class Settlement Notice and attempts to locate class members. *Id.* ¶ 5.D.

12       Taking these procedures into consideration, the Court finds that the Settlement Notice

13   provides the best possible notice to the class members.

14   F.    Notice of Motion for Award of Attorneys' Fees and Costs

15       Section VI.C of the Settlement Notice informs class members that class counsel will file a

16   motion seeking an award of attorneys' fees in the amount of $4,190,000.00. *See* Ex. 1A to Saltzman

17   Decl. at 41-42 (Docket No. 450-2). To enable class members to review class counsel's motion, class

18   counsel shall include language in the Settlement Notice indicating the deadline for filing the

19   attorneys' fees motion, specifically stating the deadline for any class member objections to the fees

20   motion, and informing class members that the motion and supporting materials will be available for

21   viewing on class counsel's website. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988,

22   993-94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair

23   opportunity to examine and object to attorneys' fees motion). That motion shall be filed with the

24   Court and posted on class counsel's website not later than 20 days before class members' objections

25   are due.

26   G.    Proposed Settlement Administrator

27       Pursuant to the Settlement Agreement, the parties have agreed that Epiq Systems shall serve

28   as the Claims Administrator and will be responsible fore administration of the Class Settlement

Notice and Claim Forms.  Settlement Agreement ¶ 2.D; Saltzman Decl. ¶ 16.  The parties further acknowledged that the cost of administering the Class Settlement Notice will not exceed $250,000.  Settlement Agreement ¶ 4.C.1.  The Court finds that Epiq Systems is qualified to perform the tasks associated with administering the Notice and Claims procedures outlined above and therefore approves Epiq Systems as Claims Administrator.

H.      Settlement Approval Schedule

        The parties shall stipulate to a schedule for each event below and submit such stipulation to the Court within 7 days of this Order.

| EVENT | DATE |
| --- | --- |
| Claims Administrator to mail Notice Packets | |
| Mailing of Reminder Postcard | |
| Last date to file objections | |
| Last date to submit claims | |
| Late Claim Form submission deadline | |
| Filing Deadline for Attorneys' Fees and Costs Motion | |
| Filing Deadline for Incentive Payment Motion | |
| Filing Deadline for Final Approval Motion | |
| Filing Deadline for Class Members Objections | |
| Final Fairness Hearing and Hearing on Motions | |

///
///
///
///
///
///
///
///
///

United States District Court

For the Northern District of California

**IV.   CONCLUSION**

With the conditions set forth above that will ultimately be resolved at the final approval stage after the claims process is complete, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Docket No. 450).  Further, the Court **APPROVES** the parties' Joint Stipulation to Conditionally Amend Complaint for Settlement Purposes (Docket No. 451), **CERTIFIES** the proposed Settlement Class and **GRANTS** Plaintiff leave to file the proposed Fourth Amended Class and Collective Action Complaint within 7 days of this Order.

This order disposes of Docket Nos. 450 and 451.


IT IS SO ORDERED.


Dated: April 29, 2011

_____
EDWARD M. CHEN
United States Magistrate Judge