John P. Zaimes (SBN 91933)
jzaimes@reedsmith.com
Roxanne M. Wilson (SBN 94627)
rwilson@reedsmith.com
John H. Lien (SBN 222842)
jlien@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:   +1 213 457 8000
Facsimile:    +1 213 457 8080

Attorneys for Defendant
Vector Marketing Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HARRIS, as an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>VECTOR MARKETING CORPORATION, a Pennsylvania corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | No.: CV 08-5198 EMC<br><br>**DEFENDANT VECTOR MARKETING CORPORATION'S JOINDER IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:            August 10, 2011<br>Time:           10:30 a.m.<br>Ctrm:           5<br><br>Complaint Filed: October 15, 2008<br>Trial Date:           N/A |

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. THE APPLICABLE FACTORS FAVOR APPROVAL OF THE CLASS ACTION SETTLEMENT ................................................................................ 2

III. THE STRENGTH OF PLAINTIFF'S CASE HAS ALWAYS BEEN IN QUESTION .................................................................................................................. 3

    A. Plaintiff's Training Time Claim For Minimum Wages Has Significant Shortcomings ........................................................................................ 3

    B. Plaintiff Has Never Produced Evidence That Class Members Were "Coerced" Into Making A "Purchase" Of The Sample Kit ........................................................................................................................... 6

IV. DESPITE CLASS CERTIFICATION, THERE REMAIN SERIOUS QUESTIONS AS TO WHETHER A CLASS ACTION TRIAL CAN BE MAINTAINED, PARTICULARLY GIVEN THE INADEQUACY OF THE CLASS REPRESENTATIVE .................................. 7

V. THE SETTLEMENT OFFERED BY VECTOR FAR EXCEEDS THE VALUE OF PLAINTIFF'S CLAIMS AND THE RISKS ATTENDANT TO CONTINUED LITIGATION ................................................. 8

VI. THE REACTION OF THE CLASS TO THE PROPOSED SETTLEMENT HAS BEEN FAVORABLE ...................................................... 9

VII. CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

### Cases

*Atkins v. General Motors Corp.*,
  701 F.2d 1124 (5th Cir. 1983) ................................................................................................ 3, 5

*Bagel Inn, Inc. v. All Star Dairies*,
  1982-1 TRADE CASES (CCH) P 64 (D.N.J. 1981) ....................................................................... 9

*Boyd v. Bechtel Corp.*,
  485 F.Supp. 610 (N.D.Cal. 1979) ............................................................................................ 10

*Craft v. County of San Bernardino*,
  624 F.Supp.2d 1113 (C.D.Cal. 2008) ...................................................................................... 10

*Donovan v. American Airlines*,
  686 F.2d 1023 (10th Cir. 1993) ................................................................................................. 5

*Donovan v. Trans World Airlines, Inc.*,
  726 F.2d 415 (8th Cir. 1984) ..................................................................................................... 5

*Ersler v. Toshiba America, Inc.*,
  2009 WL 454354 (E.D.N.Y. 2009) .......................................................................................... 10

*Gooch v. Life Inv. Ins. Co. of Am.*,
  264 F.R.D. 340 (M.D. Tenn. 2009) ............................................................................................ 7

*Hall v. Best Buy Co., Inc.*,
  2011 WL 1103755 (E.D.Pa. 2011) ........................................................................................... 10

*In re Austrian & German Bank Holocause Litig.*,
  80 F.Supp.2d 164 (S.D.N.Y. 2000) .......................................................................................... 10

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. 2011) ......................................................................................... 10

*In re Four Seasons Securities Laws Litig.*,
  58 F.R.D. 19 (W.D.Okla. 1972) ................................................................................................. 9

*In re Omnivision Techs., Inc.*,
  559 F.Supp.2d 1036 (N.D.Cal. 2008) ........................................................................................ 9

*In re Portal Software Secs. Litig.*,
  2007 WL 4171201 (N.D.Cal. 2007) ........................................................................................... 8

*In re Tyco International, Ltd.*,
  535 F.Supp.2d 249 (D.N.H. 2007) ........................................................................................... 10

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) ................................................................................................... 8

*McPhail v. First Command Financial Planning, Inc.*,
  2009 WL 839841 (S.D.Cal. 2009) .......................................................................................... 8, 9

*Newman v. Stein*,
  464 F.2d 689 (2nd Cir. 1972) ..................................................................................................... 9

*Overton v. Walt Disney Company*,
  136 Cal.App.4th 263 (2006) ....................................................................................................... 6

*Reich v. Parker Fire Protection District*,
  992 F.2d 1023 (10th Cir. 1993) ............................................................................................. 3, 5

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................................. 2

*Sandoval v. Tharaldson Employee Management, Inc.*,
   2010 WL 2486346 (C.D.Cal. 2010) ................................................................................. 9, 10

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................................. 2

*Tarlecki v. Bebe Stores, Inc.*,
   2009 WL 3720872 (N.D.Cal. 2009) ........................................................................... 6, 10, 11

*Walling v. Portland Terminal Co.*,
   330 U.S. 148 (1947) ............................................................................................................... 5

*Wooden v. Board of Regents of the Univ. Sys.*,
   247 F.3d 1262 (11th Cir. 2001) ............................................................................................. 8

**Statutes**

Cal. Lab. Code § 450 ..................................................................................................................... 6

**Rules**

Federal Rule of Civil Procedure 23(e) ........................................................................................... 2

## I. PRELIMINARY STATEMENT

Two and a half years after the filing of the complaint in this action and after extensive pre-trial litigation, this case was ripe for settlement earlier this year. The parties and their counsel, long at opposite poles in their views about the case, were able to craft a fair and reasonable settlement with the assistance of one of the nation's preeminent mediators.

Pursuant to that settlement, the claims administrator mailed more than 68,000 notices to members of the class after this Court granted preliminary approval of the settlement. Since that time, a mere two objections have been filed with the Court (.00003 of the class) and only four opt outs have been received (.00006 of the class)--both amounts are statistically insignificant.

But more importantly, of those class members who were offered the chance to participate in the settlement, 27% have already filed claims to receive a cash payment from the settlement fund, and more will be added to that number through the late claims process. The claims rate achieved in this action is well within the range of claims rates accepted by the leading authorities as adequate. The rate here is particularly remarkable, and therefore inherently more reasonable, given the limited time of engagement of most of the class members with Vector and the transient nature of the class population.

The claims rate also represents an optimal result in an action where the class has repeatedly evidenced a palpable disinterest in the litigation. For example, as the Court will recall, the opt in rate for the FLSA claim was just over 10% of the total class. Moreover, counsel for plaintiff have now had *five* opportunities to communicate with the class through mailed notices--not including the various postings on counsel's website--far more attempts to generate interest than most class actions have. And yet the claims rate on the sample kit issue further demonstrates the disinterest in that aspect of plaintiff's case. As Vector maintained throughout this litigation, Sales Reps who were interested in receiving their sample kit deposits back

had already expressed that interest and had their deposits returned, to the tune of about 13% of class members.  *See* Matheson Declaration (Doc. No. 416-3), at ¶ 38.  The rest had opted to keep their kits because they liked the Cutco product.  Accordingly, of the class members who received five notices and fully two more chances to redeem their kits through this class claims process, 99% chose not to do so.

Although plaintiff's motion for final approval of the class action settlement is unopposed, defendant Vector Marketing Corporation submits this supplemental brief to further explain why the parties' settlement should receive this Court's approval as an eminently fair and reasonable settlement of this action.

## II.   THE APPLICABLE FACTORS FAVOR APPROVAL OF THE CLASS ACTION SETTLEMENT

On a final approval motion pursuant to Federal Rule of Civil Procedure 23(e), the Court's primary task is to determine whether the proposed settlement is fundamentally fair, adequate, and reasonable.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  To make that determination, a number of factors are typically considered, including:  (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participation; and (8) the reaction of the class members to the proposed settlement.  *See Staton*, 327 F.3d at 959; *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).

Plaintiff has addressed each of these eight factors in her motion, so only a few of the factors will be touched on by Vector here:  the first (strength of plaintiff's case), third (maintenance of class action status), fourth (the amount offered in settlement), and eighth (reaction of the class members).

## III. THE STRENGTH OF PLAINTIFF'S CASE HAS ALWAYS BEEN IN QUESTION

The only claims currently at issue in this case are whether class members were entitled to be paid for training and whether they were "coerced" into "purchasing" the sample kit. Those claims were always of questionable strength, and there has always been a serious underlying question whether there were any wrongs that needed to be righted in connection with those claims. The fact that there has been something well less than a heavy surge of claims made in this case, notwithstanding <u>five</u> separate class mailings, reaffirms that point, particularly with respect to the opt-in response and the sample kit claim response.

### A. **Plaintiff's Training Time Claim For Minimum Wages Has Significant Shortcomings**

To prevail on the training time claim, plaintiff and the class would need to establish that:

(1) the training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school;

(2) the training is for the benefit of the trainees;

(3) the trainees do not displace regular employees, but work under close observation;

(4) the employer that provides the training derives no immediate advantage from the activities of the trainees and on occasion his operations may actually be impeded;

(5) the trainees are not necessarily entitled to a job at the completion of the training period; and

(6) the employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

*See Reich v. Parker Fire Protection District*, 992 F.2d 1023, 1029 (10th Cir. 1993); *Atkins v. General Motors Corp.*, 701 F.2d 1124, 1127 (5th Cir. 1983).

Most of the factors above were not seriously contested by plaintiff--particularly the first, second, third and sixth. As plaintiff has acknowledged in her motion for

final approval, much of the merits arguments focused on the fourth factor, but the evidence as to that factor leaned heavily toward defendant.

Plaintiff argued that trainees conferred an immediate benefit on Vector in training when they: (a) purchased the sample kit; (b) created the so-called initial names list and used the list to set up appointments; (c) created the recruit list; and (d) "ultimately" became a sales force. *See* Plaintiff's Motion for Summary Judgment (Doc. No. 418), at 14-17-23. However, none of these events constituted an immediate benefit to Vector, and some afforded no benefit in terms of labor at all.

    a.   *Sample Kit*. Overall, the six factor test focuses on whether work was performed in training. The purported purchase of the sample kit is not work, and this Court stated as much, finding on plaintiff's motion to compel that the alleged purchase of the sample kit was irrelevant to the "employee" analysis under *Portland Terminal*. *See* Discovery Orders (Doc. No. 211, 410), respectively, at p.1 (disposition of the sample kit) and p. 2 (alleged profit on the sample kits acquired by Sales Representatives).

    b.   *Customer List*. With respect to creation of the customer list, any benefit Vector would have derived took place <u>after</u> training, i.e., when a Sales Representative made a sale. Any benefit was <u>not</u> immediate.

    c.   *Recruit List*. Plaintiff's reliance on the recruit list as evidence of an "immediate benefit" to Vector is equally unavailing. Although this Court granted plaintiff's motion to compel discovery with respect to the amount of sales generated by potential Sales Representatives identified by trainees in training, the Court acknowledged that the benefit to Vector could be contingent, rather than immediate, and thus not admissible at trial:

> "Although Vector must put in efforts to convert the information from the list into actual recruitments and ultimate sales, the lists, like a customer or mailing list that may be purchased for marketing purposes, arguably have present value as soon as they are generated. Without making an

ultimate decision on relevance and admissibility at trial…" *See* February 3, 2011 Discovery Order (Doc. 410), at 2.[1]

d.  *Sales Force*.  The assertion that Vector obtained an "immediate benefit" from creating a workforce is simply not persuasive.  The creation of a labor pool is in the very nature of any employer-sponsored training program.  That is what the Supreme Court in *Portland Terminal* recognized as a lawful reason for the establishment of a training program and cannot be a basis for determining whether training should be paid or unpaid.  *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 149 (1947) (trainees completing practical training if not immediately put to work "constitute a pool of qualified workmen available to the railroad when needed").  So did the Fifth, Eighth, and Tenth Circuits.  *Atkins v. General Motors Corp.*, 701 F.2d 1124, 1127 (5th Cir. 1983) (training program filled "need to obtain more skilled labor"); *Donovan v. Trans World Airlines, Inc.*, 726 F.2d 415, 416 (8th Cir. 1984) (TWA "received literally thousands of applications each year" for training program and flight attendant positions); *Reich, supra*, 992 F.2d at 1029 (10th Cir.) (firefighter academy was conducted to "expand its forces").

In determining whether the purported trainees were entitled to be paid minimum wages for training time, the governing authorities focus on whether the training replicated work, so as to operate as a sidestepping of the wage and hour laws.  The authorities were not focused on whether contingent, post-training benefits were conferred on the employer.  Here, after years of hard fought litigation, and several discovery motions, plaintiff never produced any tangible evidence that Vector's trainees "worked" in training. Plaintiff's unlikely ability to prevail at trial on this claim thus also favors approval of the settlement reached by the parties.

---

[1] Vector no doubt would have moved *in limine* against the admissibility of evidence, or even argument, related to the recruit list as an "immediate benefit," and the authorities were strongly supportive.  *Reich*, *supra*, 992 F.2d at 1029 (citing *Atkins*) (no discussion regarding value of life saved by firefighters); *Donovan v. American Airlines*, 686 F.2d 1023, 1029 (10th Cir. 1993) (no discussion with the amount of profits generated by airline tickets booked by American's call center ticketing agents during training); *Atkins, supra,* at 1127 (training program filled "need to obtain more skilled labor" and no discussion of GM's profit margins on the cars produced).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

B. **Plaintiff Has Never Produced Evidence That Class Members Were "Coerced" Into Making A "Purchase" Of The Sample Kit**

The crux of plaintiff's sample kit claim under California Labor Code section 450 is that class members were "coerced" into a "purchase" by Vector. As Vector has maintained throughout this litigation, in actuality, Vector Sales Representatives could obtain the sample kit by placing a fully refundable *deposit* on the kit, and thousands later got their deposits back, while others elected to keep their sample kits, since the knives were worth far more than the amount of the deposit. The discovery conducted to date showed no such coercion, let alone a purchase, as required by the Labor Code.

The coercion argument by plaintiff centered on the fact that 90% of class members had placed a deposit on the kit. But that fact says nothing about coercion. It actually supports the contrary conclusion. The fact that 10% of the class chose not to "purchase" the kit shows no coercion, since there were other means of obtaining the kit. Coercion is not established even when a vast majority of workers are offered, and do in fact take advantage of, a particular workplace benefit.[2]

The fact that there was no coercion and that the deposits were fully refundable is confirmed by the extremely low claim rate for the sample kit aspect of this case. Only 1% of the class members elected to return their sample kit through the settlement. Such a low percentage has been held by the Northern District to be indicative of the lack of merit in a claim. *See, e.g., Tarlecki v. Bebe Stores, Inc.*, 2009 WL 3720872, *2 (N.D.Cal. 2009) (finding that low claims rate could be attributed to "relative weakness of the underlying claim").

---

[2] Plaintiff's counsel knows this through their experience in *Overton v. Walt Disney Company*, 136 Cal.App.4th 263 (2006). In *Overton*, plaintiff brought a putative class action seeking compensation for travel time for riding on Disney's shuttle buses from his assigned parking lot one mile from the park entrance. Plaintiff claimed that he was required to do so, and cited as evidence the apparent fact that 90% of employees drove to work. *Id.*, at 267-269. The California Court of Appeal found no such evidence of coercion, noting that since 10% of employees did not park at Disney's parking lot and thus did not take the shuttle bus to the park entrance "proves that parking [at the Disney provided parking lot] and riding the shuttle were not mandatory." *Id.*, at 270.

## IV. DESPITE CLASS CERTIFICATION, THERE REMAIN SERIOUS QUESTIONS AS TO WHETHER A CLASS ACTION TRIAL CAN BE MAINTAINED, PARTICULARLY GIVEN THE INADEQUACY OF THE CLASS REPRESENTATIVE

Although this Court granted class certification of the training time and sample kit claims, if trial in this action were to commence, plaintiff's ability to pursue her class action claims would still be in serious jeopardy. Chief among these concerns would be the adequacy of the class representative, based on credibility problems this Court previously found.

In its November 5, 2010 class certification order, the Court deemed plaintiff's truth telling ability dubious on the independent contractor claims, citing to evidence that plaintiff had never called her managers and thus was not controlled by them, despite emphatic and repeated testimony to the contrary by plaintiff. *See* November 5, 2010 Order (Doc. No. 375), at 25. The Court noted: "'[a]ny issues of the Plaintiff's credibility should be tied to [her] claims in this action.'" *See* November 5, 2010 Order (Doc No. 375), at 24 (quoting *Gooch v. Life Inv. Ins. Co. of Am.*, 264 F.R.D. 340, 349 (M.D. Tenn. 2009).

But if the case were to proceed to trial, Vector has further evidence with which to impeach plaintiff's credibility on the training time claims. For example, plaintiff contends that, as part of Vector's initial three day training, she was required to and did set up appointments by calling on family and friends. *Id*., at 13. But the evidence before the Court on the class certification briefing showed that plaintiff never made a *single* phone call on any of her telephonic devices in June or July 2008 when she participated in Vector's initial training and purportedly worked as a Sales Representative. *See* Sprint and T-Mobile Declarations in Support of Defendant's Motion to Decertify (Doc. No. 335-10, 335-11 - 335-12) (no account registered with Boost Mobile, despite claims by plaintiff that she had a phone with Boost, and no telephone calls placed with T-Mobile from June to July 2008).

CV 08-5198 EMC – 7 –
DEFENDANT'S JOINDER IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Vector also would raise at trial this Court's finding that plaintiff had not been forthcoming on her *individual* independent contractor claims (which were not certified, but remained in the case). These claims would be tried to the same jury, and that jury would not likely ignore this Court's credibility determinations.

Plaintiff's lack of credibility would clearly undermine her adequacy/standing claims. *See, e.g., Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (stating that, "if Lierboe has no stacking claim, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail"); *see also Wooden v. Board of Regents of the Univ. Sys.*, 247 F.3d 1262, 1287 (11th Cir. 2001) (stating that, "as a prerequisite to certification, it must be established that the proposed class representatives have standing to pursue the claims as to which classwide relief is sought").

## V. THE SETTLEMENT OFFERED BY VECTOR FAR EXCEEDS THE VALUE OF PLAINTIFF'S CLAIMS AND THE RISKS ATTENDANT TO CONTINUED LITIGATION

The settlement fund is more than fair to members of the class. Vector agreed to a settlement fund for the training time and sample kit claims of $13,000,000. The gross settlement value of the training time claim, $6,500,000, is equal to roughly 85% of the $7,648,650 verdict value that this Court stated it would use as the benchmark. *See* April 29, 2011 Preliminary Approval Order (Doc. No. 466), at 19. Even using the net recovery of $57 per class member, the total settlement fund equals a generous 51% of the total verdict value. *Id.*, at 15.

The potential training time settlement fund determined by the parties is therefore more than adequate. *See, e.g., McPhail v. First Command Financial Planning, Inc.*, 2009 WL 839841, *5 (S.D.Cal. 2009) (settlement of $12 million or 7% of estimated damages of $175 million demanded in amended complaint); *In re Portal Software Secs. Litig.*, 2007 WL 4171201, *3 (N.D.Cal. 2007) (noting that median settlements as a percentage of estimated damages were 8.8% in 2006 for securities

class actions); *In re Four Seasons Securities Laws Litig.*, 58 F.R.D. 19 (W.D.Okla. 1972), *rev'd on other grounds*, 502 F.2d 834 (10th Cir.), *cert denied*, 419 U.S. 1034 (1974) (8 percent of potential damages); *Bagel Inn, Inc. v. All Star Dairies*, 1982-1 TRADE CASES (CCH) P 64, 512 (D.N.J. 1981) (8 percent of potential damages); *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972) (settlement of one-seventh of potential recovery).

Indeed, even at the individual level, the settlement payment is more than adequate. For example, those class members who participated in Vector's initial training when the state minimum wage was $6.75,[3] will have, on a net basis, received 57% of the possible total recovery ($6.75 times 15 hours of training). This is well within the range of settlement values the courts have found to be fair, adequate, and reasonable.

## VI. THE REACTION OF THE CLASS TO THE PROPOSED SETTLEMENT HAS BEEN FAVORABLE

The reaction to the settlement has been overwhelmingly positive. Only two class members filed objections, .003%, of the class members who received notices, and only four class members, .006%, validly elected to opt out of the settlement.[4]

The virtual lack of objections and opt outs to the proposed class action settlement militates heavily in favor of final approval. *See, e.g., Sandoval v. Tharaldson Employee Management, Inc.*, 2010 WL 2486346, *3, *7 (C.D.Cal. 2010) (noting 99.2% participation rate based on two opt out forms, no objections, and 24% claims rate); *McPhail v. First Command Financial Planning, Inc.*, 2009 WL 839841, *6 (S.D.Cal. 2009) ("The presence of a small minority of objectors strongly supports a finding that the settlement is fair, reasonable, and adequate"); *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D.Cal. 2008) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong

---

[3] *See* http://www.dir.ca.gov/iwc/minimumwagehistory.htm for minimum wage history.
[4] Two other objections were received, which are attached to the declaration of Stanley M. Saltzman in support of plaintiff's motion for final approval of class action settlement (Doc. No. 478).

presumption that the terms of a proposed class settlement action are favorable to the class members"); *In re Austrian & German Bank Holocause Litig.*, 80 F.Supp.2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 624 (N.D.Cal. 1979) (finding "persuasive" the fact that 84% of the class has filed no opposition).

Moreover, the percentage of class members who made claims against the settlement fund is within the range approved by other courts, or far exceeds it. Fully 27% of those offered made claims against the settlement funds. That figure far exceeds other settlements – including employment settlements – approved of by the courts within this district and elsewhere, as evidenced by the following cases:

- 3% claims rate in *In re Tyco International, Ltd.*, 535 F.Supp.2d 249, 256-257 (D.N.H. 2007) (cash distribution to class members; 74,655 claim forms received out of 2.4 million notices mailed to class members;

- 8% claims rate in *Ersler v. Toshiba America, Inc.*, 2009 WL 454354, *1 (E.D.N.Y. 2009) (7,000 claims submitted in response to class notice of 88,000; settlement provided for cash reimbursement of defective television bulbs, among other things);

- 13% claims rate in *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1122 (C.D.Cal. 2008) (cash settlement fund; 20,350 claims filed of approximately 150,000 class members);

- 15% claims rate in *Hall v. Best Buy Co., Inc.*, 2011 WL 1103755, *2, *11 (E.D.Pa. 2011) (cash settlement fund in wage and hour class action; less than 3,000 of 20,455 claims received; the number of claims coupled with low opt outs and no objections having been filed "clearly weigh in favor of the settlement");

- 18% in *Tarlecki v. Bebe Stores, Inc.*, 2009 WL 3720872, *1-*2 (N.D.Cal. 2009) (finding that a low claims rate in an FLSA action that provided cash and gift cards to class members could be attributed to "relative weakness of the underlying claim" and that additional notice to the class "would do little to help compensate those who were damaged by defendant's practices" due to transitory nature of retail clothing employees);

- 24% claims rate in *Sandoval v. Thearaldson Employee Management, Inc.*, 2010 WL 2486346, *2, *7 (C.D.Cal. 2010) (cash settlement in California Labor Code wage and hour employment class action); and

- 24% claims rate in *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, *2, *4 (S.D.N.Y. 2011) (cash settlement).

Here, class members received as many as *five* communications from plaintiff's counsel regarding this action. They received notice in April 2010, during plaintiff's fact investigation, when the Court approved conditional certification of the FLSA class, after the court granted certification of the Rule 23 state law claims, when the Court granted preliminary approval of the settlement, and during the claims period through a reminder postcard. Each notice apprised class members of the existence of the lawsuit, and the more recent communications informed them they could recover money from Vector. As Judge Patel found in *Tarlecki*, any further opportunities afforded to the class members to make a claim would likely not outweigh its costs. *See Tarlecki*, *supra*, 2009 WL 3720872, *2. Because the claims rate is well within the range of those the courts have deemed to have been adequate and the reaction of the class has been overwhelmingly positive, this factor also supports approval of the settlement.

## VII. CONCLUSION

Vector respectfully requests that the Court grants plaintiff's motion for final approval of the class action settlement and that the class action settlement be finally approved.

Dated: July 20, 2011                REED SMITH LLP

By  /S/
       John P. Zaimes
       Attorneys for Defendant
       VECTOR MARKETING CORPORATION